**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

FILED

'03 OCT 14 P 3:39

US DISTRICT COURT
HARTFORD CT

| | | |
|---|---|---|
| INTERMARK FABRIC CORPORATION | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. No. 302 CV 1267 AVC |
| | : | |
| MICROFIBRES, INC. | : | |
| Defendant | : | |

**MICROFIBRES INC.'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS OBJECTION TO INTERMARK FABRIC CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. §§ 102 AND 103**

**ORAL ARGUMENT REQUESTED**

## I.    **INTRODUCTION**

Intermark has again moved for summary judgment, this time for patent invalidity on the grounds of alleged anticipation and obviousness. This latest summary judgment filing once again distorts the record, ignores disputed facts, ignores the presumption of validity to which Microfibres' '021 Patent is entitled, and fails to even articulate, let alone satisfy, the clear and convincing evidentiary burden that Intermark carries. Intermark's summary judgment motion must be denied.

The '021 Patent is not anticipated. Although Intermark strenuously argues that McCulloch's patented fabric has been manufactured by others since at least the 1980s, it has failed to produce any evidence (and certainly not clear and convincing undisputed evidence) on which the Court could find that the claimed invention was publicly known or used either before James McCulloch conceived it (March 1991) or one year before he filed his patent application (July 31, 1991). Instead, Intermark's entire motion rests on the testimony of biased witnesses interested in Intermark's efforts to invalidate the '021 Patent, some ambiguous correspondence, fabric samples created after July 31, 1991, and some technical articles that do not describe or suggest the novel combination claimed by the '021 Patent.

The oral testimony Intermark has elicited from Microfibres' competitors and others, like Charles Bunch, Peter Hadley, and Hemendra Shah, is insufficient as a matter of law to invalidate the '021 Patent. The Court of Appeals for the Federal Circuit has repeatedly warned that oral testimony uncorroborated by contemporaneous samples or documents cannot overcome the statutory presumption of patent validity.

See Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1370 (Fed. Cir. 1998). The oral testimony Intemark relies on is of no legal significance.

The Culp and Leathertex samples also do not anticipate. Intermark claims that both samples are a transfer printed flocked fabric made with dark adhesive and a textile substrate. There is no evidence, however, that either sample was created *before* July 31, 1991 -- meaning that they do not anticipate as a matter of law under either 35 U.S.C. §§ 102(a) or (b). It is undisputed that the Culp samples were not made until December, 1991. The Leathertex sample is attached to a document dated August, 1991. (See Exhibit 20). The suggestion that these samples somehow demonstrate that some entity manufactured the fabric claimed by the '021 Patent before July 31, 1991 is simply an Intermark fabrication, certainly not summary judgment evidence.

The Frosty samples that Intermark relies on are also inadequate as a matter of law because they are not transfer printed. Intermark has failed to produce any documentary evidence or samples to prove that anyone, including Intermark, ever transfer printed an Intermark-manufactured flocked fabric made with dark pigmented adhesive and a textile substrate before July 31, 1991. The correspondence between Microfibres and Intermark dated in the Fall of 1991 and mischaracterized by Intermark does not even come close to proving such a claim.

None of the publications upon which Intermark relies either anticipate the '021 Patent or render it obvious. The publications Intermark now points to simply mention the use of colored adhesives and also mention the use of transfer printing. They do not teach or suggest the unique *combination* invented by McCulloch.

U.S. Patent 4,895,748 does not teach this combination either. The Squires Patent claims a "flattened *foam*" fabric, as opposed to the "plush *textile*" fabric claimed by the '021 Patent. Squires, in fact, teaches that the combination of colored adhesives and transfer printing -- which is the heart of the '021 Patent -- is unsuitable unless the fibers are crushed and entangled. Because crushing is the antithesis of McCulloch's invention, the Squires Patent neither anticipates nor renders obvious the '021 Patent.

Finally, Intermark's claim that Microfibres defrauded the Patent Office by failing to disclose the prior existence of dark colored adhesives and certain pressure settings is as wrong as it is outlandish. The argument is predicated upon a calculated misreading of the '021 Patent prosecution history. The only fraud here is Intermark's suggestion that James McCulloch or anyone at Microfibres were anything less than truthful during the prosecution of the '021 Patent.

