IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

INTERMARK FABRIC CORPORATION :
        Plaintiff :
 :
v. : C.A. No. 302 CV 1267 AVC
 :
MICROFIBRES, INC. :
        Defendant :

## MICROFIBRES, INC.'S
## LOCAL RULE 56(a)2 STATEMENT

1. Admit.

2. Admit

3. Admit.

4. Admit.

5. Admit.

6. Deny.    See Exhibit 3 at 2; Exhibit 21.

7. Admit.

8. Admit.

9. Admit.

10. Admit.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

23. Admit.

24. Admit.

25. Admit.

26. Admit.

27. Admit.

28. Admit.

29. Admit.

30. Admit.

31. Admit.

32. Admit.

33. Admit.

34. Deny.         See Exhibit 24 at p. 70; Exhibit 25 at ¶ 2-6.

35. Admit.

36. Admit.

37. Admit.

38. Admit.

39. Admit.

40. Admit.

41. Admit.

42. Admit.

43. Admit.

44. Admit.

45. Admit.

46. Admit.

47. Admit.

48. Admit.

49. Deny.    See Exhibit 25 at ¶ 2-6.

50. Admit.

51. Deny.    See Exhibit 24 at 70-71.

52. Admit.

53. Admit.

54. Admit.

55. Admit.

56. Admit.

57. Admit.

58. Admit.

59. Admit.

60. Admit.

61. Admit.

62. Admit.

63. Admit.

64. Admit.

65. Admit.

66. Admit.

67. Admit.

68. Admit.

69. Deny.      See Exhibit 1; Exhibit 6 at ¶ 9.

70. Admit.

71. Admit.

72. Admit.

73. Deny.      See Exhibit 7 at p. 2.

74. Admit.

75. Admit.

76. Admit.

77. Admit.

78.  Admit.

79.  Admit.

80.  Deny.        <u>See</u> Exhibit 6 at ¶ 9, Exhibit 1.

81.  Admit.

82.  Deny.        <u>See</u> Exhibit 21 at 71; Exhibit 26 at 159

83.  Admit.

84.  Admit.

85.  Admit.

86.  Admit.

87.  Admit.

88.  Admit.

89.  Deny.        <u>See</u> Exhibit 9, at 79-82.

90.  Deny.        <u>See</u> Exhibit 9, at 79-82.

91.  Deny.        <u>See</u> Exhibit 9, at 79-82.

92.  Admit.

93.  Admit.

94.  Admit.

95.  Admit.

96.  Admit.

97.  Admit.

98.  Deny.        <u>See</u> Exhibit 29, at p. 53.

99.   Deny.      See Exhibit 6, at ¶ 9.

100.  Deny.*

101.  Deny.*

102.  Deny.*

103.  Deny.*

104.  Deny.*

105.  Deny.*

106.  Deny.*

107.  Deny.*

108.  Deny.*

109.  Deny.*

110.  Deny.*

111.  Deny.*

112.  Deny.*

113.  Deny.*

114.  Deny.*

115.  Deny.*

116.  Deny.*

117.  Deny.*

---

* The testimony on which these allegations are based is designed to demonstrate anticipation under 35 U.S.C. § 102(a) and (b) and is therefore denied as uncorroborated oral testimony. See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002).

6

118. Deny.*

119. Deny.*

120. Deny.*

121. Deny.*

122. Deny.*

123. Deny.*

124. Deny.*

125. Deny.*

126. Deny.*

127. Deny.*

128. Deny.*

129. Deny.*

130. Admit.

131. Deny.*

132. Admit.

133. Admit.

134. Admit.

135. Deny.*

136. Deny.*

---

* The testimony on which these allegations are based is designed to demonstrate anticipation under 35 U.S.C. §§ 102(a) and (b) and is therefore denied as uncorroborated oral testimony which cannot prove invalidity. See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002).

137. Deny.*

138. Deny.*   See Exhibit 19.

139. Deny.*   See Exhibit 20.

140. Deny.*   See Exhibit 20.

141. Deny.*

142. Admit.

143. Admit.

144. Deny.    See Exhibit 6 at ¶ 4; Exhibit 22.

145. Admit.

146. Admit.

147. Deny.    See Exhibit 27 at p. 79-80.

148. Admit.

149. Deny.    See Exhibit 6 at ¶ 4.

150. Deny.    See Exhibit 6 at ¶ 4.

151. Admit.

152. Deny.    See Exhibit 6 at ¶ 4; Exhibit 23 at p. 11.

153. Admit.

154. Admit.

155. Deny.

156. Admit.

157. Admit.

158. Admit.

159. Admit.

160. Admit.

161. Admit.

162. Admit.

163. Admit.

164. Admit.

165. Admit.

166. Admit.

167. Deny.        See Exhibit 6; Exhibit 23.

168. Deny.        See Exhibit 6; Exhibit 23.

169. Deny.        See Exhibit 6; Exhibit 23.

170. Admit.

171. Deny.*

172. Deny.*

173. Deny.*

174. Admit.

175. Admit.

176. Admit.

---

* The testimony on which these allegations are based is designed to demonstrate anticipation under 35 U.S.C. §§ 102(a) and (b) and is therefore denied as uncorroborated oral testimony which cannot prove invalidity. See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002).

177. Deny.*

178. Deny.*

179. Deny.*

180. Deny.*

181. Deny.*

182. Deny.        Exhibit 28 at p. 3-4.

## DISPUTED FACTS

1. The invention claimed by the '021 Patent was conceived no later than March 21, 1991.  See Exhibit 2 at ¶ 3; Exhibit 3.

