IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

| | |
|---|---|
| INTERMARK FABRIC CORPORATION : | |
| Plaintiff : | |
| : | |
| v.   : | C.A. No. 302 CV 1267 AVC |
| : | |
| MICROFIBRES, INC. : | |
| Defendant : | |

## MICROFIBRES' MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO INTERMARK'S MOTION TO STRIKE THE AFFIDAVITS OF JAMES MCCULLOCH AND WILLIAM LAIRD

**I.   INTRODUCTION**

Intermark is once again trying to strike evidence from the record and hide the truth. It now wants the Court to strike the affidavits of James McCulloch and William Laird which Microfibres submitted with its opposition to Intermark's best mode summary judgment motion. The Motion to Strike should be denied.

The McCulloch and Laird affidavits accurately correct Intermark's deliberate distortion of their deposition testimony. There is nothing improper about Microfibres' effort to set the record straight. Moreover, while Intermark maligns the affidavits as untruthful, their accuracy is confirmed by the recent deposition testimony of Intermark's own expert witness, Ronald Perry. He testified just three weeks ago that Microfibres' heat setting equipment was known and commercially available and that it was not a trade secret when McCulloch filed his patent application on July 31, 1992. This testimony confirms that there was no best mode violation and that there is no basis for striking the Laird and McCulloch affidavits.

## II.  FACTS

In July 2003 Intermark filed a summary judgment motion that alleged James McCulloch violated the best mode requirement of 35 U.S.C. § 112 during the prosecution of the '021 Patent. It argued (wrongly) that the claimed invention included a secret and unknown heat setting process that no one else could practice. As Intermark now knows, that theory is entirely without factual support.

Intermark's best mode argument was conceived before Intermark had fully investigated the facts. It was premised entirely on the deposition testimony of James McCulloch and William Laird -- which Intermark distorted. Both McCulloch and Laird admitted that their 12-year old memories were fuzzy and that there were documents that would demonstrate what equipment was purchased and when. Laird, for instance, told Intermark's attorneys that he could not remember exactly when Microfibres switched to the infrared equipment and deferred to Microfibres' documents for this information. (Laird Deposition, Exhibit A at 53-54). Rather than examine those documents Intermark simply mischaracterized Laird's and McCulloch's testimony to fit its theory of the case.

Because Intermark moved for summary judgment before a full investigation, it did not know several important facts: Intermark did not know that as of July 31, 1992 the heat setting equipment Microfibres' used known and was available to the entire flocked fabric industry through companies like Casso-Solar and Glenro. (Laird Affidavit, Exhibit B at ¶ 12). Intermark also did not know that as of July 31, 1992 the equipment was being used by Microfibres' competitors like Culp. (Madren Deposition,

2

Exhibit B at 83-84). In addition, Intermark did not know that the alleged secret heat setting equipment was actually tested and considered by Intermark. (Exh. A at ¶ 11).

Laird and McCulloch executed affidavits that corrected Intermark's mischaracterizations of their deposition testimony and filled the factual gaps created by Intermark's premature filing (Exhibit A and McCulloch Affidavit, <u>Exhibit D</u>). Laird and McCulloch stated, consistent with Microfibres' records, that the heat setting equipment Microfibres was using as of July 31, 1992 was commercially available equipment that was known and used in the flocked fabric industry. The equipment was even known by Intermark. Laird and McCulloch also confirmed that the heat setting equipment Microfibres purchased before July 31, 1992 simply improved the quality of Microfibres' heat set flocked fabric and not, as Intermark argued, the deep and dark colored transfer printed fabric created under the '021 Patent.

Microfibres deposed Intermark's expert witness Ronald Perry three weeks ago and he confirmed the accuracy of the Laird and McCulloch affidavits. He testified: 1. that heat setting with infrared equipment was known before July 31, 1992 (<u>Exhibit E</u> at 127); 2. that Microfibres' Glenro heat setting equipment was known and available to the industry before July 31, 1992 (Exh. E at 127); 3. that side-center-side control to heat set flocked fabric was known in the industry as of July 31, 1992 and that its advantages were known (Exh. E at 137-38); and 4. that the heat setting equipment Microfibres was using on July 31, 1992 was not a trade secret (Exh. E at 128-29).

3

Because these facts do not support Intermark's best mode argument it moved to strike Laird's and McCulloch's affidavits, calling them (and apparently Perry's testimony) fabrications.

## III. ARGUMENT

### A. The McCulloch and Laird Affidavits Confirm Microfibres' Heat Setting Equipment Was Known and Commercially Available.

There is no basis for striking the McCulloch and Laird affidavits because their factual accuracy is confirmed by Intermark's own expert witness, Ronald Perry. He admitted under oath that Microfibres' equipment was known in the industry, that it was commercially available, that its advantages were understood, and that Microfibres' equipment was not a trade secret. (Exh. E at 127, 128-29, 137-38).

In light of this testimony, the McCulloch and Laird affidavits should stand. Moreover, Perry's testimony confirms that there is no basis for finding a best mode violation. The Court of Appeals for the Federal Circuit has consistently held that there is no best mode violation for failing to disclose that which is known in the industry. See Young Dental Mfg. Co. Inc. v. Q3 Special Products, 112 F.3d 1137, 1144 (Fed. Cir. 1997) ("[A]n inventor need only disclose information about the best mode that would not have been apparent to one of ordinary skill in the art."); Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1547 (Fed. Cir. 1997) ("[W]hat is within the skill of the art need not be disclosed to satisfy the best mode requirement . . . ."). There is no dispute that the equipment used by Microfibres and its side-center-side controls were known in the flocked fabric industry as of July 31, 1992 and known to be advantageous.

