UNITED STATES DISTRICT COURT FILED
FOR THE DISTRICT OF CONNECTICUT



2003 NOV -4  P 2: 48

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| INTERMARK FABRIC CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:02 CV 1267 (AVC) |
| ) | |
| v. ) | |
| ) | |
| MICROFIBRES, INC. ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S
OBJECTION TO PLAINTIFF'S MOTION TO STRIKE THE AFFIDAVITS OF
JAMES R. MCCULLOCH AND WILLIAM F. LAIRD**

William J. Cass (ct 12806)
Charles F. O'Brien (ct 22074)
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, Connecticut 06002
Telephone: (860) 286-2929
Facsimile: (860) 286-0115

*Attorneys for Plaintiff,*
Intermark fabric Corporation

**ORAL ARGUMENT REQUESTED**

I. **INTRODUCTION**

The "inventor" of the '021 patent, James McCulloch, admitted at his deposition that he failed to disclose the best mode of the invention. The ramifications of those truthful admissions were obviously unknown to him at that time. With the ramifications now known and understood, McCulloch now fervently wants to distance himself from those admissions and has attempted to do so through the use of his own Affidavit and the Affidavit of William F. Laird. Microfibres has not merely "filled in the gaps" of McCulloch's deposition testimony with these affidavits, but has instead attempted to completely change McCulloch's prior testimony so as to avoid - at a minimum - summary judgment.

The facts that illustrate by clear and convincing evidence that McCulloch failed to disclose the best mode of the claimed invention are not only relatively simple but are indisputable. In the Fall of 1991, Microfibres purchased some Glenro infrared heaters for heat setting its flocked fabric. The Glenro heaters "employed a central infrared sensor (also commercially available and supplied by Glenro) that automatically adjusted the temperature of the heaters according to the temperature at the center of the fabric." Exhibit B, ¶ 15.[1] The Glenro heaters, even with the built-in temperature sensors, however did not solve Microfibres' problem of uneven heat setting. Id.

In February of 1992, to address Microfibres' continued heat setting problem, at Laird's suggestion, Microfibres purchased two additional infrared sensors and thermometers from Glenro. Id., ¶ 16. Laird then installed the two additional sensors and thermometers "on the outside edges of the Glenro heaters in April of 1992." Id., ¶¶ 16 and 17. This solved the heat setting problem, thus creating the customized, trade secret heat setting system. Id., ¶ 17. As

---

[1] The lettered exhibits referred to herein refer to those exhibits attached to Microfibres' Memorandum of Law in Support of Its Objection to Intermark's Motion to Strike the Affidavits of James McCulloch and William Laird.

1

admitted by McCulloch during his deposition, it was Laird's customized heat setting system installed in April of 1992 - three months before the '021 patent application was filed - that provided the best mode of the invention.

It is Laird's customized system installed in April 1992 that is the best mode of the claimed invention, not the mere use of infrared heaters to heat set flocked fabric. Moreover, Microfibres' argument that the best mode was known in the industry is not only misleading but contradicts the evidence. McCulloch admitted that he failed to disclose this best mode and instead held it as a trade secret. The Second Circuit Court of Appeals does not allow Microfibres to now simply change McCulloch's testimony to avoid summary judgment. To allow such behavior would render the summary judgment process meaningless.

## II.  ARGUMENT

### A. Laird's 1992 Heat Setting System Was Not Known in the Industry

Microfibres never outwardly asserts that the admitted best mode of the invention was known in the industry before July 31, 1992. In other words, Microfibres offers no evidence that any other person or entity prior to July 31, 1992 (other than Laird) had installed additional sensors and thermometers on the outside edges of the infrared heaters so as to achieve side-center-side control in the heat setting of flocked fabrics. There is good reason for this as there is no such evidence.

