UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| INTERMARK FABRIC CORPORATION,<br>　　　　Plaintiff,<br><br>　　v.<br><br>MICROFIBRES, INC.<br>　　　　Defendant. | Civil Action No. 3:02 CV 1267 (AVC) |

**PLAINTIFF INTERMARK FABRIC CORPORATION'S MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER §§102 AND 103**

**ORAL ARGUMENT REQUESTED**

## I. INTRODUCTION

There is no genuine issue of material fact that Intermark's accused Frosty product was first produced and sold in 1989, three years before the asserted '021 patent was filed on July 31, 1992. Intermark has produced both samples and production records corroborating its prior use of Frosty as well as testimony and corroborating documentation that it was publicly known to transfer print on Frosty at least prior to the conception of the claimed invention. Moreover, the prior knowledge, use and sale of transfer printed flocked fabrics with dark pigmented adhesives in the 1980's by other manufacturers is corroborated by publications and contemporaneous production records and samples. In an attempt to create an issue of fact where none exists, Microfibres ignores the documentary and physical evidence and merely alleges that the witnesses are "interested" in the outcome of the case.

Most telling, James McCulloch, the owner of Microfibres and the alleged inventor, has now changed his testimony concerning when he conceived of the invention. At his deposition, and in interrogatories, he testified that he conceived of the invention in April 1992. Thereafter confronted with prior art produced by an entity named Culp, Inc. showing that the claimed invention was on sale in at least December 1991, McCulloch changed his testimony claiming that he conceived of the invention in March 1991. Such inconsistent testimony by the inventor himself, cannot, as a matter of law, create a genuine issue of material fact.

## II. ARGUMENT

### A. The '021 Patent is Invalid Under 35 U.S.C. §102

#### 1. Intermark's Frosty Product Anticipates the '021 Patent

Through actual fabric samples of its Frosty product dating back to 1989 and corresponding original production records as well as correspondence and testimony, Intermark

has shown clear and convincing evidence that the claimed invention is anticipated under 35 U.S.C. §102.[1] Microfibres admits that in 1991: (1) Microfibres was supplying Intermark with flock and McCulloch and Fulks knew about the relationship; 56(a)1 and 56(a)2, ¶¶ 19-22 and 27 - 28; (2) Microfibres knew that Intermark's products were transfer printed; Id., ¶26; (3) Microfibres knew that Intermark was interested in purchasing "Type 66" nylon flock because Intermark sold much of its products to transfer printers; Id., ¶¶ 23 - 25; (4) Kaija visited Intermark's plant on more than one occasion to address a quality control problem during which time Kaija observed a production run of a flocked fabric with a textile substrate, natural flock and a dark pigmented adhesive and was thus privy to machine settings used by Intermark to manufacture its goods; Id., ¶¶ 29 - 32; (5) Kaija took samples of Frosty back to Microfibres; Id., ¶33; (6) not only did Microfibres and Kaija know that dye index was critical to Intermark because it affected transfer printing of Intermark's flocked fabrics, but Microfibres was periodically testing the flock being supplied to Intermark in the Fall of 1991 to ensure that the flock met Intermark's dye index requirement "so that its Frosty product could be correctly transfer printed"; Id., ¶¶ 42 - 45 and 47; and (7) McCulloch knew about the quality control issues that arose in 1991; Id., ¶50.

    Kaija does not deny that he knew about the end uses of the Frosty product but merely testifies that he now "has no recollection" of being provided information about Intermark's products and their end-uses. Exhibit 25, ¶ 2.  This testimony however completely contradicts the admitted evidence set forth above.  Kaija's assertion that in 1991 Intermark was protective of its product information also completely contradicts the admitted evidence. Exhibit 25, ¶ 3.

---

[1] Intermark suffered a flood in 1992 wherein a large volume of sales documents, invoices and samples were destroyed.  Exhibit WW and Exhibit XX, p. 23 ln 1 - p. 24, ln 12.  Nevertheless, Intermark has still been able to produce a large amount of documentation and physical evidence.

