UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTERMARK FABRIC CORPORATION,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICROFIBRES, INC.<br>　　　　Defendant. | Civil Action No. 3:02 CV 1267 (AVC) |

**DECLARATION OF CHARLES F. O'BRIEN IN SUPPORT OF PLAINTIFF INTERMARK FABRIC CORPORATION'S MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER §§102 AND 103**

I, Charles F. O'Brien, hereby declare as follows:

1.　　　I am an associate with the firm of Cantor Colburn LLP and I am one of the attorneys representing Plaintiff, Intermark Fabric Corporation in this matter. If called upon as a witness, I could and would testify competently thereto. I have personal knowledge of all the facts set forth in this Declaration.

2.　　　Attached hereto as Exhibit WW is a true and accurate copy of a letter from Joanne Meyer of Intermark Corporation (f/k/a Intermark Flock Corp.) to Eva Jones of Standard Sprinkler Corp. dated January 30, 1992 and a check made payable to Intermark Corporation (f/k/a Intermark Flock Corp.).

3.　　　Attached hereto as Exhibit XX is a true and correct copy of excerpts from the transcript of the deposition of William Lucchesi taken under oath in connection with this matter on July 24, 2003.

4. Attached hereto as Exhibit YY is a true and correct copy of excerpts from the transcript of the deposition of Charles Bunch taken under oath in connection with this matter on September 22, 2003.

5. Attached hereto as Exhibit ZZ is a true and correct copy of excerpts from the transcript of the deposition of Dr. Hauser taken under oath in connection with this matter on September 16, 2003.

6. Attached hereto as Exhibit AAA is a true and correct copy of excerpts from the transcript of the deposition of Dr. Perry taken under oath in connection with this matter on September 23, 2003.

7. Attached hereto as Exhibit BBB is a true and correct copy of excerpts from the transcript of the deposition of Dr. Brookstein taken under oath in connection with this matter on September 10, 2003.

8. Attached hereto as Exhibit CCC is a true and correct copy of excerpts from the transcript of the deposition of Hemendrah Shah taken under oath in connection with this matter on May 22, 2003.

9. Attached hereto as Exhibit DDD is a true and correct copy of excerpts from the transcript of the deposition of Moustafa Nour taken under oath in connection with this matter on September 17, 2003.

10. Attached hereto as Exhibit EEE is a true and correct copy of a document entitled "A photographic essay of the Malden Mills fire" obtained from the Web site for the Boston Globe entitled <boston.com> on October 24, 2003.

11. Attached hereto as Exhibit FFF is a true and correct copy of excerpts from the transcript of the deposition of Peter Hadley taken under oath in connection with this matter on July 31, 2003.

Signed under the pains and penalties of perjury on this 28th day of October 2003.

_____
Charles F. O'Brien, Esq.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the Declaration of Charles F. O'Brien in Support of Plaintiff Intermark Fabric Corporation's Memorandum of Law in Reply to Defendant's Objection to Plaintiff's Motion for Summary Judgment Under §§102 and 103 was served via regular mail on this 28th day of October, 2003 upon:

Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley. Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405

By: _____
Charles F. O'Brien, Esq.

# EXHIBIT WW

# Intermark Flock Corp.

Manufacturer of Upholstery, Apparel, Packaging and Industrial Flocked Products

Community Avenue
P.O. Box 319
Plainfield, Connecticut 06374
Telephone (203) 564-2757
Fax (203) 564-1714

January 30, 1992

Ms. Eva Jones
Standard Sprinkler Corp.
P.O. Box 411
Gales, Ferry, CT 06335

Dear Eva:

Enclosed, please find our itemized list of items which were ruined when the main sprinkler pipe burst while being repaired by your company on January 15, 1992.

Please call if you have any questions.

Sincerely,

Joanne Meyer
Joanne Meyer
Accounting

CC: W. Lucchesi
    File (1)

