UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INTERMARK FABRIC CORPORATION,

        Plaintiff,

v.

MICROFIBRES, INC.,

        Defendant.

Civil Action No. 3:02-CV-1267 (AVC)

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR *IN CAMERA* REVIEW**

## I. Introduction

Intermark has maintained that communications and documentation exchanged between Intermark and Culp, Inc., Spandauer Velours gmbh & Co. KG and Avidtech Industries, Inc. are privileged based upon a joint defense privilege. The basis for that assertion was and is that each of those three identified third parties have shared and continue to share a common legal interest with Intermark. That is, defending against claims of infringement of the patent-at-issue and its foreign counterpart asserted by the common litigation opponent - Microfibres.

On August 20, 2004, the Court vacated its prior order compelling Intermark to produce those documents that it asserts are subject to the joint defense privilege and ordered Intermark to file a motion for *in camera* review with a memorandum and the documents at issue. Following the filing of the motion, a copy of which was initially not supplied to Microfibres as it included the privileged documents and discussion thereof and was for purposes of an in camera inspection, the parties discussed the matter in one telephone conversation during which it was agreed that a redacted copy of the memorandum would be supplied to Microfibres. Microfbres' assertion that Intermark was intent on undertaking some type of nefarious activities is both unnecessary and unfortunate as well as untrue. (See Opposition Memorandum, pp. 1 and 3)

## II. Argument

### A. The Joint Defense Agreements Are Privileged

Microfibres admits that a joint defense privilege exists between Intermark and both Avidtech and Culp as it argues in its opposition only that the written joint defense agreements themselves are not privileged. See Opposition, p. 4. Microfibres therefore admits that Intermark, Culp and Avidtech all share identical legal interests in this matter.

The written agreements themselves are privileged. See <u>A.I. Credit Corp. v. Providence Washington Insurance Co.</u>, 1997 WL 231127 (S.D.N.Y. May 7, 1997); see also Intermark's Memorandum, pp. 3 - 4. Microfibres relies on <u>United States v. Hsia</u>, 81 F.Supp.2d 7 (D.D.C. 2000) for the proposition that the written joint defense agreements are not privileged. See Opposition, p. 4. As the Court in <u>Hsia</u> made clear, the facts of that case are "very different" then the facts in <u>A.I. Credit</u>. See <u>Hsia</u>, 81 F.Supp.2d at 11, fn 3. The facts in <u>Hsia</u> are also very different then the facts in this case. For example, the terms of the joint defense agreement in <u>Hsia</u> were never reduced to a writing. <u>Id</u>. at 11. Furthermore, one of the parties to the joint defense arrangement "testified about the precise terms of the oral agreement outside of the presence of counsel for the government." <u>Id</u>. at fn. 3. In this case, the terms of the agreements were reduced to writing. Moreover, neither Intermark, Culp nor Avidtech have testified about the terms of those agreements.

**B.    The Documents and Communications Exchanged Between Intermark and Spandauer Are Privileged**

   1.   <u>Intermark and Spandauer Share Identical Legal Interests</u>

Microfibres asserts that there can be no joint defense privilege between Intermark and Spandauer even though Microfibres has threatened to sue Spandauer for infringement of the '614 patent - the foreign counterpart to the '021 patent. See Opposition, p. 5. That view of the scope of the joint defense privilege is incorrect. "[T]he privilege is not limited to parties who are perfectly aligned on the same side of a single litigation." <u>Cadillac Insurance Company v. American National Bank of Schiller Park</u>, 1992 WL 58786, *5 (N.D.Ill. March 12, 1992) "The joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." <u>Western Fuels Assoc. v. Burlington Northern</u>

Railroad Co., 102 F.R.D. 201, 203 (D.Wyo. 1984). The fact that Microfibres has threatened to sue Spandauer for infringing the foreign counterpart patent does not detract from the existence of the joint defense, but rather supports its existence. See Cadillac, 1992 WL 58786, *5 (communications between parties with common litigation adversary in different actions held to remain confidential).

