UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| INTERMARK FABRIC CORPORATION, ) ) | ) |
| Plaintiff, | ) Civil Action No. 3:02-CV-1267 (AVC) |
| v. | ) |
| MICROFIBRES, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
INTERMARK FABRIC CORPORATION'S MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
AND RESPONSES TO INTERROGATORIES**

I. STATEMENT OF FACTS

Plaintiff, Intermark Fabric Corporation ("Intermark") commenced this declaratory judgment action under the patent laws of the United States seeking a declaration that it does not infringe United States Patent No. 5,981,021 entitled Transfer Printing Flocked Fabric (the "'021 patent") assigned to Defendant, Microfibres, Inc. ("Microfibres"). The '021 patent is directed to transfer printed flocked fabrics with dark pigmented adhesives. Microfibres has counterclaimed against Intermark claiming that Intermark directly and indirectly infringes the '021 patent.

Pursuant to a motion to amend the complaint brought by Intermark, the Court allowed Intermark to amend the complaint in this action to include, *inter alia*, claims that Microfibres has violated anti-trust laws. Intermark thereafter propounded a Fifth Set of Requests for Production of Documents ("Requests") and a Third Set of Interrogatories (Interrogatories"), both of which are related to the anti-trust claims. See the Fifth Set of Requests for Production of Documents at Exhibit 1[1] and the Third Set of Interrogatories at Exhibit 2.

This motion is brought in response to Microfibres' refusal to produce documents responsive to either of the two requests for production of documents and its refusal to answer interrogatory numbers 1, 3, 4, 5, 7, 8, 9 and 10.

II. REQUEST FOR DOCUMENTS

A. Requests

Request Number 1 seeks the following:

A complete list of all of Microfibres' customers prior to the commencement of the instant action on July 23, 2002 and all documents which reflect the products that such customers purchased from Microfibres for the two year period prior to July 23, 2002.

---

[1] Exhibit 1and all of the exhibits referred to hereinafter will attached to the Declaration of Charles F. O'Brien filed contemporaneously herewith.

-1-

Request Number 2 seeks the following:

A current complete list of all of Microfibres' customers and all documents which reflect the products that such customers have purchased from Microfibres since the commencement of the instant action on July 23, 2002.

B.   Reasons for Allowing Production Under Request Numbers 1 and 2

Microfibres objected to both Request number 1 and Request number 2 on the grounds that the requests are "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence concerning Intermark's antitrust claims. Microfibres believes that such request is made for competitive purposes as it relates to confidential, proprietary information of Microfibres of the most sensitive nature." See Exhibit 1.

With respect to the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure, the District Court of Connecticut has stated as follows:

> Under the Federal Rules of Civil Procedure, the scope of discovery extends to any matter, not privileged, which is relevant to the subject matter in the pending action, whether it relates to the claim or defense of the parties seeking discovery or to the claim or defense of any other party. The phrase 'relevant to the subject matter involved in the pending action' has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. The party receiving a request must not only produce information which is admissible as evidence, but also information which 'appears reasonably calculated to lead to the discovery of admissible evidence.' 'Reasonably calculated' in Rule 26 means any possibility that the information sought may be relevant to the subject matter of the action.

Hildebrand v. Walmart Stores, Inc., 194 F.R.D. 432, 434 (D. Conn. 2000) (internal citations omitted)

Microfibres, as the objecting party, bears the burden of showing why discovery should be denied with respect to Request Numbers 1 and 2. See Kimbro v. I.C. System, Inc., 2002 WL 1816820 (D. Conn. July 22, 2002) ("Defendant ... also overlooks that, as the objecting party, it bears the burden of showing why discovery should be denied.") Moreover, "the mere statement by a party that discovery is 'irrelevant and immaterial' is not enough to discharge

this burden." Id.; see also Boutvis v. Risk Management Alternatives, Inc., 2002 WL 971666, *1 (D.Conn. May 3, 2002).

Intermark's anti-trust claims are "Walker Process" type anti-trust claims. In Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the United States Supreme Court "established that antitrust liability under Section 2 of the Sherman Act may arise when a patent has been procured by knowing and willful fraud, the patentee has market power in the relevant market, and has used its fraudulently obtained patent to restrain competition." C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1367 (Fed.Cir. 1998), cert. denied, ---- U.S. ----, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999).

Request numbers 1 and 2 are crafted to obtain evidence of customers that, for fear of being sued by Microfibres for infringement of what Microfibres knows to be an invalid patent, may have shifted their business, in whole or even in part, from purchasing fabric from Intermark to purchasing fabric from Microfibres. Such evidence not only goes to the issue of damages, but also is strong evidence of both Microfibres' market power as well as the effects of Microfibres' fraudulent use of its invalid patent. At the very minimum, the Request numbers 1 and 2 are reasonably calculated to lead to the discovery of admissible evidence.

