# EXHIBIT
# B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTERMARK FABRIC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICROFIBRES, INC.,<br><br>Defendant. | Civil Action No. 3:02-CV-1267 (AVC) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF INTERMARK FABRIC CORPORATION'S
<u>OPPOSITION TO MICROFIBRES, INC'S MOTION FOR RECONSIDERATION</u>**

I. STATEMENT OF FACTS

Plaintiff, Intermark Fabric Corporation ("Intermark") commenced this declaratory judgment action under the patent laws of the United States seeking a declaration that it does not infringe United States Patent No. 5,981,021 entitled Transfer Printing Flocked Fabric (the "'021 patent") assigned to Defendant, Microfibres, Inc. ("Microfibres"). The '021 patent is directed to transfer printed flocked fabrics with dark pigmented adhesives. Microfibres counterclaimed against Intermark claiming that Intermark directly and indirectly infringes the '021 patent.

The Court allowed Intermark to amend the complaint to include, *inter alia*, claims that Microfibres has violated state and federal antitrust laws. Specifically, the amended complaint included the following causes of action: (a) Fifth Cause of Action entitled Sherman Act Section 2 (15 U.S.C. Section 2) - Monopolization, (b) Sixth Cause of Action entitled Sherman Act Section 2 (15 U.S.C. Section 2) - Attempted Monopolization, (c) Seventh Cause of Action entitled Connecticut Antitrust Act, Conn. Gen, Stat. §35-24, et. seq. - Monopolization, and (d) Eighth Cause of Action entitled Connecticut Antitrust Act, Conn. Gen. Stat. §35-24, et. seq. - Attempted Monopolization.

Intermark thereafter propounded a third set of interrogatories in August of 2004 and a fifth set of requests for production of documents in September of 2004, both of which were related to the antitrust claims. Microfibres refused to produce certain documents requested and further refused to answer certain interrogatories. As a result, in November of 2004, Intermark filed a motion to compel the production of documents and answers to interrogatories.

Just recently, in July of 2005, the Court granted Intermark's motion to compel. However, as of the granting of the motion, due to drastically declining business conditions and after three years of legal wrangling with Microfibres, Intermark was and is financially unable to continue to prosecute the antitrust claims. As a result, in the end of July of 2005, counsel for Intermark

-1-

telephoned counsel for Microfibres and indicated that Intermark would be dismissing, with prejudice, all of the antitrust related claims.

The Court granted Intermark's motion to dismiss, with prejudice, causes of action Five through Eight. Despite the dismissal with prejudice, Microfibres now seeks to obtain is costs. For the reasons set forth below, the motion for reconsideration should be denied.

## II. ARGUMENT

### A. Microfibres' Motion for Reconsideration Was Untimely and Should Be Dismissed

The Court's order from which Microfibres now seeks relief was filed on August 19, 2005. Rule 7(c)(1) of the Local Civil Rules of the United States District Court for the District of Connecticut is entitled "Motions for Reconsideration" and provides in pertinent part that "[m]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought ..." D. Conn. L. Civ. R. 7(c)(1). Pursuant to Local Rule 6, Microfibres was required to file and serve its motion for reconsideration on or before September 2, 2005. The certificate of service attached to Microfibres' motion indicates that it was mailed on September 2. However, the motion was not filed with the Court until September 6, four days after the filing deadline.

Microfibres' motion for reconsideration should therefore be dismissed as untimely.

### B. No Conditions Should Be Placed Upon the Dismissal of the Antitrust Claims

"The propriety of a motion for leave to amend is generally determined by reference to several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." See International Association of Machinists and Aearospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985). Intermark's motion to dismiss the antitrust claims was not unduly delayed, was not brought in bad faith, is not a futile amendment

and will not prejudice Microfibres.

Intermark's antitrust claims are "Walker Process" type antitrust claims. In <u>Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.</u>, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the United States Supreme Court "established that antitrust liability under Section 2 of the Sherman Act may arise when a patent has been procured by knowing and willful fraud, the patentee has market power in the relevant market, and has used its fraudulently obtained patent to restrain competition." <u>C.R. Bard, Inc. v. M3 Systems, Inc.</u>, 157 F.3d 1340, 1367 (Fed.Cir. 1998), cert. denied, ---- U.S. ----, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999).

Despite Microfibres' assertions that Intermark devoted little if any time to the claims, Intermark has surfaced a voluminous amount of evidence concerning Mr. McCulloch's and Microfibres' fraud on the United States Patent Office. This evidence was set out in great detail within Intermark's memorandum of law in support of its motion to amend the complaint filed on May 28, 2003. See *Docket No. 43*. Also, despite Microfibres' assertions otherwise, Intermark retained, at great expense, Mr. Lawrence Goffney, the prior Assistant Commissioner of Patents and Trademarks of the United States and Deputy Commissioner of Patents and Trademarks of the United States (the third and second ranked executive positions in the United States Patent and Trademark Office) to opine on the issues related to Mr. MuCulloch's and Microfibres' lack of candor before the United States Patent and Trademark Office during the prosecution of the '021 patent. In his expert report, dated June 2, 2003[1], Mr. Goffney does indeed agree and opine that Mr. McCulloch, among others, failed to disclose material information to the United States Patent and Trademark Office during the prosecution of the '021 patent, thereby breaching his duty of

---

[1] Although Mr. Goffney's expert report was prepared just following the filing of Intermark's motion to amend the complaint to add the antitrust claims (which was filed on May 28, 2003), Mr. Goffney's opinion is directly applicable to and fully supports the antitrust claims that were added to the complaint.

candor owed to the United States Patent and Trademark Office. See Expert Report of Lawrence Goffney attached as Exhibit A to the Declaration of Charles F. O'Brien filed contemporaneously with this Memorandum. Mr. Goffney's opinions in his expert report are directly related to, and fully support, the Walker-Process antitrust claims.

