# EXHIBIT M


```
 1            IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF CONNECTICUT
 3            CIVIL ACTION NO.: 02-CV-1267(AVC)
 4    INTERMARK FABRIC CORPORATION,  :
 5                 Plaintiff,         :
 6         vs.                        :
 7    MICROFIBRES, INC.,              :
 8                 Defendant.         :
 9
10        Computer-aided transcript of deposition
11    testimony of DAVID S. BROOKSTEIN, Sc.D., taken
12    stenographically in the above-entitled matter
13    before LUCILLE A. KELLY, a Certified Shorthand
14    Reporter and Notary Public of the State of New
15    Jersey, held at the offices of Drinker, Biddle &
16    Reath, Esquires, One Logan Square, 18th and
17    Cherry Streets, Philadelphia, Pennsylvania, on
18    Wednesday, September 10, 2003, commencing at
19    10:10 a.m.
20                   ROSENBERG & ASSOCIATES
21        Certified Shorthand Reporters & Videographers
22                   425 Eagle Rock Avenue
23                Roseland, New Jersey  07068
24                     (973) 228-9100
25                www.rosenberg-associates.com
```

```
 1                MR. CASS:  We will mark that as
 2   Exhibit 25.
 3                (Whereupon, Plaintiff Intermark
 4   Fabric Corporation's First Amended Answers to
 5   Defendant Microfibres, Incorporated's First Set
 6   of Interrogatories dated 8/21/03 is received and
 7   marked Plaintiff's Exhibit 25 for
 8   Identification.)
 9        A.      The next is the Squires Patent
10   4,895,748.
11                MR. CASS:  That's Exhibit 26.
12                (Whereupon, Squires U.S. Patent
13   4,895,748 is received and marked Plaintiff's
14   Exhibit 26 for Identification.)
15        A.      The next is Answer of Defendant
16   Microfibres, Incorporated to Plaintiff Intermark
17   Fabric Corporation's First Set of Interrogatories
18   dated December 13th, 2002.
19                (Whereupon, Answer of Defendant
20   Microfibres, Incorporated to Plaintiff Intermark
21   Fabric Corporation's First Set of Interrogatories
22   dated December 13th, 2002, is received and marked
23   Plaintiff's Exhibit 27 for Identification.)
24        A.      The next is a set of letters that
25   were sent by James Fulks, F-U-L-K-S, Executive
```

```
 1   Vice President of Microfibres, to a group of
 2   manufacturers of flocked fabrics.  You can go
 3   through all these letters.  They are all the
 4   same.
 5              MR. CASS:  We will mark those as
 6   Exhibit 28.
 7              (Whereupon, Set of letters sent by
 8   James Fulks, Executive Vice President of
 9   Microfibres, to a group of manufacturers of
10   flocked fabrics is received and marked
11   Plaintiff's Exhibit 28 for Identification.)
12        A.    The next is the patent by Masaki,
13   M-A-S-A-K-I, 4,314,813.
14              (Whereupon, Masaki U.S. Patent
15   4,314,813 is received and marked Plaintiff's
16   Exhibit 29 for Identification.)
17        A.    The next is the Squires Patent
18   5,543,195.
19              MR. CASS:  This is 30.
20              (Whereupon, Squires U.S. Patent
21   5,543,195 is received and marked Plaintiff's
22   Exhibit 30 for Identification.)
23        A.    The next is the Squires Patent
24   5,863,633.
25              MR. CASS:  Exhibit 31.
```

```
 1              (Whereupon, Intermark's Objection to
 2   Documents Submitted by Microfibres, Incorporated
 3   in Support of Its Opposition to Plaintiff's
 4   Motion for Summary Judgment, Plaintiff Intermark
 5   Fabric Corporation's Memorandum of Law and Reply
 6   to Defendant's Opposition to Plaintiff's Motion
 7   for Summary Judgment, and Declaration of Charles
 8   F. O'Brien in Support of Plaintiff's Reply Brief
 9   in Support of Plaintiff's Motion for Summary
10   Judgment is received and marked Plaintiff's
11   Exhibit 33 for Identification.)
12       A.      I then have a large group of
13   documents which is the file wrapper for -021.
14            MR. CASS:  We will mark that as
15   Exhibit 34.
16              (Whereupon, File wrapper for
17   McCulloch U.S. Patent 5,981,021 is received and
18   marked Plaintiff's Exhibit 34 for
19   Identification.)
20       A.      I have a copy here of the deposition
21   of Luther Boyd Madren.
22              (Whereupon, Deposition of Luther
23   Boyd Madren is received and marked Plaintiff's
24   Exhibit 35 for Identification.)
25       A.      Earlier I said everything I've
```

```
 1        Q.      Well, you have a copy of the file
 2   wrapper in your box?
 3        A.      Yes.  I would have to go through it
 4   page by page to make sure.  I assume that it is
 5   the full wrapper, but, as you know, the wrapper
 6   has a lot of code that comes from the patent
 7   office, and I would have to know the art unit
 8   that Squires was examined under.  I would have to
 9   know how that art unit corresponds to the notes
10   by the patent examiner.  In fact, it all might be