## II.    FACTS

The '021 Patent claims a transfer printed flocked fabric made with dark pigmented adhesive and a textile substrate. (Exhibit 1). The product has a number of applications, including car interiors and furniture upholstery. (Exhibit 2). Minutes from a company meeting disclose that the product claimed by the '021 Patent was invented by James McCulloch no later than March 21, 1991. (Exhibit 3 at p. 2 and Exhibit 21). McCulloch filed a patent application for the invention on July 31, 1992. (Exh. 2).

The novelty of the invention resides in the combination of two known ideas in the flocked fabric industry: transfer printing, on the one hand, and the use of colored adhesives in flocked fabric made with a textile substrate, on the other hand. (Exh. 2)

McCulloch recognized that when he transfer printed a flocked fabric made with a textile substrate and a colored adhesive that was darkly pigmented, he could obtain a deep and dark colored flocked fabric that was grin-free (the textile substrate did not show through the nylon fibers), crock-fast (the dye did not rub off), and had a soft, plush feel. (Exh. 2). McCulloch also recognized that he could obtain such results while transfer printing only the tips of the flock.

Pigmented adhesives were known in the flocked fabric industry when McCulloch conceived his invention in March 1991 and he disclosed this fact during the prosecution of the '021 Patent. He first disclosed the prior use of pigmented adhesives in the specification: "It is known to add pigment to an adhesive used in some flocked fabric manufacturing. In one case, the pigmented adhesive is used to bind flock on fabric which is subsequently printed using wet processing techniques to achieve deep rich colors. Tinted adhesives are also known for use with pre-dyed flock, to obtain an overall intensity of shade." (Exh.1 at Column 1, Line 37-38). McCulloch also disclosed U.S. Patent 4,963,422 to Katz, titled Ethylene Vinyl Acetate Alkyl Acrylate Compositions for Flocking Adhesives. (Exh. 1, References Cited). The Katz Patent states that colored adhesives can be used in the manufacture of flocked fabric for ornamental purposes. (Exhibit 4 at Column 6, Line 63). McCulloch also disclosed U.S. Patent 4,294,577 to Bernard, titled Dyed Flocked Fabric and Method of Making Same. (Exh. 1 at References Cited). The Bernard Patent describes the various conventional ways of coloring flocked fabrics, including pigmenting the adhesive. (Exhibit 5 at Column 6, Lines 65–66).

The disclosure of pigmented adhesives necessarily includes the disclosure of all colored adhesives, including dark colors.  (Exhibit 6 at ¶ 9).  The Patent Office understood this and pointed it out to McCulloch when he described the advantages associated with using dark colored adhesives in combination with transfer printing: "Examiner sees no novelty in adding a *particular color* pigment to a composition when *adding any color is known.*"  (Exhibit 7 at p. 3).

McCulloch explained that the novelty of his invention was not dark colored adhesive (which as the Examiner noted was not novel), but the *combination* of flocked fabric made with dark colored adhesive and transfer printing:

> Applicant's invention resides in the discovery that prints on flocked fabrics with deep, dark shades can be achieved with transfer printing and the use of colored adhesives.  Katz, et al only mentions that colored adhesives …can be used to create further effects thereby varying the ornamental appearance of the product….  The Katz, et al patent, and the prior art generally, fails to recognize or to suggest that the transfer printing of disperse dyes onto flocked fabrics in which the fibers were adhered with dark pigmented adhesive would produce a product with deep, dark shades and less grin through and crocking.

(Exhibit 8 at p. 4-5).  He corrected the Examiner's misreading of U.S. Patent 2,308,429 to Smith, which did not involve transfer printed fabric and disclosed use of a very small amount of pigment in the adhesive which was nearly imperceptible.  (Exh. 8 at p. 4).

In addition to creating a deeply and darkly shaded transfer printed flocked fabric, McCulloch's invention also permitted a reduction in the pressure applied during transfer printing.  (Exh. 1 at Column 2, Line 40-45)  The invention achieved deep color without using printing pressures that crush or flatten the nylon fibers.  (Exhibit 9).  Conventional printing pressures were between 10 and 60 pounds at the time of the

invention, depending on the fabric being printed and the look the manufacturer desired, and Microfibres typically performed transfer printing at the upper end of this range. (Exh. 9 at p. 79-82).

The '021 Patent does not claim reduced pressure settings. (Exh. 1). Although Microfibres' patent application initially included claims for pressure settings, those claims were later voluntarily cancelled. (Exhibit 10). However, the invention does in fact permit the use of reduced pressures in the transfer printing process all other things (fabric type, look desired, etc.) being equal. (Exh. 1).