2. The U.S. Patents to Katz and Bernard that McCulloch cited to the U.S. Patent Office disclose the prior knowledge of pigmented adhesives in flocked fabrics. See Exhibit 4 at Column 6, Line 63-65; Exhibit 5 at Column 6, Line 65-66.

3. When McCulloch disclosed the prior use of pigmented adhesives in the manufacture flocked fabrics in his patent application he adequately disclosed the existence of dark pigmented adhesives in flocked fabrics.  See Exhibit 1; Exhibit 2 at ¶ 2; Exhibit 6 at ¶ 9.

---

* The testimony on which these allegations are based is designed to demonstrate anticipation under 35 U.S.C. §§ 102(a) and (b) and is therefore denied as uncorroborated oral testimony which cannot prove invalidity.  See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002).

4.  McCulloch's disclosure of pigmented adhesives in the manufacture of flocked fabrics necessarily included the disclosure of dark pigments. See Exhibit 6 at ¶ 9.

5.  Before issuing the '021 Patent, the Patent Office understood that McCulloch's disclosure of colored or pigmented adhesives included "any color", including dark colors. See Exhibit 7 at 3.

6.  During the prosecution of the '021 Patent the Patent Examiner stated that it was not novel to add a "particular color pigment to a composition when adding any color is known." See Exhibit 7 at 3.

7.  The Patent Office understood before it issued the '021 Patent that the use of a particular color, such as black, or dark red, or dark blue, was not novel in the manufacture of flocked fabric. See Exhibit 7 at 3.

8.  The invention claimed by the '021 Patent is not the use of dark pigmented adhesives, but the discovery that prints on flocked fabrics with deep, dark shades can be achieved with transfer printing *and* the use of a flocked fabric made with dark colored adhesives and a textile substrate. See Exhibit 8 at 4.

9.  McCulloch dealt honestly with and did not intend to deceive the United States Patent Office during the prosecution of the '021 Patent concerning the prior use of pigmented adhesives, including dark pigmented adhesives. See Exhibit 2 at 6.

10. None of the written communications between Intermark and Microfibres or the internal Microfibres' memoranda that Intermark included with its summary judgment papers disclose that Intermark or Intermark's customers were transfer

11

printing on a flocked fabric made with dark pigmented adhesive and a textile substrate. See Exhibits J - Q of Intermark's Exhibits; Exhibit 6 at ¶ 5.

11. None of the written communications between Intermark and Microfibres or the internal Microfibres' memoranda that Intermark included with its summary judgment papers mention the product "Frosty" or the product "Flash". See Exhibits J - Q of Intermark's Exhibits; Exhibit 6 at ¶ 5.

12. Microfibres had no knowledge that, as Intermark claims, Intermark was selling a flocked fabric made with dark pigmented adhesive and a textile substrate to transfer printers for transfer printing. See Exhibit 2 at ¶ 4.

13. The '021 Patent claims a transfer printed flocked fabric made with dark pigmented adhesive, a textile substrate and raised thermoplastic fibers. See Exhibit 1.

14. The '748 Patent does not teach every element or claim of the '021 Patent. See Exhibit 6 at ¶ 4; Exhibit 1; Exhibit 22.

15. The '748 Patent to Squires does not teach transfer printing on a flocked fabric made with a textile substrate. See Exhibit 6 at ¶ 7.

16. A foam substrate like the kind taught in the '748 Patent to Squires is non-textile substrate. See Exhibit 23 at 11.

17. The '748 Patent to Squires teaches the use of flattened and entangled flock fibers rather than the raised fibers taught in the '021 Patent. See Exhibit 22 at Claim 1; Exhibit 1 at Claim 1.

18. The '748 Patent to Squires teaches away from the invention claimed by the '021 Patent and suggests that the use of colored adhesives and raised thermoplastic fibers produce an unsatisfactory product and coloration problems. See Exhibit 22 at Column 3.

19. It would not be apparent to one skilled in the textile arts to produce the invention claimed in the '021 Patent based upon the teachings of the '748 Patent to Squires. See Exhibit 6 at ¶ 4.

20. The publications "Design with Flock in Mind" and "The Flocking Process" by Van Heel do not teach one to combine transfer printing with flocked fabric made with a textile substrate and dark colored adhesives in order to achieve deep dark printed flocked fabrics that are crock-fast and grin-free. See Exhibit 6 at ¶ 7.

21. It is not necessary or required to make a transfer printed flocked fabric with dark pigmented adhesive and a textile substrate based upon the teachings of "Design with Flock in Mind" and "The Flocking Process". See Exhibit 6 at ¶ 7.

22. The Culp and Leathertex fabrics do not anticipate or render obvious the '021 Patent because there is no evidence they were produced prior to July 31, 1991. See Exhibit 6 at ¶ 6; Exhibit 19; Exhibit 20.

MICROFIBRES, INC.
By its Attorneys,

*/s/ Brent R. Canning*

Brent R. Canning, Esq. (CT 23991)
William R. Grimm, Esq. (CT 08507)
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Fax)

RESIDENT COUNSEL:
Jeffrey W. Kennedy, Esq. (CT 16419)
Milano & Wanat
471 East Main Street
Branford, Connecticut 06405
203.315.7000 (TEL)
203.315.7007 (FAX)

## CERTIFICATION

William Cass, Esq.
Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

I certify that I mailed a copy of Microfibres' Local Rule 56(a)2 Statement to counsel of record, as above, on October _14_, 2003.

*/s/ Brent R. Canning*

#569203    16254 / 115115