4

B.  **The McCulloch and Laird Affidavits Properly Correct Intermark's Distortions Of Their Deposition Testimony.**

There is also no basis for striking the Laird and McCulloch affidavits as contradictory of their deposition testimony. The McCulloch and Laird affidavits simply fill the gaps in Intermark's inadequate factual investigate and correct Intermark's mischaracterizations. This is permitted. See White v. ABCO Engineering Corp., 221 F.3d 293, 304 (2nd Cir. 2000); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2nd Cir. 1996) ("[A] material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony, especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation.").

The McCulloch and Laird affidavits do not contradict their prior deposition testimony. They clarify and correct Intermark's mischaracterizations. For instance, Intermark points to paragraph 18 of McCulloch's affidavit as the "most outrageous" example of his alleged self-contradiction. (See Intermark's Memorandum at 5). It is not. It is an appropriate effort to correct Intermark's mischaracterization of page 104 of McCulloch's deposition testimony:

Intermark claims that McCulloch admitted at page 104 of his deposition that the heat setting process Laird developed was the best way of making the product claimed by the '021 Patent. The actual deposition testimony confirms that he said no such thing: (McCulloch Deposition, Exhibit F at 103-104).

5

This testimony does not say that the best way of making the patented invention is by using the heat setting equipment Microfibres purchased in 1991. McCulloch simply testified that Laird developed a new and improved way of heat setting Microfibres' flocked fabric. McCulloch is entitled to correct Intermark's deliberate misreading of his testimony. Rule v. Brine, Inc., 85 F.3d at 1011.

McCulloch's affidavit also properly corrects Intermark's distortion of page 108 of his deposition testimony, which Intermark reads to state that McCulloch admitted that Microfibres' heat setting process improved the creation of deep and dark colored transfer printed flocked fabrics created under the '021 Patent. It does not. Rather, McCulloch testified that the heat setting equipment improved several production efficiencies for manufacturing heat set flocked fabric:

> Q. And how did this proprietary process improve your ability to stay in that range to produce the samples that Mr. Laird made?
> A. Well, it was a safety improvement, so it minimized the risk of fires in ovens. That was a major plus. It was more cost effective to do it, and for transfer printing, transfer printing traditionally was cost -- it was a lower priced product and that was very important. So it was a more cost effective way. It used less energy, and it had better control -- it didn't yellow the fabric as much.
> Q. Why didn't it yellow the fabric as much?
> A. I think the dwell time, the temperature that the nylon was subjected to was shorter.
> Q. So with the new improved equipment you were able to create a flocked fabric for transfer printing with a shorter dwell time?
> A. It allowed us to run higher line speeds, product speeds.
> Q. And it prevented discoloration of the fabric, correct?
> A. It reduced it or minimized it.
> Q. So it improved the quality of the product, correct?
> A. I would say maybe yes, but the main, you know the main issue was, we had improvements of the efficiency, cost reduction, safety improvements, and --

6

(Exh. F at 108).

The only contradiction that McCulloch's affidavit actually made to his deposition testimony was related to the date that Microfibres' began using infrared heat setting equipment. At his deposition McCulloch incorrectly stated that the Glenro equipment was purchased *before* he conceived the idea for the '021 Patent. He was mistaken. Glenro's purchase records confirm that Microfibres purchased the infrared equipment *after* McCulloch conceived the idea for the '021 Patent. This was clearly an innocent mistake that should be permitted to stand.

There is no basis for Intermark's claim that McCulloch and Laird are attempting to contradict themselves. They are simply correcting Intermark's mischaracterizations of their deposition testimony with sworn affidavits. They are entitled to do so.

### C.   Microfibres' Secrecy Agreement With Glenro is Irrelevant.

Finally, Intermark hopes to prove a best mode violation by supplementing the record with a confidentiality agreement that Microfibres executed with Glenro in 1991. The document is irrelevant.

That Microfibres required its equipment supplier to execute a confidentiality agreement proves nothing. Intermark's own witness has confirmed that the flocked fabric industry already knew about infrared heat setting equipment and side-center-side control as of July 31, 1992. Because the equipment was known there was no best mode violation. Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1547 (Fed. Cir. 1997)

7

("[W]hat is within the skill of the art need not be disclosed to satisfy the best mode requirement . . . .").

In addition, the Court of Appeals for the Federal Circuit has explained that an inventor is entitled to keep secret those processes and pieces of manufacturing equipment that are known in the industry or are not claimed under the patent at issue. See Christianson v. Colt Indus. Operating Corp., 822 F.2d 1544, 1563 (Fed. Cir. 1987) (no violation of best mode for keeping secret an unclaimed process). No infrared heat setting equipment or process is claimed as part of the '021 Patent and therefore McCulloch had no obligation to disclose it.

Because the heat setting process used by Microfibres as of July 31, 1992 was known (as confirmed by Perry's deposition testimony) and because Microfibres' '021 Patent does not claim a particular method of heat setting flocked fabric, Microfibres' confidentiality agreement with Glenro does not demonstrate a best mode violation. It is a red herring.

## III. CONCLUSION

For the foregoing reasons Intermark's Motion to Strike should be denied.

MICROFIBRES, INC.
By its Attorneys,

Brent R. Canning, Esq. (CT 23991)
William R. Grimm, Esq. (CT 08057)
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903
P: 401.274.2000
F: 401.277.9600

October 20, 2003

## CERTIFICATION

TO:

Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

    I hereby certify that I mailed a copy of the within Objection to counsel of record, as above, on the 20th day of October, 2003.

#566010   16254 / 115115