Instead, Microfibres attempts to confuse an otherwise simple set of facts by suggesting that the best mode was known because its "heat setting equipment" was known and commercially available before July 1992. The logical question that Microfibres never answers is what does it mean by its "heat setting equipment"? That is, does it include only the Glenro infrared heaters installed in 1991 or does it include both the heaters and the additional sensors

2

and thermometers added by Laird in April of 1992? And if it includes the additional sensors and thermometers, does the term include the actual placing of the sensors and thermometers on the outside edges of the heaters as Laird did in April 1992? Microfibres not only fails to answer these questions, but uses the term in a misleading manner to suit its needs.

The "evidence" to which Microfibres points in describing its "heat setting equipment" suggests that the term includes only the infrared heaters and does <u>not</u> include the additional sensors and thermometers added by Laird in April 1992. See Opposition, pp. 2 - 3; Exhibit B, ¶ 12 and Exhibit C, 83:10 - 84:9. Specifically, Laird (in paragraph 12 of his Affidavit) and Madren (in his deposition) both testify that infrared heaters were used to heat set flocked fabric before July 1992. However, neither Laird nor Madren make any mention of any prior use or even prior consideration of using the sensors and thermometers added by Laird in April of 1992.[2]

Intermark does not deny that the use of infrared heaters was known prior to July 1992 and has never asserted that the best mode of the invention consists of the mere use of infrared heaters. Instead, as McCulloch has admitted, the customized heat setting system created by Laird in April of 1992 comprising the particular placement of the heaters and the additional sensors and thermometers added by Laird to the outside edges of the Glenro heaters is the admitted best mode of the invention. This was <u>not</u> known in the industry.

Microfibres misleadingly argues that the best mode was known and commercially available because Intermark tested and considered the "alleged secret heat setting equipment"

---

[2] In fact, Madren specifically testified concerning the manner in which Culp heat set its flocked fabrics <u>in 1991</u> and he makes no mention of using any additional sensors and/or thermometers on the sides of the infrared heaters. Exhibit 13, 84:7 - 86:4. What Madren also said, which Microfibres ignores, is that the particular heat setting process used by Culp in 1991 was kept by Culp as a trade secret. Exhibit 13, 85:24 - 86:4. This is evidence that custom in the industry was to keep internal heat setting processes secret which, in turn, only supports McCulloch's original testimony that Laird's 1992 customized heat setting system was not known in the industry and was trade secret.

3

and Culp was using "the equipment" as of July 31, 1992. See Opposition, p. 2 - 3. If Microfibres is arguing that Culp used and Intermark tested only the infrared heaters, then the argument is irrelevant because, as described *supra*, the mere use of the heaters is not the best mode. Therefore, the only logical interpretation is that Microfibres now asserts that Culp used and Intermark tested a heat setting system that included not only the infrared heaters but also included the additional sensors and thermometers added by Laird as well as Laird's placement of the sensors and thermometers on the outside edges of the heaters. This is untrue and Microfibres knows it. Although Culp did use and Intermark did consider the use of infrared heaters before July 1992, neither Culp nor Intermark used and/or even considered the use of any additional sensors and thermometers, never mind Laird's placement of the sensors and thermometers on the outside edges of the heaters. This argument exemplifies Microfibres' misleading use of the term "heat setting equipment" in an attempt to create an issue of fact.

Microfibres also used the term "heat setting equipment" during the deposition of Dr. Perry in an attempt to create the illusion that the best mode was known and thus try and support McCulloch's new testimony. See Opposition, p. 1 and 7 - 8. Dr. Perry never testified that the customized heat setting system created by Laird in 1992 was known in the industry before July 1992. Answering questions concerning the apparently fluid phrase "heat setting equipment", Dr. Perry testified that the Glenro infrared heaters with sensors installed therein were known. See Exhibit E, 128:1 - 4. As described *supra*, although the Glenro heaters came with sensors installed therein, the use of the Glenro heaters (even with the sensors installed therein) was not the best mode. This is seen by the fact that the said Glenro heaters with the sensors installed therein did <u>not</u> solve Microfibres' heat setting problems. See Exhibit B, ¶ 15. Consequently, no matter how Microfibres tries to twist Dr. Perry's testimony using the misleading term "heat

setting equipment", he did not testify that Laird's 1992 heat setting system was known as of July 1992. In fact, during Dr. Perry's deposition, Microfibres' counsel actually refused to define the term "heat setting equipment". Exhibit G, 128:11 - 129:9. This refusal only underscores Microfibres' attempt to create an issue of fact where none exists.