### 2. The Oral Testimony is Corroborated

Hemendrah Shah's testimony that in 1985 he developed a transfer printed flocked fabric with dark pigmented adhesives for Vertipile and that the product was known, in public use and on sale in 1985 is fully corroborated by the document entitled "Experimental Production Run." Exhibit AA; Memorandum at p. 15 - 16. The 1985 document also corroborates Peter Hadley's testimony that Vertipile was manufacturing and selling transfer printed flocked fabric with dark pigmented adhesives in 1985. Id. The 1985 document, prepared contemporaneously with the development, manufacture and sale of Vertipile's product in 1985 and which was produced by Shah himself from his own files, fully corroborates Shah and Hadley's testimony. Sandt Technology, Ltd. v. Resco Metal and Plastics Corporation, 264 F.3d 1344, 1350 (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the most reliable proof that the inventor's testimony has been corroborated"). The 1985 document also corroborates the testimony of Bunch, Shah and Hadley that in the 1980's Vertipile was selling flocked fabric with dark pigmented adhesives to Bunch Fabrics who would then transfer print the flocked fabric and sell the end product. Memorandum, p. 14 - 15; Exhibit YY, p. 97 ln 5 - p. 98 ln 6. Incredibly, Microfibres thoroughly ignores the 1985 document.

Shah and Hadley's testimony that the claimed invention was known, publicly used and on sale in the 1980's is further corroborated by the 1990 publication entitled "Design with Flock in Mind" which discloses transfer printed flocked fabrics with pigmented adhesives and of which Shah and Hadley assisted in the preparation. 56(a)1 and 56(a)2, ¶ 156-66.

With respect to Culp, Microfibres' admission that Culp was manufacturing and selling transfer printed flocked fabric with dark (i.e. black) pigmented adhesives in December 1991

3

alone renders the '021 patent invalid under 35 U.S.C. §102(a). 56(a)1 and 56(a)2, ¶¶ 132 - 134. Nevertheless, the testimony of Shah and Madren concerning the development, manufacture and sale of the claimed invention in 1991 is corroborated by not only by the physical samples but also contemporaneous documentation, and thus Microfibres improperly denies the related material facts concerning Culp and Spectro Coating. 56(a)1 and 56(a)2, ¶¶ 123-29, 131 and 135; Opposition, p 14-15.

Microfibres fails to produce any evidence that Moustafa Nour is an interested party - he is not. Opposition, p. 17-19. Nour's testimony that in the 1980's Malden Mills was manufacturing and selling transfer printed flocked fabrics with dark pigmented adhesives not only invalidates the '021 patent, but also corroborates Hadley's testimony that Malden Mills was manufacturing and selling transfer printed flocked fabrics with dark pigmented adhesives in 1986 or 1987. 56(a)1, ¶¶ 170-81. Hadley, now employed by Claremont Fabrics, testified that he has an interest in the outcome in this case primarily because Claremont is a supplier of flock worldwide. Exhibit 17, p. 216 ln 11 - p. 217, ln 20. Being a supplier however is not the type of interest that triggers the corroboration rule. See Thomson v. Quixote Corp., 166 F.3d 1172, 1176 (Fed. Cir. 1999)(a supply relationship "does not rise to the level of self-interest required to justify triggering the application of the corroboration rule"). Moreover, no one other than McCulloch claims to be the inventor of transfer printed flocked fabrics with dark pigmented adhesives which is further evidence of a lack of interest of those testifying as to the outcome of this case. See Finnigan Corp. v. International Trade Commission, 180 F.3d 1354, 1368 (Fed. Cir. 1999). Whether the corroboration rule is triggered or not, there is a plethora of documentation and physical evidence to corroborate the testimony that the claimed invention was known, in public use and on sale long before July 31, 1991. Therefore, this case factually distinguishable from the

cases cited to by Microfibres concerning corroboration and is instead akin to Thomson, 166 F.3d 1172 (Fed. Cir. 1999) and Sandt, 264 F.3d 1344 (Fed. Cir. 2001) wherein corroboration was found and the respective patents were invalidated. Opposition, pp. 17-19.