JM/cmm

IFC-03569

| Quantity | Item Desciption | Price |
|---|---|---|
| 5 Cases | Invoices | $517.50 |
| 7 Cases | Sales Notes | 638.89 |
| 4 Cases | Carbonless Checks | 719.80 |
| 5 Cases | Sample Folders | 665.00 |
| 4 Cases | Sample Sheets | 667.00 |
| 3 Cases | Time Cards | 45.00 |
| 6 Cases | Brown Paper Towels | 158.64 |
| 2 Cases | Toilet Tissue | 78.00 |
| 3 Cases | 8 1/2 x 11 Copy Paper | 107.70 |
| 3 Cases | 8 1/2 x 14 Copy Ppaer | 242.70 |
| 3 | Sharp Calculators | 104.70 |
| 5 Cases | Computer Paper | 142.45 |
| 6 Cases | 2" Masking Tape | 175.68 |
| 4 Cases | 1" Masking Tape | 87.84 |
| 5 Cases | 3" Brown Tape | 160.80 |
| 4 Cases | 3" Water Tape | 102.60 |
| 4 Cases | 2" Clear Tape | 122.40 |
| 5 | Typewriters | 429.83 |
| 1 Full Set - Industry Show Sample Hangers | | $1,150.00 |
| 50 New Ceiling tiles | | 149.50 |
| 15 Sheets of Plywood to replace floor plus Screws | | 187.04 |
| 1 Vacuum Cleaner | | 92.38 |
| 9 Hours (3 Men for Clean-Up) | | 218.50 |
| | GRAND TOTAL | $6,963.32 |

|  |  |  |
|---|---|---|
| | CONTINENTAL CASUALTY CO. <br> VALLEY FORGE INSURANCE CO. <br> AMERICAN CASUALTY CO. <br> COLUMBIA CASUALTY CO. | TRANSPORTATION INSURANCE CO. <br> TRANSCONTINENTAL INSURANCE CO. <br> CNA CASUALTY OF CALIFORNIA <br> CNA LLOYDS OF TEXAS <br> TRANSCONTINENTAL TECHNICAL SERVICES, INC. |

14131309 719

| | | | Date 11/23/92 | Bank Acct. 493 |
|---|---|---|---|---|

| Number | Desk Code | Insured STANDARD SPRINKLER SYSTEM | Issuing Off. No. 14 |
|---|---|---|---|
| 4 426141 | L3 | | |
| & Policy No. -7853773 | | Claimant INTERMARK FLOCK CORP | Date of Loss 01/14/92 |

Comp. Ind From-Thru (Dates) In Payment of **FULL SETTLEMENT OF ALL CLAIMS**

PAY TO THE ORDER OF    HARRIS BANK Glencoe, Glencoe, Illinois    PAY ► Dollars • Cents ******$3,500.00

INTERMARK FLOCK CORP
AND ATTY JUDY A RABKIN
P O BOX 5116
WESTPORT    CT    06881

VOID IF NOT CASHED IN SIX MONTHS FROM MONTH OF ISSUE

⑈14131309⑈ ⑆071922227⑆ 04⎯229⎯493⎯2⑈

IFC-03568

# EXHIBIT XX

COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - x
                                      :
INTERMARK FABRIC CORPORATION,         :
                                      :
                Plaintiff,            :
                                      : Civil Action
        vs.                           :
                                      : No. 3:02 CV 1267
MICROFIBRES, INC.,                    :
                                      :
                Defendant.            :
                                      :
- - - - - - - - - - - - - - - - - - - x

       Deposition of WILLIAM LUCCHESI, JR., taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Cantor Colburn LLP, 55 Griffin Road South, Bloomfield, Connecticut, before Jenny L. Albert, License #00207, a Registered Professional Reporter and Notary Public in and for the State of Connecticut, on Thursday, July 24, 2003, at 9:51 a.m.

SCRIBES, INC.

1  Q. Who transfer printed on Intermark's Frosty
2  product in 1989?
3  A. Culp, Spandauer and some other people but
4  I -- I'd have to -- I don't -- can't give you the
5  entire list.
6  Q. Does Intermark have any records of its sales
7  of Frosty product to Culp in 1989 on which this
8  transfer printing occurred?
9  A. I'm -- I don't know. I don't know. I
10 believe yes but I don't know. I can't answer that.
11 Q. Does Intermark have any records of its sales
12 of Frosty product to Spandauer on which Spandauer
13 transfer printed in 1989?
14 A. A lot of our records were, during that time
15 period, were lost due to a fire and flood that we had
16 in our office area. So many of the records were
17 destroyed.
18 Q. Does Intermark have any records of sales of
19 Frosty product to Spandauer in 1989 which Spandauer
20 transfer printed?
21 A. Again, I believe that most of the records
22 were destroyed due to our -- during the flood and fire
23 that we had.
24 Q. Sir, isn't it true that Intermark doesn't
25 have any records of sales of Frosty product to

1  Spandauer in 1989?

2        MR. CASS:  Object to the form of the
3   question.

4   A.   Again, most of our records were destroyed due
5  to the fire and flood that we had.

6   Q.   Isn't it true that Intermark does not have
7  any records of sales of Frosty product to Spandauer on
8  which Spandauer transfer printed in 1989?