The case of Johnson Electric North America, Inc. Mabuchi North America Corp., 1996 WL 191590 (S.D.N.Y 1996) is illustrative on this point. Johnson commenced an action against Mabuchi seeking a declaratory judgment of invalidity of a patent owned by Mabuchi, and Mabuchi counterclaimed alleging infringement. Id. at 1. During the litigation, Mabuchi turned its attention to a company called Dickson Industrial Co., Ltd which was located in Hong Kong. Dickson was a customer of Johnson, just as Spandauer is a customer of Intermark. The Court held that there was little question that the joint defense privilege applied as between Johnson and Dickson. In doing so the Court noted:

> Johnson was facing a claim for infringement of Mabuchi's patents. At the same time its customer [Dickson] was being drawn into the litigation both as a presumptively unwilling witness and as a potential target of Mabuchi on the theory that it had purchased and then distributed infringing machines from Johnson. Indeed, Mabuchi concededly threatened Dickson with such a lawsuit ... [and], the potential for such litigation throughout the relevant time could scarcely have been ignored either by Dickson or by Johnson. Inevitably, as a matter of both litigation strategy and business necessity, Johnson and Dickson were de facto allies. Both faced a threat of liability if Mabuchi prevailed on its infringement theories. Moreover, Johnson, as a supplier anxious to please its customer, had a strong economic incentive to avoid unnecessarily embroiling that customer in litigation that arose from Johnson's activities in marketing the assertedly infringing equipment ... This congeries of circumstances amply demonstrates that the two companies had strong common interests in the course of discovery taken by Mabuchi from Dickson. Of necessity, then, communications between their respective counsel addressing the manner in which the deposition and other discovery was conducted, as well as means of limiting such discovery and protecting Dickson's legal rights

>under the law of Hong Kong, come well within the common-interest extension of the attorney-client privilege.

Id. at pp. 3 - 4.

As described in Intermark's Memorandum, Microfibres has put Spandauer on notice that it intends to file suit against Spandauer. See Memorandum, p. 2. Moreover, Microfibres sought and obtained the right to join transfer printers into this action and could now seek to join Spandauer into the instant action. Therefore, not only is Spandauer a potential defendant concerning the foreign counterpart to the '021 patent but is also a potential co-defendant in this action.

As in Johnson, Intermark and Spandauer not only have identical interests in this matter but are de facto allies. As such, the joint defense privilege applies to Intermark and Spandauer. Intermark, Culp and Avidtech are similarly de facto allies.

### 2. A Written Agreement Between the Parties is Not Required

Microfibres fails to cite to any case law in support of its assertion that the joint defense privilege does not apply as between Intermark and Spandauer because the agreement was not reduced to writing. The case law is clear that a written agreement is not necessary for the privilege to apply. Sig Swiss Indus. Co. v. Fres-Co Sys., USA, Inc., 1993 U.S. Dist. LEXIS 3576, *7 (E.D.Pa. Mar. 17, 1993) (the joint defense privilege still exists even if no written agreement is formalized); see also Memorandum at, pp. 3 - 4.

### 3. All of the Communications Between Intermark and Spandauer Fit Within the Joint Defense Privilege

Microfibres asserts that the written communications between Intermark and Spandauer dated July 2, 2002, July 9, 2002 and July 17, 2002, do not fit within the scope of the joint defense privilege because they are communications that Gunther Walter, the principal at

Spandauer, sent to William Lucchesi, president of Intermark, which Mr. Lucchesi then sent to Intermark's counsel. See Opposition, p. 6. A review of the privilege log shows that such is not the case. The letter dated July 2, 2002 is a facsimile from Mr. Lucchesi to Intermark's counsel wherein Mr. Lucchesi forwarded a letter that was authored by Alexander Witte, Spandauer's counsel, and sent by Mr. Witte to Mr. Walter. See Ex. A attached to the Opposition. Moreover, the letters dated July 9 and July 17 are both facsimiles from Intermark to its counsel wherein Intermark forwarded letters that were authored by Spandauer's counsel and sent by Spandauer's counsel to Mr. Walter at Spandauer and Mr. Lucchesi. See Ex. A attached to the Opposition. Therefore, counsel was involved in all communications and, as such, all communications are covered by the joint defense privilege.

## III. Conclusion

Based on the above, Intermark respectfully requests that this Court hold that the joint defense privilege applies as to any communications, written or oral, between Intermark and Spandauer, Culp and Avidtech and deny Microfibres' motion to compel the production or any such communications.

Respectfully submitted:
Intermark Fabric Corporation

By: _____
Charles F. O'Brien (ct 22074)
William J. Cass, (ct 12806)
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, CT 06002
Telephone: (860) 286-2929
Facsimile: (860) 286-0115

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Reply Brief in Support of Plaintiff's Motion for In Camera Review was served via regular mail on this 15th day of October, 2004 upon:

> Brent R. Canning, Esq.
> William R. Grimm, Esq.
> Hinckley. Allen & Snyder LLP
> 1500 Fleet Center
> Providence, RI 02906
>
> Jeffrey W. Kennedy, Esq.
> Stephen G. Murphy, Jr., Esq.
> Milano & Wanat
> 471 East Main Street
> Branford, CT 06405

By: _____
Charles F. O'Brien, Esq.