During a conversation between counsel on this issue, counsel for Microfibres suggested that if Intermark could provide a list of all customers that it believes may have shifted its business from Intermark to Microfibres or any potential customers that were reluctant to do business with Intermark because of the pending lawsuit, then Microfibres may consider producing information as to whether it does business with those particular entities. This suggestion puts to proverbial cart before the horse. In other words, Intermark would have to know of each entity that had or may have shifted its business to Microfibres.

As set forth above, Microfibres further objected to Request number 1 and 2 based on its belief that "such request is made for competitive purposes as it relates to confidential, proprietary information of Microfibres of the most sensitive nature." If Microfibres' statement that request is made for competitive purposes is an assertion that Intermark is going to use the customer list in its business, such an assertion is baseless and untrue. Moreover, the Protective Order that is currently in place will protect the confidentiality of the documents.

Interestingly, this issue of the production of customer lists arose early on in the litigation. However, at that time Microfibres was the party requesting the list. In early 2003, Microfibres demanded that Intermark produce a customer list identifying all of its customers that are transfer printers. At the time, a motion for a protective order that had been filed by Intermark was pending. Microfibres took the position that Intermark's customer list was not confidential in any way and therefore should be produced even without a protective order. See Exhibit 3. Microfibres now takes the complete opposite position when asked to produce its customer list.

In sum, the documents sought under Request numbers 1 and 2 seek information relevant to this action and thus Microfibres should be ordered to produce such documents.

### III. INTERROGATORIES

A. <u>Interrogatories</u>

Interrogatory No. 1 and Interrogatory No. 7 ask Microfibres to identify and describe its market share from 1999 to date and its forecasted market share, respectively, in the area of flocked fabric for use in the upholstery industry.

Interrogatory No. 3 and Interrogatory No. 8 ask Microfibres to identify and describe its market share from 1999 to date and its forecasted market share, respectively, in the area of flocked fabric with dark pigmented adhesives for use in the upholstery industry.

-4-

Interrogatory No. 4 and Interrogatory No. 9 ask Microfibres to identify and describe its market share from 1999 to date and its forecasted market share, respectively, in the area of transfer printed flocked fabric for use in the upholstery industry.

Interrogatory No. 5 and Interrogatory No. 10 ask Microfibres to identify and describe its market share from 1999 to date and its forecasted market share, respectively, in the area of transfer printed flocked fabric with dark pigmented adhesives for use in the upholstery industry.

B.  Reasons for Responding to Interrogatory Numbers 1, 3, 4, 5, 7, 8, 9 and 10

Each set of Interrogatories set forth above request information about Microfibres' current and forecasted market share in a certain market. Microfibres objects to each interrogatory by contenting that each is vague and ambiguous to the extent that it requests Microfibres to "identify and describe" its market share, and is both irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See Exhibit 2. Microfibres further responds to each interrogatory by contending that it "does not have information sufficient to answer the question as posed" and that "to the extent such testimony will be required at trial, it will be provided by an expert or experts who will be identified pursuant to the provisions of this Court's scheduling order." Id.

Despite its refusal to answer the interrogatories set forth above, Microfibres chose to answer Interrogatory No. 2 and Interrogatory No. 6 with respect to its current and forecasted market share in the area of fabric for use in the upholstery industry. Id. Although Microfibres answered Interrogatory numbers 2 and 6, it made the same objections as were asserted in the other unanswered interrogatories. That is, Microfibres contends that Interrogatory numbers 2 and 6 are irrelevant as well as vague and ambiguous to the extent that it requests Microfibres to "identify and describe" its market share. Interrogatory numbers 2 and 6 were not too vague and ambiguous as Microfibres was able to set forth what it believes to be its "share" of products sold and the area of fabric for the use in the upholstery industry. Id.

As its did with the unanswered interrogatories, Microfibres also responded to Interrogatory numbers 2 and 6 by contending that it does not have sufficient information to answer the interrogatories. Yet, it does answer them. Microfibres undoubtedly chose to answer these two interrogatories and not the others because the market about which those two interrogatories seek information is the broadest of the all the markets described in all of the interrogatories, and thus the market where Microfibres would hold the smallest percentage. If Microfibres can answer Interrogatory numbers 2 and 6 even with its objection of alleged insufficient information, then it follows that Microfibres should be required to answer the remaining interrogatories.

## IV. CONCLUSION

Based on the above, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Intermark requests that this Court order that Microfibres produce all documents requested in Request numbers 1 and 2 of Intermark's Fifth Set of Requests for Production of Documents and fully respond to Interrogatory numbers 1, 3, 4, 5, 7, 8, 9 and 10 of Intermark's Third Set of Interrogatories.

Respectfully submitted:

INTERMARK FABRIC CORPORATION

BY: _____
Charles F. O'Brien (ct 22074)
William J. Cass, (ct 12806)
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, CT 06002
(860) 286-2929
Plaintiff's Attorneys

Dated: 11/05/04

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Memorandum of Law in Support of Plaintiff Intermark Fabric Corporation's Motion to Compel the Production of Documents and Responses to Interrogatories was served via regular mail on this 5th day of November, 2004 upon:

Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley. Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405

By: _____
Charles F. O'Brien, Esq.

-7-