When Intermark sought additional discovery related to the antitrust claims, including discovery related to Microfibres' market power, Microfibres stonewalled. Intermark propounded antitrust related discovery over a year ago. Microfibres refused to produce highly relevant documents related to customers that may have shifted their business from Intermark to Microfibres. Microfibres also refused to answer certain market power related interrogatories that were unfavorable to it, while at the same time answering those market power related interrogatories that were more favorable to it. Just recently, in an order entered on July 11, 2005, Microfibres was ordered to produce all of the documents requested.[2]

Intermark's motion to dismiss is not unduly delayed or brought in bad faith. In an attempt to show these elements, Microfibres improperly equates Intermark's motion to dismiss as an admission that its antitrust case is weak and unsubstantiated and therefore the claims never should have been brought to begin with. See Memorandum in Support of Motion for Reconsideration, pp. 1-2. On the contrary, as indicated above, the evidence that Intermark was able to surface was and continues to be not only voluminous but also clear and convincing. However, Intermark is in the process of winding-up its business based on several factors, including declining market conditions. As a result, although the antitrust claims certainly have

---

[2] The motion to compel was denied with respect to the interrogatories based upon Microfibres' assertion under oath that it does not have the information requested. However, the court held that Intermark would not be prevented from seeking from Microfibres information that is in Microfibres' control concerning sales and sales volume, as this information may assist Intermark in proving the existence of Microfibres' market power. See *Docket No. 157*.

-4-

merit and are supported not only by the facts but also the opinions of Mr. Goffney, Intermark is simply financially unable to continue on with the prosecution of the claims. Additionally, since the requested relief (i.e. dismissal with prejudice) is the proper procedure in this situation, Intermark's motion for dismissal of the antitrust claims is not futile. See International Association of Machinists, 761 F.2d at 1391 ("We do not find any futility of amendment, since the relief requested in the amended complaint, to proceed to arbitration, is the appropriate remedy under the Railway Labor Act.")

Microfibres is not and will not be prejudiced by the dismissal of the antitrust claims. On the contrary, the dismissal of these claims - with prejudice - poses a benefit to Microfibres. This situation is closely akin to SL Waber, Inc. v. American Power Conversion Corporation, 135 F.Supp.2d 521 (D.N.J. 1999). In that case, Waber filed a complaint against American Power Conversion ("APC") claiming, among other things, that APC infringed Waber's patent. APC thereafter filed a counterclaim for a declaratory judgment that the patent was not only invalid and not infringed, but also sought an award of attorneys fees based upon allegations of Waber's inequitable conduct before the Patent Office in obtaining the patent. Waber thereafter filed a motion for leave to file an amended complaint deleting its claim of infringement of the patent. The court dismissed the claims. The issue that remained was whether Waber should be required to pay APC's attorney's fees incurred in defending against the claims of infringement as a condition of dismissal.

The court held that there was "no sound justification for an award of attorney's fees". SL Waber, Inc., 135 F.Supp.2d at 527. The court reasoned that reimbursement of attorney's fees might be appropriate if Waber merely sought to dismiss the claims of infringement without prejudice. Id. at 528. The court concluded however that Waber did much more than that. It held

-5-

that:

> APC will walk away from this litigation knowing that it will never again be sued for alleged infringement of the '991 patent and that it remains free to market its own products. This is valuable consideration being given to APC by Waber as a condition of Waber's decision to withdraw its claim of infringement of the '991 patent. In light of (sic) result, APC should consider the costs and attorneys' fees it has incurred in defending against Waber's claim of infringement of the '991 patent money well spent.

Id.

As Waber did above, Intermark has, despite their merit, dismissed the antitrust claims with prejudice. Therefore, Microfibres can be assured that it will never be sued by Intermark for antitrust violations concerning the '021 patent. Microfibres thereby has not been prejudiced by the dismissal of the antirust claims.

### III. CONCLUSION

Based on the above, Intermark respectfully requests that Microfibres' motion for reconsideration be DENIED.

Respectfully submitted:

INTERMARK FABRIC CORPORATION

BY: _____
Charles F. O'Brien (ct 22074)
William J. Cass, (ct 12806)
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, CT 06002
(860) 286-2929
Plaintiff's Attorneys

Dated: 9/27/05

-6-

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Memorandum of Law in Support of Plaintiff Intermark Fabric Corporation's Opposition to Microfibres, Inc.'s Motion for Reconsideration Motion was served via regular mail on this 27th day of September, 2005 upon:

Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405

By: _____
Charles F. O'Brien, Esq.