11   here, but I don't have that information.  So you
12   would have to give me much more information to
13   answer that question.
14        Q.      So it's your understanding that
15   these patents listed on the front of Exhibit
16   Number 41, the -021 patent --
17        A.      Yes.
18        Q.      -- those are only patents which the
19   applicant provides to the patent office?  Is that
20   your understanding, sir?
21        A.      That is my understanding.
22        Q.      And it's not your understanding that
23   these are the references which were cited by the
24   examiner?
25        A.      I'm not sure how that works, to be
```

```
1   honest with you.
2       Q.      Well, would you at least agree with
3   me, sir, that Squires isn't referenced anywhere
4   in this cover sheet?
5       A.      Yes.  It's in black-and-white.  It's
6   not referenced on the cover sheet.
7       Q.      Okay.  Now, you brought a copy of
8   the file wrapper, sir?
9       A.      Yes.
10      Q.      Let's just see if the Squires is
11  mentioned anywhere in your copy of the file
12  wrapper.
13      A.      Again, I'm coming back to the same
14  pages that I saw in the copy of the file wrapper
15  you gave me which lists classes and subclasses of
16  search materials by the examiner, and I have no
17  way of knowing if these classes or subclasses are
18  connected with Squires or not.  It's not
19  sufficient information.
20      Q.      Well, let me show you a copy of the
21  Squires patent, sir.
22              MR. CASS:  Can we have that marked
23  as Exhibit Number 44.
24              (Whereupon, Squires U.S. Patent
25  4,895,748 is received and marked Plaintiff's
```

```
 1  Exhibit 44 for Identification.)
 2      Q.      I think you testified that the
 3  Squires reference is the only reference which
 4  mentioned both flocking and transfer printing and
 5  pigmented adhesive; is that correct?
 6      A.      I'm not sure what I said, but it's
 7  the only one I can recall.
 8      Q.      What I'm trying to find out, sir, is
 9  do you know whether or not the examiner
10  considered the Squires reference?  I'm not trying
11  to confuse you.
12      A.      I understand that, but there is no
13  way of knowing, unless I know what the art units
14  are and the search codes that go with the file
15  wrapper.
16      Q.      Wouldn't you agree that the art
17  units are cited right on the very front page of
18  the patent?
19      A.      Yes.  I could go through that..
20      Q.      Well, let's compare it with the -021
21  patent, Exhibit Number 44 and Exhibit Number 41,
22  if we could.
23      A.      Say that again.
24      Q.      Well, Squires is Exhibit 44, sir.
25      A.      Right.
```

```
 1        Q.      And the -021 patent is Exhibit
 2   Number 41.
 3        A.      Right.
 4        Q.      Why don't you compare the art units,
 5   sir, and tell me whether there is any overlap?
 6        A.      Okay.  We are going to go by U.S.
 7   class?
 8        Q.      Sure.
 9        A.      Okay.  We will do that.  I need a --
10   I have got to write on something.  I can't do
11   this all in my head.
12        Q.      I have no objection to you using a
13   piece of paper.
14        A.      This is going a take a little while.
15        Q.      Let me ask you, before you get
16   started, sir, it's your understanding that even
17   though the examiner may have considered another
18   reference, it wouldn't be listed on the front of
19   the patent?
20        A.      Could you restate that?  I mean
21   repeat that?
22        Q.      It's your understanding, as you sit
23   here today, that an examiner might have
24   considered a patent reference which isn't listed
25   on the front of the patent under references
```

```
 1   print on virtually any kind of fiber.  It's not a
 2   chemical dyeing process.  It's a pigmentation
 3   process.
 4        Q.        But for use in the textile industry
 5   you need a certain -- in flocked materials, you
 6   need a certain type of nylon, don't you, sir, to
 7   do the transfer?
 8        A.        Not necessarily, no.
 9        Q.        So it's your testimony today that
10   any type of nylon -- I think you mentioned there
11   is Type 66 and Type 6?
12        A.        Right.
13        Q.        Are you aware of any other types?
14        A.        Yes.  There are some, and I don't
15   recall the actual nomenclature, but there are
16   some other small modifications nylon, but I think
17   it is safe to say that the overwhelming majority
18   of nylon used in this country is Type 66 or 6.
19   Probably over 98, 99 percent of all nylon.
20        Q.        And you can transfer print on Type
21   6?
22        A.        There would be no reason not to,
23   based on what the transfer printing -- what is
24   involved in the transfer printing process.
25        Q.        And your study in this field of
```