On November 9, 1999, after Microfibres satisfied the Patent Examiner's concerns regarding the novelty of the invention and its utility, the United States Patent Office issued McCulloch the '021 Patent. (Exh. 1). McCulloch assigned the '021 Patent to Microfibres. Microfibres sent letters to its competitors including Intermark and Spandauer, alerting them to the existence of the Patent. (Exhibit 11).

Microfibres has confirmed during this litigation that Intermark's European affiliate, Spandauer, is manufacturing a transfer printed flocked fabric made with dark pigmented adhesive. The underlying fabric is supplied by Intermark, which knows Spandauer is transfer printing and encourages it. (Exhibit 12 at p. 76-77). Intermark also sells flocked fabric with dark pigmented adhesive to transfer printers in the United States, like Culp, and actively encourages the completion of Microfibres' invention. (Exhibit 13 at p. 28-29). Intermark even transfer printed its own flocked fabric with a dark adhesive after the '021 Patent issued. (Exh. 12 at p. 20-21).

As a result of Intermark's admitted infringing activities, Microfibres wrote to Intermark and demanded that it cease all infringing activities. Intermark chose to sue instead, filing a declaratory judgment action and claiming that it does not infringe the '021 Patent (although it refuses to explain why not in response to Microfibres' First Set of Interrogatories) and that the '021 Patent is invalid.

Since filing this action Intermark has been on a desperate hunt to substantiate its bogus invalidity arguments. It has literally searched the globe for evidence of a transfer printed flocked fabric made with a colored pigmented adhesive and a textile substrate prior to July 31, 1991. (Exhibit 14). Notwithstanding its repeated assurances to this Court that hundreds of thousands of yards of this material were manufactured in the late 80s and early 90s before McCulloch thought of the idea, Intermark has yet to locate so much as a swatch of it pre-dating July 31, 1991.

The parties have deposed a number of Microfibres' competitors and rivals who, not surprisingly, claim that they knew about and were making the fabric claimed by the '021 Patent since the late 80s and early 90s.

Charles Bunch, for example, claims he knew about the invention before McCulloch. (Exhibit 15 at p. 71). He has no written documents or samples, however, to corroborate his claim. (Exh. 15 at p. 71). In addition, he acknowledges that 90 percent of his business involves the manufacture of an infringing product. (Exh. 15 at p. 127). He also admitted that Intermark's lawyers helped him prepare the declaration that Intermark has attached to its summary judgment papers. (Exh. 15 at p. 84-85).

8

Moustafa Nour, a former employee of Malden Mills, claims he also knew about the invention before McCulloch, but like Charles Bunch he has no samples or records to corroborate his testimony. (Exhibit 16 at p. 44).

Peter Hadley and Hemendrah Shah claim they knew about the invention before McCulloch as well but they have no documents pre-dating July 31, 1991 to support the claim. (Exhibit 17 at p. 215-216 and Exhibit 18 at p. 129-130). Both witnesses are biased. Peter Hadley, for example, admitted that he has three separate interests that would be advanced by invalidating the '021 Patent. (Exh. 17 at p. 218).

Finally, Intermark claims knowledge of the patented invention before McCulloch. Like the others, however, Intermark has no samples or documents demonstrating that it or anyone else ever transfer printed on a flocked fabric made with dark adhesive and a textile substrate before McCulloch's invention and patent application. (Exh. 12 at p. 126).

Intermark's first summary judgment motion based upon the statutory best mode requirement was filed prematurely, without a review of Microfibres' documents and was based upon a general misunderstanding of Microfibres' heat setting process and a gross mischaracterization of testimony. Intermark's current motion claiming the '021 Patent is invalid on anticipation and obviousness grounds suffers from similar fatal defects.

## III.   ARGUMENT

Intermark carries a substantial burden to invalidate the '021 Patent at the summary judgment stage on the grounds of anticipation and obviousness or to render

the Patent unenforceable for inequitable conduct. Like any motion for summary

judgment motion Intermark must demonstrate that the material facts are undisputed.

See Scripps Clinic & Research FDN v. Genentech, Inc., 927 F.2d 1565, 1570 (Fed Cir

1999). In addition, however, because the '021 Patent is presumed valid under 35 U.S.C.

§ 282, Intermark must also demonstrate invalidity and inequitable conduct by clear and

convincing evidence. See Transclear Corp. v. Bridgewood Svcs., Inc., 290 F.3d 1364,

1370 (Fed. Cir. 2002); System Mgmt. Arts v. Avesta Tech., 87 F. Supp.2d 258, 262-63

(S.D.N.Y. 2000). This burden is not reduced (as Intermark appears to suggest at page 24

of its Memorandum) by the presentation of prior art that was not considered by the

Patent Office. See Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1050 (Fed. Cir.