The fact that the sensors added by Laird in April of 1992 were commercially available is irrelevant. There is no requirement that the best mode cannot be achieved through the combination of commercially available equipment.[3] Moreover, although the sensors and thermometers added by Laird in 1992 were commercially available, Laird's idea of attaching the additional sensors and thermometers to the outside edges of the heaters to achieve side-center-side control was not known. Again, it was this overall customized system that was the best mode that McCulloch admittedly failed to disclose, not the use of the Glenro heaters themselves.

### B. Intermark Did Not File the Motion For Summary Judgment Prematurely

What documents Intermark should have waited to review before filing the motion for summary judgment is unclear. See Opposition, p. 2 - 3. What is clear is that the documents finally received from Microfibres as well as those received from Glenro show that McCulloch's admissions during his deposition are true and thus only bolster the need to strike McCulloch and Laird's Affidavits.

Microfibres argues that by not waiting for its documents, Intermark did not know that infrared heaters were used to heat set flocked fabric before July 1992 by companies such as Culp. See Opposition, 2 - 3. This is completely untrue. Microfibres cites to the deposition of Boyd Madren of Culp wherein Madren testified that Culp had purchased a Casso-Solar infrared heater before July 1992. See Opposition, p. 2. Madren's deposition took place on May 12, 2003

---

[3] It is interesting to note that the '021 patent itself is nothing more than a combination of known elements.

5

and Intermark filed the Motion for Summary Judgment in July 2003. How Intermark did not know about Culp's purchase of the Casso-Solar heater is unclear to Intermark. Nevertheless, as set forth *supra*, Culp's purchase and use of the Casso-Solar infrared heater is irrelevant as that is not the best mode of the invention.

As also set forth *supra*, Microfibres' assertion Intermark tested the "allegedly secret heat setting equipment" is simply wrong. See Opposition, p. 3. This assertion is nothing more than an attempt to create an issue of fact where none exists by suggesting that the heat setting equipment considered by Intermark included more than infrared heaters, that is, that Intermark considered also using the additional sensors and thermometers added by Laird in 1992. Such a suggestion is completely untrue and Microfibres knows it.

### C. The Affidavits of McCulloch and Laird Do Not Merely Fill In the Gaps of McCulloch's Testimony

Microfibres cites to McCulloch's most incredible deviation from his deposition testimony as an example of how he and Laird were merely filling in the gaps of their testimony. See Opposition, p. 5 - 6. This is not only completely untrue but is not and cannot be supported by even the most stretched reading of McCulloch's testimony. The transcript is clear that McCulloch admitted that Laird's 1992 heat setting system was that "best way" of practicing the claimed invention and "certainly was a major improvement of over how we had done it in the past." Exhibit F, 103:2 - 104:23. Microfibres' argument that McCulloch was not talking about heat setting flocked fabric in the context of the claimed invention, that is, with dark pigmented adhesives, defies logic and ignores the plain meaning of the testimony. See Opposition, p. 5 - 6.

Microfibres incorrectly states that Intermark distorts McCulloch's testimony on page 108 of his deposition transcript. See Opposition, p. 6. Microfibres misreads Intermark's Memorandum which correctly shows that McCulloch admitted on pages 103 and 106 that Laird's

6

1992 heat setting system improved the creation of deep dark colored transfer printed flocked fabric under the '021 patent. See Memorandum, p. 4 (McCulloch admitted that "Laird's heat setting system allowed one to achieve deep dark colors under the invention and improved color uniformity across the face of the flocked fabric") There is no question that McCulloch made these admissions as is shown on the correct pages of the transcript.