Finally, ignoring the Culp and Leathertex samples, Microfibres asserts that Intermark has not produced any samples that pre-date the invention or patent application. Opposition, p. 24. It is unconventional for a company to retain documents for fifteen to twenty years. Moreover, many companies suffered fires that destroyed all relevant documents and samples.[2] This gap in time was only magnified by Microfibres' five year delay during prosecution in scheduling tests that normally took no more than several weeks to schedule. 56(a)1, ¶ 182. In an incredible irony, Intermark has produced samples of its Frosty product dating back to 1989 while Microfibres has failed to produce even one sample of its product that pre-dates the filing of the application.

### 3.   Hemendrah Shah and the Leathertex Sample

The July 11, 1991 letter, the August 11, 1991 letter and the actual Leathertex fabric sample are not cobbled together to show anticipation but are contemporaneous documentary and physical evidence that corroborate Shah's testimony that the claimed invention was in public use prior to July 31, 1991, thus invalidating the patent under 35 U.S.C. §102(b). Memorandum, p. 18 and 25; Opposition, p. 13; see also Sandt, 264 F.3d at 1350 - 51. Moreover, the Leathertex sample itself includes all of the limitations of the claimed invention and thus anticipates the '021 patent under 35 U.S.C. §102(a). 56(a)1, ¶ 140-41.

The case cited by Microfibres, Studiengelellschaft Kohler v. Dart Indus., 726 F.2d 724, 726 - 27 (Fed. Cir. 1984), is distinguishable because there the defendant combined three

---

[2] Bunch Fabrics suffered a fire in 1985 wherein sales documents, invoices and samples were destroyed. Exhibit YY, p. 114 ln 2 - p. 115 ln 16. In 1996, both Spectro Coating and Claremont Flock suffered fires wherein relevant documents and samples were destroyed. Exhibit CCC, p. 111 ln 19 - 24 and Exhibit FFF, p. 14 ln 19 - p. 15 ln 1 and p. 187 ln 16 - p. 188 ln 1. Lastly, in 1995, Malden Mills suffered a very famous disastrous fire. Exhibit DDD, p. 20 lns 7 - 8 and Exhibit EEE.

5

references and expert testimony in an attempt to create an anticipatory reference. Opposition, p. 13. Here, Shah is a fact witness rather than an expert witness and the one who actually received the corroborating documents and sample.

### 4. "Design With Flock In Mind" Anticipates the '021 Patent

Microfibres admits that Design With Flock in Mind was published and distributed by the AFA in 1990 and that the publication discloses (1) a flocked fabric with a substrate, including a textile substrate, (2) transfer printing flocked fabric, and (3) pigmenting adhesives in the manufacture of flocked fabrics. 56(a)1 and 56(a)2, ¶¶ 156 and 161-64. Microfibres further admits that the block diagram in Figure 2 "teaches one skilled in the art to combine elements included in manufacturing flocked fabrics." Id., ¶¶ 165 - 166.[3] As admitted to by Microfibres' expert and thus improperly denied, a logical relationship exists between the titles in each block in Figure 2 and the headings in the publication. Exhibit ZZ, p. 68 lns 5 - 9 and 56(a)2, ¶ 167-68. Dr. Hauser further admitted that Figure 2 actually combines the disclosed elements of pigmented adhesives in the manufacture of flocked fabrics and transfer printing flocked fabric to enable one skilled in the art to practice the claimed invention.[4] Exhibit ZZ, p. 62 ln 8 - p. 68 ln 17. In denying these facts to which Dr. Hauser admitted, Microfibres relies on a declaration from its second expert Dr. Brookstein. 56(a)1 and 56(a)2, ¶¶ 167-69. Microfibres cannot create a genuine issue of material fact by pitting one of its experts against the other.

### 5. The Van Heel Publication Anticipates the '021 Patent

Under the <u>singular</u> heading of "Finishing Flocked Fabrics", the Van Heel document - published in the 1970's - discloses and teaches pigmenting the adhesive in flocked fabrics and

---

[3] The issue of inherent anticipation is inapplicable because, as Microfibres admits, Design with Flock in Mind contains all of the limitations of the claimed invention. Opposition, p. 17; 56(a)1 and 56(a)2, ¶¶ 161-66.

[4] Dr. Perry, Intermark's expert, agrees that Figure 2 of Design With Flock in Mind combines all of the elements of the claimed invention disclosed in the document. See Exhibit AAA; p. 114 ln. 15 - p. 115 p. 9.