9        MR. CASS:  Object to the form of the
10   question.

11   A.   Again, all our records were destroyed in the
12  flood and fire that we had.

13   Q.   Is it true, Mr. Lucchesi, that Intermark does
14  have records of sales of Frosty product to Dicey Mills
15  in 1989?

16   A.   I don't know.  I can't answer that.

17   Q.   Can you explain why it was that -- why it is
18  that Intermark might have records of sales of Frosty in
19  1989 to Dicey Mills but no records of these alleged
20  sales to Culp and Spandauer for transfer printing?

21        MR. CASS:  Object to the form of the
22   question.

23   A.   Can I explain why?

24        MR. GRIMM:  Could you repeat the
25   question for him, please.

<u>C E R T I F I C A T E</u>

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn, and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor attorney to either of the parties to said suit, nor am I an employee of either party to said suit, nor of either counsel in said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this _____ day of _____, 2003.

_____
Jenny L. Albert, LSR, RPR
Notary Public
License #00207

My Commission expires:
August 31, 2005

# EXHIBIT YY

```
                                                              Page 1
 1           IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF CONNECTICUT
 2
 3
     INTERMARK FABRIC CORPORATION,           COPY
 4
             Plaintiff,
 5
        vs.       CIVIL ACTION NO. 3:02-CV-1267 (AVC)
 6
     MICROFIBRES, INC.,
 7
             Defendant.
 8
 9
10   DEPOSITION OF: CHARLES L. BUNCH
11   DATE:          September 22, 2003
12   TIME:          11:02 a.m.
13   LOCATION:      Womble, Carlyle, Sandridge & Rice
                    301 S. College Street
14                  Charlotte, North Carolina
15   TAKEN BY:      Counsel for the Defendant
16   REPORTED BY:   CINDY A. HAYDEN, RMR, CRR
17
18
19
20
                            _____
21
22              ROBERTS & KIDWELL, INC.
23     Charlotte, NC                    Columbia, SC
       (843) 722-8414                   (803) 731-5224
24
       Greenville, SC                   Charlotte, NC
25     (864) 234-7030                   (704) 537-3919
```

```
 1  you purchased from Vertipile in the early '80s?
 2       A.   I'm not sure I follow the question.
 3       Q.   Let me rephrase the question.  It's
 4  a -- it's a bad question.
 5            What was -- in the early 1980s, you
 6  were purchasing, from Vertipile, flocked fabric
 7  with a natural flock in the pigmented adhesive?
 8       A.   Correct.
 9       Q.   Then you were transfer printing on that
10  material?
11       A.   Correct.
12       Q.   What would the transfer printed
13  flock -- what color would that be in the end
14  resulting product in the early 1980s?
15            MR. CANNING:  Objection.
16       A.   It depended on what we printed on, but
17  sometimes you would have an omit, and you would
18  have the -- the color of the ground showing
19  through.  Other times we would cover it up, and
20  the -- the pigmented adhesive would simply make the
21  finished product more rich in appearance.
22       Q.   Okay.  Were the transfer prints at all,
23  in the early 1980s, dark in color?
24       A.   Sometimes.
25       Q.   And to whom was Bunch Fabrics selling
```

Page 98

```
 1   transfer printed flocked fabric with a pigmented
 2   adhesive in the early '80s?
 3          A.   The general trade.  There were hundreds
 4   of furniture manufacturers in North Carolina, east
 5   Tennessee, northeast Mississippi, and we solicited
 6   a good cross-section of those customers.
 7          Q.   Now, when you solicit these customers
 8   in the early 1980s, how would you do that?
 9          A.   We had a small sales team plus myself.
10          Q.   Would the -- would the sales team,
11   including yourself, would there be samples that you
12   show?
13          A.   Typically, yes.
14          Q.   Okay.  Would samples of transfer
15   printed flocked fabrics with pigmented adhesives
16   have been shown in the early 1980s?
17          A.   Yes.
18          Q.   And one of your customers -- one of the
19   customers of Bunch Fabrics in the early 1980s was
20   Gaines Furniture?
21          A.   Yes, Gaines Manufacturing, I think it
22   is.
23          Q.   That was Gaines Manufacturing?
24          A.   I believe that was it.
25          Q.   And what products was Gaines
```