1  flocked fabrics, is that what indicates to you
2  there's two predominant fabrics, that 66 has 98
3  percent of the market?
4      A.    Oh, no.  That goes back to when I
5  was a young textile engineer at Georgia Tech in
6  1967 -- or '69, '69.  That's not new information.
7      Q.    But with respect to flocking, sir,
8  Type 66, is that particularly used for flocking,
9  or is some other designation?
10     A.    No.  There is no distinguishing
11 feature about Type 66 that would make it more
12 suitable for flocking than other fibers.  You
13 could flock almost any kind of fiber, any kind of
14 polymer that turns into a fiber.  For instance,
15 polyester, and, of course, polyamide, which, of
16 course, is nylon.
17         MR. CASS:  Excuse me just a second.
18         (Whereupon, a brief recess is
19 taken.)
20     Q.    Dr. Brookstein, have you ever
21 examined the materials provided by Culp in this
22 action?
23     A.    No, I have not.
24     Q.    Have you ever examined the materials
25 provided by Leathertex in this action?

```
1       A.      I don't recall.
2       Q.      Well, would you agree with me there
3  are no production logs in your box here on this
4  table today?
5       A.      I don't recall, but if you want me
6  to be specific, I would like to look again.
7  There is a lot in that box.
8       Q.      Okay. Well, let's look in the box.
9       A.      This is for Intermark?
10      Q.      For Intermark.
11      A.      Can you give me a hint where I
12 should look.
13      Q.      I wouldn't look in the file wrapper.
14      A.      If one were to give me a tab, would
15 that be possible?
16      Q.      No, sir. I am asking you.
17      A.      I will have to go through each page.
18      Q.      It's not in the file wrapper, if
19 that's what you are looking at.
20      A.      You just said file wrapper.
21      Q.      No, no. I said it's not in the file
22 wrapper.
23      A.      Oh. I thought you said it was in
24 the file wrapper.
25              MR. GRIMM:  We will stipulate that
```

```
 1    there are no Intermark production logs in the
 2    box.
 3       Q.     Dr. Brookstein, you have just heard
 4    your counsel stipulate that there are no
 5    Intermark Fabric Corporation production logs in
 6    the box that you have brought here today.  Would
 7    you agree with me, then, that you have never
 8    looked at the production records for the
 9    Intermark Fabric Corporation?
10       A.     If they are not in the box, I did
11    not look at them.
12       Q.     Do you have an understanding with
13    respect to what Intermark's process was in 1989
14    with respect to the manufacture of the Frosty
15    product?
16       A.     In broad terms, yes.
17       Q.     What is your understanding?
18       A.     It's my understanding that it's a
19    flocked --
20             MR. GRIMM:  Objection to form.
21    1989?
22             MR. CASS:  Yes.
23       A.     It is my understanding that they
24    flocked fabrics -- excuse me, flocked short
25    fibers onto adhesive -- textile fabrics with
```

```
 1  patents?
 2       A.      Well, she mentions Orton, too.
 3       Q.      Okay.  Let's include Orton.
 4       A.      And she also mentions Bernard.
 5       Q.      Okay.  Let's include Bernard.
 6       A.      And the question is?
 7       Q.      Do any of these references
 8  singularly teach a flocked fabric having a dark
 9  pigmented adhesive used to adhere the flocked
10  substrate and naturally colored flock?
11       A.      Well, she brings up about Rejto and
12  Masaki.  They do not teach pigmenting the
13  adhesive used to adhere the flock to the base.
14  She does not talk about here whether the fibers
15  were natural color or subsequently colored.
16       Q.      So you at least agree that,
17  according to the examiner, Rejto and Masaki don't
18  teach that?
19       A.      Oh, I agree totally with the
20  examiner.
21       Q.      And Smith, would you agree with me
22  that Smith doesn't teach a flocked fabric having
23  a dark pigmented adhesive used to adhere the
24  flock to the substrate?
25       A.      I agree with what she says about
```

```
 1  Number 42, sir.
 2       A.     34?
 3       Q.     Tab 34, yes.
 4       A.     Yes, sir.
 5       Q.     Have you reviewed this document,
 6  sir?
 7       A.     Well, I've looked at the whole file
 8  wrapper.  I don't recall this document in
 9  particular, but it was part of the whole package
10  I looked at.
11       Q.     Do you recall if the statement,
12  Applicant further states that Smith, et al.,
13  provides an adhesive composition with so little
14  blue pigment as to impart no color to that
15  adhesive or cement?
16       A.     Whoa.  Where are you reading from?
17       Q.     IFC02417, sir.
18       A.     And where on that page?
19       Q.     The first full paragraph, sir.
20       A.     Applicant further states that Smith
21  provides.  Yes.
22       Q.     Do you agree with that statement,
23  sir?
24       A.     My general approach is I agree with
25  the patent examiner, and if the patent examiner
```

```
 1   see if those words appear.  There are a lot of
 2   words in here.  I would have to sit and look at
 3   every word.
 4        Q.     But you have studied this patent
 5   before?
 6        A.     Oh, I have studied it, but, as I
 7   indicated to you earlier, there are so many
 8   patents here, my memory just doesn't pop out at
 9   me.
10        Q.     But at least with respect to the
11   Notice of Allowance, there were one, two, three,
12   roughly four references that talked about it in
13   Paper 8?
14        A.     I see the first one here.
15        Q.     Let's just list them.  There is
16   Rejto, Masaki, Smith, and Orton, and Bernard?
17        A.     Right.
18        Q.     So there are five references?
19        A.     Right.
20        Q.     So do you have Orton with you here
21   today, sir?
22        A.     No.
23        Q.     So you need to see a copy of Orton
24   and a copy of Rejto; is that right?
25        A.     I suspect, yes.
```