1988). Intermark has not and could not show any undisputed evidence, let alone clear

and convincing evidence, of anticipation, obviousness, or inequitable conduct. Its

summary judgment motion must be denied.

A.    **The '021 Patent Is Not Anticipated.**

    Anticipation under 35 U.S.C. § 102 means a lack of novelty and it is a question of

fact. Brown v. 3M, 265 F.3d 1349, 1351 (Fed. Cir. 2001). To invalidate the '021 Patent

under 35 U.S.C. § 102(a) Intermark must demonstrate with clear and convincing

evidence that the claimed invention was publicly known or used in the United States

before McCulloch conceived the invention (in this case no later than March 21, 1991).

See Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1370 (Fed. Cir. 1998). To

invalidate the '021 Patent under Section 102(b), on the other hand, Intermark must

demonstrate with clear and convincing evidence that a public use or sale of the claimed

invention occurred in the United States more than one year before McCulloch applied for his patent (in this case July 31, 1991). See Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 737 (Fed. Cir. 2002).

For the prior use or sale to truly anticipate, Intermark must demonstrate that *every* element and limitation of McCulloch's claimed invention is found in the alleged anticipating prior art just as it is arranged in the claim. See Brown, 265 F.3d at 1351; In re Paulsen, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994). The alleged anticipating prior art must also be enabling, or, in other words, sufficiently describe the invention so that a person of ordinary skill could practice it. See Paulsen, 30 F.3d at 1479. As discussed below, none of Intermark's alleged prior art references anticipate the invention claimed by the '021 Patent.

### 1.    Intermark's Frosty Product Does Not Anticipate

The existence of Frosty as early as 1989 does not anticipate the '021 Patent for the simple reason that Intermark has failed to produce any evidence that Frosty was ever transfer printed before July 31, 1991. The '021 Patent claims a *transfer printed* flocked fabric made with a dark adhesive and textile substrate. As a matter of law, Intermark's first anticipation argument based on Frosty must fail because there is no evidence that such fabric was transfer printed before July 31, 1991. See Brown, 268 F.3d at 1351 ("To anticipate, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim.").

Although Frosty can be transfer printed, and in fact today is transfer printed by Intermark and third parties in violation of Microfibres' patent rights, Intermark has not

produced any documentary evidence demonstrating that Frosty (with a dark

pigmented adhesive) was transfer printed prior to July 31, 1991. Intermark's reliance on

correspondence that it exchanged with Microfibres during the Fall of 1991 does not

demonstrate anticipation. At most, the correspondence suggests only that Intermark

sold some type of flocked fabric to transfer printers. There is no evidence that

Intermark or any of its customers ever combined the ideas of dark pigmented adhesive

and transfer printing to make the patented invention.[1]

### 2.    Shah's Alleged Knowledge Does Not Anticipate

Intermark wrongly claims that the '021 Patent is anticipated under 35 U.S.C. §

102(a) because Hemendra Shah of Spectro Coating allegedly knew of the invention as of

July 11, 1991. To support this story, Intermark relies on a flocked fabric sample now

attached to an August 11, 1991 letter from Leathertex to Spectro (Exhibit 19 and 20) and

the deposition testimony of Hemendrah Shah, who testified that he knew of the

invention claimed by the '021 Patent no later than July of 1991.

There are innumerable problems with this anticipation argument. In order to

prove anticipation under Section 102(a), Intermark must demonstrate by clear and

convincing evidence that Shah publicly used the claimed invention *before McCulloch

conceived the invention* (March, 1991), not one year before McCulloch filed his patent

application. Compare 35 U.S.C. § 102(a) with § 102(b); see System Mgmt, 87 F.Supp.2d

---

[1] Intermark repeatedly suggests that Microfibres only conceived the idea of the '021 Patent after observing Intermark manufacturing a flocked fabric with dark adhesive for transfer printers. The story is rubbish and the Court will note that Intermark cannot substantiate it. The only transfer printed flocked fabric samples with dark pigmented adhesive and a textile substrate that Intermark has located were produced *after* McCulloch invented the idea in March 1991 -- confirming Microfibres' claim that Intermark misappropriated the idea and is infringing Microfibres' '021 Patent.

at 264 (noting the timing distinction between § 102(a) and (b)). McCulloch conceived the invention before March 21, 1991. (Exh. 21). Thus, the '021 Patent is not anticipated by Shah's alleged knowledge in July 1991 is simply wrong, even if his testimony on that point were true.