Nevertheless, although McCulloch now wants us to believe that Laird's 1992 heat setting system is nothing more than a production efficiency, he admitted <u>on page 108</u> of his deposition transcript that the heat setting system has a material affect on the claimed invention. See Opposition, p. 6. For example, McCulloch admitted that Laird's heat setting system minimized the yellowing of the fabric which has a material affect on the transfer printed end product. See Affidavit of Ronald S. Perry, ¶¶ 6-7, filed on August 25, 2003 with Intermark's Memorandum of Law in Reply to Microfibres' Objection to Intermark's Motion for Summary Judgment. Microfibres' attempt to change and misconstrue McCulloch's testimony so as to allegedly show that Laird's 1992 heat setting system was nothing more than a production efficiency is a thinly veiled attempt to pigeon hole the system into a potential exception of the best mode rule.

McCulloch did not incorrectly testify that the Glenro heater was purchased before he conceived his invention. See Opposition, p. 7. McCulloch (as did Laird and James Fulks) testified at his deposition in April 2003 that he conceived of his invention in April of 1992. Microfibres also executed Answers to Interrogatories stating that conception took place in April 1992. After the deposition of Boyd Madren of Culp in early May 2003, wherein Madren produced and identified fabric samples consisting of transfer printed flocked fabric with dark pigmented adhesives that were on sale at least as of December 1991, McCulloch attempted to

7

change his deposition testimony to state that he conceived of the invention in March 1991.[4] McCulloch correctly testified during his deposition that the Glenro heater was purchased before he conceived of the invention because he honestly testified that conception took place in April 1992. This just shows that McCulloch is now entangled in his own web of trying to change the record to create a chronological history that will match his new best mode story. Such evidence provides further reason to strike Laird and McCulloch's Affidavits and, moreover, to grant summary judgment.

### D. The Secrecy Agreement Corroborates McCulloch's Deposition Testimony

The Secrecy Agreement is highly relevant as it completely corroborates McCulloch's deposition testimony that he considered Laird's 1992 heat setting system to be the best mode of the invention and that he held the best mode as a trade secret. See Opposition, p. 7 - 8; see also Supplemental Memorandum of Law in Support of Plaintiff Intermark Fabric Corporation's Motion for Summary Judgment Under 35 U.S.C. § 112, ¶ 1 filed on September 30, 2003. This evidence not only fully corroborates McCulloch's deposition testimony but underscores McCulloch and Laird's lack of candor in concocting the new story concerning the best mode via their respective affidavits. This provides not only further reason to strike that affidavits but provides additional evidence of inequitable conduct. See Jack Frost Laboratories, Inc. v. Physicians & Nurses Manuf. Corp., 901 F.Supp. 718, 729 (S.D.N.Y. 1995)("[Inventor's] lack of candor and extraordinary willingness to depart from prior deposition testimony in this trial bolsters the conclusion that he intended to deceive the Patent Office when applying for the patent.")

---

[4] McCulloch's attempt to change that portion of his testimony is the subject of Intermark's pending Motion to Exclude Evidence and to Strike Pleadings filed on June 10, 2003.

8

## IV. CONCLUSION

Based on the above and the well-settled case law in the Second Circuit Court of Appeals, Intermark's Motion to Strike should be granted and the Affidavit of James R. McCulloch and the Affidavit of William F. Laird should be disregarded from consideration and stricken from the record.

Respectfully submitted,
For the Plaintiff

By: _____
Charles F. O'Brien (ct 22074)
William J. Cass (ct 12806)
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, Connecticut 06002
Telephone: (860) 286-2929
Facsimile: (860) 286-0115

Dated: 11/4/03

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Plaintiff's Memorandum of Law in Reply to Defendant's Objections to Plaintiff's Motion to Strike the Affidavits of James R. McCulloch and William F. Laird was served via regular mail on this 4th day of November, 2003 upon:

Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley. Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405

By: _____
Charles F. O'Brien, Esq.