6

transfer printing flocked fabrics. Memorandum, p. 21; see also 56(a)1, ¶¶ 153-55. The Van Heel document also includes the same block diagram included in the publication Design with Flock in Mind, which further enables one skilled in the art to practice the claimed invention. Exhibit AAA; p. 109 ln 15 - p. 114 ln 6. Therefore, Microfibres' argument that Van Heel is not anticipatory because it allegedly discloses pigmented adhesives and transfer printing "in separate portions of the publication but never suggests their combination", ignores the plain language of the reference and is just not true.[5] Opposition, p. 17.

### 6. The Culp Fabric Sample Anticipates the '021 Patent

Microfibres admits that in December of 1991, Culp was in production of and selling transfer printed flocked fabric with black pigmented adhesives. 56(a)1 and 56(a)2, ¶¶ 133 - 134. Based on this admission alone, because McCulloch did not conceive of the claimed invention until April of 1992 (if he did at all), the Culp sample alone invalidates the '021 patent under 35 U.S.C. §102(a). Microfibres' simply ignores the contemporaneous corroborating evidence, including the actual fabric sample from 1991, in asserting that the deposition testimony of Shah and Madren "is simply uncorroborated testimony." Opposition, p. 14 - 15. This is simply not true.

### 7. The Squires Patent Anticipates the '021 Patent

Microfibres' expert, Dr. Brookstein admitted that the Squires patent discloses and teaches transfer printing on flocked fabric on a textile substrate and discloses pigmenting the adhesive. Exhibit BBB, p. 77 ln 23 - p. 79 ln 2.[6]  Dr. Brookstein now attempts to contradict his own deposition testimony by opining that the substrate in Squires is not a textile substrate.

---

[5] Microfibres improperly denies that the Van Heel publication teaches transfer printed flocked fabric with pigmented adhesives as it failed to cite to any supporting documentation for that denial. 56(a)1 and 56(a)2, ¶ 155.

[6] Microfibres incorrectly asserts that the '021 patent claims a "plush textile". Opposition, p. 4.

Opposition, p. 15. Such contradictory opinions should be disregarded and stricken. Dr. Brookstein also testified that the term "raised" in conjunction with the position of the flocked fibers in the '021 patent means "anything from perpendicular <u>to</u> <u>not</u> <u>perpendicular</u>". Exhibit BBB, p. 169 lns 21 - 25; 56(a)1, ¶ 142. Microfibres agrees with that definition. 56(a)2, ¶ 142. As the fibers in Squires are "not perpendicular", they are "raised" fibers as claimed in the '021 patent.

Microfibres admits that Squires discloses and teaches all of the limitations in the '021 patent by asserting that "<u>Squires</u> <u>cautions</u> <u>against</u> <u>creating</u> <u>the</u> <u>sort</u> <u>of</u> <u>fabric</u> <u>taught</u> <u>by</u> <u>the</u> <u>'021</u> <u>patent</u> because of coloration problems." Opposition, p. 15 - 16. In order to caution against creating the fabric taught by the '021 patent, Squires must - by definition - disclose the fabric taught in the patent. Even if Squires does caution against creating the claimed invention - which is does not do - it still anticipates the invention. See <u>Celeritas Technologies, Ltd. v. Rockwell International Corp.</u>, 150 F.3d 1354, 1361 (Fed. Cir. 1998)("A reference is no less anticipatory if, after disclosing the invention, the reference disparages it. Thus, the question whether a reference 'teaches away' from the invention is inapplicable to the anticipation analysis.")

**B.     The '021 Patent is Invalid Under 35 U.S.C. §103**

As set forth *supra*, Design With Flock In Mind and Van Heel, individually, disclose each and every limitation of the invention claimed in the '021 patent and enables one skilled in the art to practice the invention. At the very minimum, Design with Flock in Mind and Van Heel render the invention in the '021 patent obvious. Moreover, Design with Flock in Mind and Van Heel are not cumulative of prior art already before the examiner. See Microfibres Opposition, p. 20 - 21. The examiner did not even have a reference before her that disclosed a dark pigmented adhesive, never mind a <u>single</u> <u>reference</u> that discloses both a flocked fabric with a pigmented adhesive and transfer printing flocked fabric. 56(a)1 and 56(a)2, ¶¶ 77, 80 - 82 and 84. With

8

respect to Squires, it does not teach away from the '021 patent but instead specifically claims the invention in Claim 17, including a heat set version of the invention. 56(a)1, ¶¶ 145 - 150. Therefore, at the very minimum, Squires renders the invention obvious.