| | | |
|---|---|---|
| 1 | Q. | And you have Bernard here, correct? |
| 2 | A. | I do have Bernard. |
| 3 | Q. | Did Bernard disclose a dark -- a flocked fabric having a dark pigmented adhesive used to adhere the flock to the base? |
| 6 | A. | In the detailed description in Column 3, line 23, it says, The coating adhesive may be colorless or it may contain a heat sublimable dye selected for ultimate color contrast with that which had been printed on the substrate fabric. |
| 12 | Q. | What does that teach to you in terms of darkness? |
| 14 | A. | It doesn't teach me anything. |
| 15 | Q. | With respect to -- okay.  Let me see if I can get you a copy of Orton and a copy of Rejto.  Those are the two references you don't have in front of you, sir? |
| 19 | A. | Yes. |
| 20 | Q. | Would you agree with me that none of the references which we just mentioned, that would be Smith, Masaki, Smith or Masaki, teaches a flocked fabric having a dark pigmented adhesive to adhere the flock to the base? |
| 25 | A. | A re-cursory look, I would agree |

CERTIFICATE

I, LUCILLE A. KELLY, a Certified Shorthand Reporter and Notary Public of the State of New Jersey, certify that the foregoing is a true and accurate transcript of the deposition of said witness who was first duly sworn by me, on the date and place hereinbefore set forth.

I FURTHER CERTIFY that I am neither attorney, nor counsel for, nor related to or employed by, any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed in this action, nor am I financially interested in this case.

*[signature]*

LUCILLE A. KELLY, CSR, RMR
LICENSE NO. XI01052

Dated:    September 14, 2003

My Notary Commission expires March 8, 2005