In its motion, Intermark has committed the classic error of attempting to combine an assortment of prior art references in the hope of proving anticipation under Section 102(a). See Studiengelellschaft Kohle v. Dart Indus., 726 F.2d 724 (Fed. Cir. 1984) ("What Dart asked the trial court to do, and what it would have us do on appeal, is to combine the teachings of the references to build an anticipation. That would be contrary to settled law, and the trial court was correct in refusing to do so."). Intermark wants the Court to use the Leathertex correspondence and sample and the article Design With Flock In Mind to buttress Shah's own biased testimony that he knew of the invention before March 1991. (Exh. 3 and Exhibit 21). While the Court can in certain instances use additional prior art to *interpret* an allegedly anticipating reference, Intermark cannot cobble together an assortment of references to prove anticipation or use self-serving testimony to interpret alleged prior art. See id.

Finally, the Leathertex correspondence, the Leathertex fabric sample, the Design with Flock in Mind article and Shah's testimony is not credible evidence on which the Court could summarily declare the '021 Patent anticipated. Not only must anticipation be proven through a single prior art reference, the prior art evidence must be clear and convincing. Intermark's evidence is nothing but dubious. The Leathertex correspondence, for instance, is nearly indecipherable and does not clearly demonstrate

a commercial sale or use of the patented invention in the United States.  The July 11,

1991 Leathertex letter states:

> Tomorrow the first 3500 yds sent by airfreight will be consigned us.
> Would like to just now what would be the delivery time for 1 container of
> 20' in one of the to articles you sampled us. More would like to know if
> you produce this articles also in colour beige and grey.  If so, please send
> by Federal Express 3. - m each immediately.

(Exh. 19).  It is unclear what type of fabric is being discussed, whether the fabric is

flocked, whether it contains a dark pigmented or clear adhesive, whether it contains a

textile substrate, or whether it has been transfer printed or is destined for transfer

printing.  Shah's self-serving deposition testimony is insufficient as a matter of law to

invalidate the '021 Patent.  See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728,

743 (Fed. Cir. 2002); Wooodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368 (Fed.

Cir. 1998)

### 3.    The Culp Fabric Sample Does Not Anticipate

Intermark also wrongly argues that the '021 Patent is anticipated by virtue of a

fabric sample manufactured by Spectro Coating and allegedly transfer printed by Culp

between December 1991 and January 1992.

The Spectro/Culp fabric samples do not anticipate the '021 Patent because they

were created *after* July 31, 1991 (which is one year prior to the patent application

McCulloch filed on July 31, 1992 and after McCulloch's conception no later than March

21, 1991).  Intermark has offered no evidence that Culp or Spectro ever created such a

product before that date.  The deposition testimony of Shah and employees from Culp

such as Luther Boyd Madren that an anticipating product was being made before July

31, 1991 is simply uncorroborated testimony and cannot invalidate the '021 Patent. See

Woodland Trust, 148 F.3d at 1371.

> **4.     The Squires Patent Does Not Anticipate.**

U.S. Patent 4,895,748 to Squires (the '748 Patent) is not an anticipating prior art

reference because the '748 Patent does not teach each and every element and limitation

of the invention claimed by the '021 Patent. (Exh. 6 at ¶ 4).

The '748 Patent teaches a flocked foam fabric that is transfer printed. (Exhibit 22).

The '748 Patent does not teach flocking on a textile substrate like the '021 Patent. On

this ground alone, the '748 Patent cannot anticipate as a matter of law. See Brown, 265

F.3d at 1351.

Any doubt that foam is not a textile is resolved by reference to the "Design With

Flock in Mind" publication distributed by the American Flock Association that

Intermark submitted with its summary judgment motion. Page 11 of that publication

states that foam is a "non-textile substrate". (Exhibit 23 at p. 11).

The '748 Patent also teaches a fabric in which the nylon fibers are "set into a

flattened and entangled state" rather than the "raised thermoplastic fibers" claimed by

the '021 Patent. In other words, the '748 Patent teaches crushing the fibers rather than

keeping them upright, as claimed in the '021 Patent. (Exh. 6 at ¶ 4). This distinction too

removes the '748 Patent as an anticipating prior art reference.