### C. The '021 Patent is Unenforceable Due to Microfibres Fraud Before the Patent Office

#### 1. Microfibres Failed to Disclose Dark Pigmented Adhesives

Although the examiner was clearly focused in on the issue of pigmenting the adhesive, Microfibres plainly admits that "[a]t no time during the prosecution of the '021 patent did McCulloch, Fulks, Laird or Microfibres inform the PTO that it was known prior to July 31, 1991 to use dark pigmented adhesives in the manufacture of flocked fabrics." 56(a)1 and 56(a)2, ¶80. Dr. Brookstein's new opinion that McCulloch's disclosure of pigmented adhesives necessarily includes dark pigmented adhesives and that the Patent Office "understood" this, is negated not only by this admission but also by Microfibres' own actions during the prosecution of the '021 patent, actions that it now ignores. Opposition, p. 22. Microfibres distinguished the Katz Patent and Smith Patent by arguing that neither disclosed a dark pigmented adhesives. Memorandum, p. 33 - 35. Moreover, Microfibres' amendment of claim 13 to include the limitation of a "dark" pigmented adhesive enabled Microfibres to distinguish around the prior art before the examiner and thus shows that the examiner was mislead into believing that dark pigmented adhesives were novel. Memorandum, p. 33-35. Microfibres cannot create an issue of fact using a new opinion by Brookstein that completely contradicts the evidence.

#### 2. Failure to Disclose Prior Reduction in Pressure

As a matter of law, the fact that Microfibres withdrew the claims specifically directed to pressure does not protect Microfibres. Opposition, p. 23; see also Baxter Int., Inc. v. McGaw, Inc., 149 F.3d 1321, 1332 (Fed. Cir. 1998)("cancellation or amendment of a claim 'tainted' by

9

inequitable conduct will not excuse the patentee's intentional failure to disclose material references"). Moreover, the examiner stated on several occasions that issue of the reduction of pressure under the invention was critical to the invention and thus the issue is material to the allowed claims. 56(a)1 and 56(a)2, ¶ 96. It was not until the examiner started to question this critical feature that the claims where withdrawn.

### 3. The Frosty Product Should Have Been Disclosed

Although Frosty is the basis of Microfibres' infringement claims, it now claims it had no obligation to disclose the Frosty product to the Patent Office. Opposition, p. 24. As McCulloch represented to the Patent Office that performing the admittedly well known process of transfer printing on a product such as Frosty was novel, Frosty is material prior art that Microfibres admittedly knew about and should have disclosed. The degree of materiality increases ten-fold when placed against the backdrop of the admission that there was not one prior art reference before the examiner that disclosed the use of dark pigmented adhesives in flocked fabrics. 56(a)1 and 56(a)2, ¶¶ 77, 80 - 82 and 84.

## III. CONCLUSION

Based on the above and Intermark's Memorandum, the Motion for Summary Judgment should be granted and attorneys' fees awarded to Intermark under 35 U.S.C. §285.

```
                                    For the Plaintiff
                                    Intermark Fabric Corporation

                                By: _____
                                    William J. Cass (ct 12806)
                                    Charles F. O'Brien (ct 22074)
                                    CANTOR COLBURN LLP
                                    55 Griffin Road South
                                    Bloomfield, Connecticut 06002
                                    Telephone: (860) 286-2929
Dated: 10/28/03                     Facsimile: (860) 286-0115
```

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Plaintiff Intermark Fabric Corporation's Memorandum of Law in Reply to Defendant's Objection to Plaintiff's Motion for Summary Judgment Under §§102 and 103 was served via regular mail on this 28th day of October, 2003 upon:

Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley. Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405

By: _____
Charles F. O'Brien, Esq.

11