Finally, the Squires Patent teaches that the use of a colored adhesive on a

substrate leads to coloration problems unless the flock fibers are crushed. In other

words, Squires actually cautions against creating the sort of fabric taught by the '021

Patent because of coloration problems.  It would not be apparent to one skilled in the textile industry to ignore this warning, substitute a textile substrate in place of the foam substrate and transfer print so that the fibers remain upright.  (Exh. 6 at ¶ 4).

The '748 Patent does not teach every element and limitation of the '021 Patent as arranged in the '021 Patent and it is not anticipating prior art.  See Brown, 265 F.3d at 1351.

5.    **"Design With Flock In Mind" and "The Flocking Process" Do Not Anticipate.**

Design With Flock In Mind was allegedly distributed in October 1990 as a trade publication that describes the basics of manufacturing and finishing flocked fabrics. (Exh. 23).  It describes all of the various substrates that may be used, from textiles to foam, describes the types of adhesives that may be used, including pigmented adhesives, mentions the variety of flocking fibers that can be used, and describes the many ways flocked fabric can be finished, including wet dyeing, embossing, and transfer printing. (Exh. 23).

Although Design With Flock in Mind describes various disparate elements that are part of the '021 Patent, it is not an anticipating prior art reference because it does not teach the novel combination of elements disclosed by the '021 Patent.  In order to anticipate, a reference must not only include every element, it must also arrange them as in the claim, see Brown, 265 F.3d at 1351, and describe the invention so a person of ordinary skill could practice it.  See Paulsen, 20 F.3d at 1479.

Design With Flock In Mind does not teach one to combine a textile substrate (as opposed to the other substrates described in the publication), with pigmented adhesives (as opposed to the other adhesives described in the publication), and transfer printing (as opposed to the other finishing processes described in the publication) or upright thermoplastic fibers (as opposed to crushed fibers or cotton fibers).  It would be mere happenstance were someone to put these elements together in the particular combination claimed by the '021 Patent.  See Scaltech Inc. v. Retec/Tetra L.L.C., 156 F.3d 1193 (Fed. Cir. 1999) (holding that inherent anticipation cannot be established by mere probabilities or possibilities).  Indeed, Intermark's anticipation argument is no different than suggesting that a stocked liquor cabinet anticipates every cocktail, including those yet to be conceived. While the ingredients may be present, the formulas are not.

The Flocking Process by G.P. Van Heel suffers the same problem as Design With Flock In Mind.  (Exh. 6 at ¶ 7).  It mentions pigmented adhesives and transfer printing in separate portions of the publication but never suggests their combination. Accordingly, the article is not an anticipating prior reference.

**6.    Intermark's Oral Testimony Is Not Prior Art.**

There are two important cases that Intermark ignores when it relies on the oral testimony of Charles Bunch, Moustafa Nour, Hemendrah Shah and others as its "proof" that the claimed invention is invalid on anticipation grounds.  In both Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002) and Wooodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368 (Fed. Cir. 1998), the Court of Appeals for the Federal Circuit

reiterated that the oral testimony of those who allegedly knew about or practiced an invention prior to the inventor named in the patent, is treated with great skepticism and alone cannot invalidate a patent.

The patent in <u>Juicy Whip</u>, for example, involved a patent on a type of beverage dispenser owned by Juicy Whip.  Orange Bang claimed the patent was invalid because the invention was in public use more than one year prior to the filing of the application that led to the Juicy Whip patent.  The case was tried to a jury, which found that the patent was invalid under 35 U.S.C. § 102(b) on the basis of the oral testimony of six witnesses and a sales record.

The Court of Appeals reversed, holding that this evidence was insufficient for the issue to go to the jury:  "[W]ith the guidance of precedent cautioning against the reliance on oral testimony alone, we hold that the evidence of record did not provide the clear and convincing evidence necessary to invalidate the patent for prior public knowledge.  The district court, therefore, erred by denying Juicy Whip's motion for JMOL on anticipation." <u>Juicy Whip</u>, 292 F.3d at 743.

The testimony of Charles Bunch, Moustafa Nour, Peter Hadley, Hemendrah Shah, and Luther Boyd Madren is uncorroborated by documentary evidence demonstrating that the invention claimed by the '021 Patent was being practiced and in commercial use in the United States before July 31, 1991.  Their biased and interested testimony is not evidence which this Court could find clear and convincing, is insufficient as a matter of law to support summary judgment and should not even be permitted at trial.  <u>See</u> <u>Woodland Trust</u>, 148 F.3d at 1373 ("In this case, despite the

asserted many years of commercial and public use, we take note of the absence of any physical record to support the oral evidence. . . . The district court did not rely on the two undated photographs, and indeed their lack of detail and clarity can not have provided documentary support.")

**B.**     **The Invention Claimed by the '021 Patent Was Not Obvious.**

Intermark has failed to show any evidence that the invention claimed by the '021 Patent was obvious at the time of its conception. Obviousness under 35 U.S.C. § 103 is a legal conclusion premised on underlying factual determinations. The basic inquiry involves an examination of the prior art and the claimed invention to determine whether at the time the invention was conceived it would have been obvious to a person having ordinary skill in that art. See Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 725 (Fed. Cir. 2002). The factual inquiries are: the scope and content of the prior art, the differences between the claims and the prior art, the level of skill in the pertinent art, and secondary considerations like commercial success. See id., 292 F.3d at 725. As with the defense of anticipation, summary judgment may be granted only when the facts are undisputed and only upon clear and convincing evidence. See id.

Here, none of the prior art references cited by Intermark render the '021 Patent obvious because none of them suggest or teach the particular combination of dark pigmented adhesive, a textile substrate, upright thermoplastic fibers, and transfer printing found in the '021 Patent. (Exh. 6 at ¶ 3-8, 12).

The Court of Appeals for the Federal Circuit has cautioned against taking separate elements found in prior art references and combining them without some clear

teaching in the prior art that such a combination should be made.  See Karsten

Manufacturing Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1385 (Fed. Cir. 2001); N.

Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 934 (Fed. Cir. 1990) ("It is insufficient

that the prior art disclosed the components of the patented device, either separately or

used on other combinations; there must be some teaching, suggestion, or incentive to

make the combination made by the inventor."); Heidelberger Druckmaschinen v.

Hantscho Commercial, 21 F.3d 1068, 1072 (Fed. Cir. 1994) ("When the patented

invention is made by combining known components to achieve a new system, the prior

art must provide a suggestion or motivation to make such a combination.")

Here, Design With Flock in Mind and the Van Heel article both teach the use of

pigmented adhesives in flocked fabrics and also teach transfer printing.  However,

neither publication suggests that these things should be combined in order to solve the

long-felt need for a deep and dark colored transfer printed flocked fabric that was soft,

grin-free, and crock-fast.  Neither publication suggests any reason to make this sort of

combination.  Intermark's request that this court deem the combination obvious in light

of the description in Van Heel and Design with Flock in Mind of some of the

component parts of the '021 Patent is not only legally flawed but flies in the face of

Microfibres' expert's contrary opinion.  (Exh. 6).  Intermark has not offered any expert

opinion on this summary judgment record.  At best, obviousness is a factually disputed

issue a jury will have to resolve.

Moreover, the teachings of Van Heel and Design With Flocking In Mind are

cumulative of the prior art already before the Patent Examiner.  The Examiner knew

that pigmented adhesives and transfer printing were used in flocked fabric

manufacturing. (Exh. 7). Yet she found that *this combination* was not obvious. Neither

Design With Flock in Mind nor the Van Heel publication disclose any more information

than was already before the Examiner and neither publication renders the '021 Patent

obvious.

Squires does not render the '021 Patent obvious because Squires expressly

cautions *against* the combination that McCulloch conceived. (Exh. 22). Squires teaches

that transfer printing and colored adhesives do not mix unless the transfer printing

pressures are so great that the fibers are flattened and entangled. This suggestion is the

very antithesis of the '021 Patent. (Exh. 1). Intermark has offered no evidence that

anyone as of March 1991 would have thought to ignore Squires' admonition about

transfer printing and pigmented adhesives, then substitute the foam substrate with a

textile substrate, and create the product that McCulloch invented. This is simply, as the

Federal Circuit Court of Appeals would say, "hindsight reconstruction". See N.

Telecom, 908 F.2d at 935.

**C.    McCulloch Did Not Commit Any Inequitable Conduct Before
The Patent Office Which Would Render the '021 Patent Unenforceable.**

Finally, Intermark once again asks this Court to take the extraordinary step of

summarily declaring that McCulloch and others at Microfibres intentionally defrauded

the Patent Office during the prosecution of the '021 Patent. The allegation is nothing

more than an elaborate story concocted by Intermark's attorneys in the hopes of

avoiding the consequences of Intermark's admitted infringing activities. There is no basis for awarding summary judgment on the ground of inequitable conduct.

To establish inequitable conduct Intermark must show by clear and convincing evidence that McCulloch failed to disclose material information with an intent to mislead the Patent Office. See Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1233 (Fed. Cir. 2003). Intermark has not (and could not) show that McCulloch intentionally withheld any material information from the Patent Office, much less with the intent to deceive.

Intermark first suggests that McCulloch intentionally deceived the Patent Office by failing to disclose the prior existence of dark pigmented adhesives. The argument is factually wrong and based upon a misreading of the patent prosecution file.

As Microfibres has explained repeatedly, McCulloch disclosed the prior existence of pigmented adhesives, both in the specification itself and by referring to the Katz and Bernard patents. The disclosure of pigmented adhesives necessarily includes all adhesives (Exh. 6 at ¶ 9) and the Patent Office understood this. For instance, when McCulloch explained the advantage of using dark pigmented adhesive rather than the conventional clear adhesive, the Patent Examiner immediately noted that there was no novelty in the mere use of dark colors: "Examiner sees no novelty in adding a *particular color* pigment to a composition when *adding any color is known*." (Exh. 7 at p. 3).

Intermark disingenuously ignores this exchange with the Patent Office and instead mischaracterizes McCulloch's truthful response concerning the Smith Patent (which did not involve transfer printed flocked fabric), but did disclose the use of blue

pigment in an adhesive. McCulloch truthfully explained to the Patent Examiner that the amount of pigment used in Smith would not actually impart any color to the adhesive. (Exh. 8). Intermark absurdly suggests (without evidence) that Microfibres' candor with the Patent Office was part of an effort to hide the existence of dark pigmented adhesives in the prior art. Intermark never tells us how McCulloch's truthful statement concerning the Smith patent was an act of intentional deceit before the Patent Office, nor could it. The record is undisputed that Microfibres disclosed the prior art relating to the use of colored pigmented adhesive in flocked fabrics.

Intermark next argues that McCulloch fraudulently claimed that the invention allowed a reduction in printing pressures. McCulloch's statement to the Patent Office concerning reduced pressure levels permitted by the invention was truthful. As Laird explained during his deposition Microfibres was generally printing at the upper limits of a range that extended from 10 pounds to 60 pounds, depending on the fabric. The claimed invention allowed Microfibres to reduce its printing pressures. (Exh. 9 at 79-82).

Aside from being truthful, the issue is immaterial. The '021 Patent does not make a claim for reduced printing pressures. Although Microfibres' patent application initially included pressure claims, those claims were withdrawn. During the prosecution McCulloch explained that the exact pressures were not material to his invention and the Patent Office accepted that response. Indeed, Intermark's own witness, Ronald Perry, has conceded that there are a number of variables that would affect the pressure at which a company might transfer print, making it impossible to

define a pressure range with any precision. (Exhibit 30 at 138-141). The point is, however, that the invention claimed by the '021 Patent allowed reduced printing pressures in addition to those achieved based upon all the variables at work.

Finally, there was no obligation for McCulloch to disclose the existence of Frosty even if he was aware of it, which he was not. It is undisputed that Frosty alone does not practice the claimed invention and Intermark is unable to point to any evidence that anyone at Microfibres ever knew prior to July 31, 1992 that Intermark was selling a flocked fabric with dark pigmented adhesive and a textile substrate for transfer printing. Indeed, despite its assertion that this was going on, Intermark is unable to produce a single piece of this alleged fabric pre-dating McCulloch's invention or patent application.

## IV.    CONCLUSION

Intermark has failed to show any undisputed evidence, let alone clear and convincing undisputed evidence, on which this Court could hold the '021 Patent invalid on the grounds of anticipation or obviousness or hold the patent unenforceable for inequitable conduct. This case should proceed to trial.

MICROFIBRES, INC.

By its Attorneys,

Brent R. Canning, Esq. (CT 23991)
William R. Grimm, Esq.
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI  02903
(401) 274-2000
(401) 277-9600 (Fax)

RESIDENT COUNSEL:
Jeffrey W. Kennedy, Esq. (CT 16419)
Milano & Wanat
471 East Main Street
Branford, Connecticut 06405
203.315.7000 (TEL)
203.315.7007 (FAX)

October __14__, 2003

## CERTIFICATION

William Cass, Esq.
Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

I certify that I mailed a copy of the foregoing Memorandum of Law in Support of Microfibres' Objection to Intermark's Motion for Summary Judgment to counsel of record, as above, on October __14__, 2003.

#568228    16254 / 115115