# EXHIBIT C

Case 3:02-cv-01267-AVC    Document 189-3    Filed 09/08/2006    Page 1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

INTERMARK FABRIC CORPORATION          :
                                      :
                                      :
                                      :
        v.                            :        C.A. No. 3:02-CV-1267 (AVC)
                                      :
                                      :
MICROFIBRES, INC.                     :
                                      :

## ANSWERS OF DEFENDANT, MICROFIBRES, INC. TO PLAINTIFF INTERMARK FABRIC CORPORATION'S FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1

Identify each and every fact upon which Microfibres bases its allegations in Count

I of its Counterclaim.

### ANSWER NO. 1

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres further objects because all of the facts relating to Intermark's infringing activities are uniquely within the possession of Intermark, its transfer printers, and its customers. Without waiving these objections, Microfibres bases its infringement claims on several facts, including the July 9, 2002 affidavit of William Lucchesi, which admits that Intermark manufactures and sells flocked fabric with a dark-pigmented adhesive. That product is an integral component of the '021 Patent. Microfibres also bases its claims on the July 24, 2002 correspondence from counsel for Intermark, Michael Cantor, Esq., which admits that Intermark delivers the flocked fabrics it manufactures to transfer printers for transfer printing. Microfibres also relies on the transfer-printed flocked fabric samples it acquired from Intermark's European affiliate, Spandauer Velours GmbH & Co., which contain a dark-pigmented adhesive. The flocked fabric for these samples appears to be imported from the United States. Microfibres believes that Intermark is the source of such fabric. Some of the samples show evidence of air-embossing, which is also claimed by the '021 Patent. Microfibres expects that discovery directed to Intermark, its transfer printers, and its customers will produce additional facts relating to Microfibres' infringement claims. Given the nature of the industry, Microfibres believes that Intermark delivers flocked fabric with a dark-pigmented adhesive suitable for transfer printing to one or more transfer printers for transfer printing and ultimate delivery to Intermark's customers. This response will be supplemented as appropriate.

## INTERROGATORY NO. 2

Identify each and every fact upon which Microfibres bases its allegations in Count II of its Counterclaim.

## ANSWER NO. 2

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres further objects because all of the facts relating to Intermark's infringing activities are uniquely within the possession of Intermark, its transfer printers, and its customers. Without waiving these objections, see Answer No. 1. In addition, Microfibres believes that Intermark sells the dark-pigmented flocked fabric to transfer printers and others and actively encourages or aids these third-parties to transfer print the fabric in violation of the '021 Patent.

## INTERROGATORY NO. 3

Identify each and every fact upon which Microfibres bases its allegations in Count III of its Counterclaim.

## ANSWER NO. 3

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres further objects because all of the facts relating to Intermark's infringing activities are uniquely within the possession of Intermark, its transfer printers, and its customers. Without waiving these objections, see Answer No. 1 and Answer No. 2. In addition, Microfibres believes that Intermark sells flocked fabric with a dark-pigmented adhesive to transfer printers and others for transfer printing. Microfibres believes the flocked fabric sold to these third-parties may be specially modified by Intermark, such as by heat setting, for transfer-printing in violation of the '021 Patent.

## INTERROGATORY NO. 4

For each product and/or method that Microfibres alleges infringes the '021 patent:

a. Identify the product manufactured, used, imported, offered for sale or sold by Intermark and/or any method employed by Intermark:

b. State whether such infringement is:

(1) literal infringement

2

DEC 13 2002 19:37 FR H O S RROU 3            401 237 9800 TO 59106159186028 P.05

(2)     infringement under the doctrine of equivalents; and

c.      For each such product and/or method, please provide a claim chart identifying the methods or components, structures, materials and/or features that Microfibres contends corresponds to and infringes each element of each respective claim in the '021 patent, or if the doctrine of equivalents is asserted, the methods or components, structures, materials and/or features which is equivalent to each element of each claim, and state how Microfibres contends that the product or method performs substantially the same function in substantially the same way to obtain the same result as the element claimed.

## ANSWER NO. 4

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres cannot identify at this time every product that Intermark manufactures, sells, or offers to sell that directly infringes the '021 Patent. Nor can Microfibres identify at this time all of the products manufactured or sold by Intermark that induce infringement or contribute to infringement of the '021 Patent. All of this information is uniquely within the possession of Intermark, its transfer printers and its customers. Without waiving these objections, Microfibres knows from the affidavit of William Lucchesi that Intermark manufactures and sells flocked fabric with a dark-pigmented adhesive and knows that Intermark sells its flocked fabric products to transfer printers. Microfibres also knows that Intermark's affiliate, Spandauer Velours, is selling transfer printed flocked fabric with a dark adhesive and air-embossing. The flocked fabric appears to be imported from the United States. Some of the samples are air-embossed, which also infringes the '021 Patent. The infringement is literal. Microfibres provides a preliminary claim chart below:

| CLAIM | ACCUSED INSTRUMENTALITY |
|---|---|
| 1. A transfer printed, flocked fabric comprising: | The accused fabrics comprise a transfer printed, flocked fabric or non-staple flocked fabric specially adapted for transfer printing. |
| a. a textile substrate; | The accused fabrics include a textile substrate. |
| b. raised thermoplastic fibers on the substrate; | The accused fabrics include thermoplastic fibers on the substrate. |
| c. a dark pigmented adhesive adhering said fibers to said substrate; and | The accused fabrics include a dark pigmented adhesive adhering the fibers to the substrate. |

3

| | |
|---|---|
| d. disperse dye distributed in a pattern in upper portions of said thermoplastic fibers. | The accused fabric includes a disperse dye distributed in a patter in the upper portions of the thermoplastic fibers or is specially adapted for such dying. |
| 2.- 9. Are dependent claims to Claim 1. | The accused fabrics directly infringe the dependent claims. |
| 10. A fabric as claimed in Claim 1 where said fibers are arrayed on said substrate in a textured array, so that some fibers diverge from neighboring fibers more than other fibers and said pigmented adhesive is visible between said diverging fibers. | Some of the accused fabrics contain fibers that are arrayed on the substrate in a textured array so that some fibers diverge from neighboring fibers more than others and pigmented adhesive is visible between the diverging fibers. |
| 11. A transfer printed, flocked fabric comprising a textile substrate, raised thermoplastic fibers on the substrate, an overall dark pigmented adhesive adhering lower parts of the fibers to the substrate and disperse dye distributed as a result of the transfer printing to form a pattern in the upper portions only of the nap-forming part of said thermoplastic fiber, without said pattern-forming disperse dye penetrating to the depth of the nap. | The accused fabrics include a transfer printed, flocked fabric with a textile substrate, raised thermoplastic fibers on the substrate, a dark pigmented adhesive that adheres the lower parts of the fibers to the substrate and a disperse dye distributed in a patter that penetrates only the upper portions of the nap-forming part of the fiber. |
| 12. A transfer printed, flocked fabric comprising a textile substrate, raised nylon fibers on the substrate, a black-pigmented adhesive adhering the nylon fibers to the substrate and a disperse dye distributed in a pattern in the upper portions of the nylon fibers and said fabric forming a deep, dark, crock-fast colored print. | The accused fabrics include a transfer printed, flocked fabric with a textile substrate, raised nylon fibers on the substrate, a black-pigmented adhesive adhering the nylon fibers to the substrate and a disperse dye distributed in a pattern in the upper portions of the nylon fibers so that it forms a deep, dark, crock-fast colored print. |
| 13. A method of producing a transfer printed, flocked fabric comprising the steps of adhering undyed thermoplastic fibers to a substrate with a dark pigmented adhesive so that the fibers have a lower portion adhered to the substrate and an upper portion forming a nap and thereby forming a flocked fabric, and transfer printing the flocked fabric. | The accused fabrics include transfer printed flocked fabrics that have been manufactured by adhering undyed thermoplastic fibers to a substrate with a dark pigmented adhesive so that the lower portion of the fibers adhere and the upper portion forms a nap. |
| 14. A method as claimed in claim 13 wherein said adhering step includes air texturizing the fibers on the substrate to cause some fibers to diverge from neighboring fibers more than other fibers and the pigmented adhesive is visible between the diverging fibers. | Some of the accused fabrics include fibers that are air texturized. |
| 15.-20 Are dependent claims | The accused fabrics directly infringe the dependent claims. |

4

## INTERROGATORY NO. 5

With respect to the conception, reduction to practice, first public use or disclosure

and first sale or offer for sale of the invention of the '021 patent:

      a.      identify the date and location of each such event;

      b.      describe, in detail, each such event;

      c.      identify all persons most knowledgeable about each such event; and

      d.      identify of all documents relating to each such event.

## ANSWER NO. 5

      a.-b.      The invention was first conceived early 1992 and a patent application was filed on July 31, 1992. It was first shown in Europe on August 1, 1992. The first sales occurred in August of 1992 in Canada.

      c.      **James R. McCulloch**
                  Microfibres, Inc.
                  One Moshassuck Street
                  Pawtucket, RI 02862

                  **William F. Laird**
                  Microfibres, Inc.
                  One Moshassuck Street
                  Pawtucket, RI 02862

      d.      Please see the patent application and invention documents which Microfibres will make available in response to Intermark's First Request for Production.

## INTERROGATORY NO. 6

Identify by name or other appropriate designation, all methods and/or products

employed or manufactured and sold by Microfibres, respectively, which embody the

invention of the '021 patent and identify the persons most knowledgeable about, as

applicable, the design, development, testing, manufacturing, marketing and sale of each

such method and/or product.

## ANSWER NO. 6

Objection. This request is overbroad and unduly burdensome. Further, it is not limited in time. Subject to these objections, Microfibres currently sells the following products that embody the invention of the '021 Patent:

> Rawhide, Gianni, Kid Glove, Billy Glove, Safari, Mallory/Chenille, Talisman, Mediterranean, Webster, Anaconda/Cobra, Bali, Python, Mercer, Wild Kingdom/Panther, B-52, Atlantis, Alligator, Wrangler, Westport, Callaway, Durham, Boomerang, Dublin, Antwerp, Hamburg Chaps, Jamie, Jasmine, Avery, Atwood, Avenue, Mani, Tradewinds Ashley, Posen, Cheyenne, Inspiration, Lobo, Phoenix, Chapparel Neuhaus, Cyclone, Manhattan, Calloway, Bambora, Ubati, Canyon

The following individuals are knowledgeable about the specified topics, as described below:

> **James R. McCulloch**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

> **William F. Laird**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

Mr. McCulloch and Mr. Laird are knowledgeable about the design, development and testing of the products that embody the '021 Patent.

> **James R. Fulks**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

Mr. Fulks is knowledgeable about the products that embody the '021 Patent and the marketing and sale of those products.

> **Michael Czarnecki**
> 836 Wellington Road
> Winston-Salem, NC 27106

Mr. Czarnecki is knowledgeable about the marketing and sale of the products that embody the '021 Patent.

## INTERROGATORY NO. 7

Identify all extrinsic evidence (by "extrinsic evidence" it is meant all evidence

other than the '021 patent and its prosecution history) which Microfibres plans to use or

rely upon to construe the meaning of any term contained in the claims of the '021 patent.

## ANSWER NO. 7

Objection. This interrogatory calls for attorney work product and trial preparation
materials in that it asks Microfibres and its counsel to divulge their litigation strategies.
Microfibres reserves the right to rely on all admissible evidence that it and its counsel
deem advantageous.

## INTERROGATORY NO. 8

Identify all companies related to Microfibres, including all parent companies,

subsidiaries, divisions, or others, stating the nature of the relationship from 1980 to date.

## ANSWER NO. 8

**Upholstery Fabrics, Inc.**
254 Chambers Street
Jasper, Georgia 30143

Upholstery Fabrics, Inc. is a wholly owned subsidiary of Mirofibres, Inc.

**Microfibres Europe**
Lange Meire 56
B-9270 Laarne, Belgium

Microfibres Europe is a majority-owned subsidiary of Microfibres, Inc.

**Hartford Fibres Limited**
574 Vraeside Crescent
Kingston, Ontario    K7P1G8

Hartford Fibres is a wholly owned subsidiary of Microfibres, Inc.

7

## INTERROGATORY NO. 9

Identify all individuals involved in any capacity whatsoever in the decision to

send the Cease and Desist Letter. Such persons include, but are not limited to, all

individuals involved in any investigation of the validity of infringement of the '021

patent. For all persons identified, describe with specificity the exact nature of the persons

involvement in the decision to send the Cease and Desist Letter.

## ANSWER NO. 9

Objection. This interrogatory is irrelevant and not reasonably calculated to lead
to the discovery of admissible evidence to the extent it seeks individuals involved in any
capacity whatsoever. Microfibres also objects to the extent this interrogatory demands
the disclosure of attorney-client communications or attorney work-product. Without
waiving these objections, in addition to counsel, the following individuals were involved
in the decision to send the June 24, 2002 Cease and Desist Letter:

> **James R. McCulloch**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

> **James R. Fulks**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

> **Pierre Hanet**
> Microfibres Europe
> Lange Meire 56
> B-9270 Laame, Belgium

Mr. Hanet forwarded to Mr. Fulks and Mr. McCulloch samples of flocked fabric
from Spandauer that infringed the '021. Messrs. Hanet, Fulks and McCulloch discussed
the infringing fabric and Mr. McCulloch directed Mr. Fulks to take steps to prevent the
infringement.

8

## INTERROGATORY NO. 10

Please set forth any and all damages Microfibres alleges it is entitled to with

specificity, setting forth the basis of how each and every component of damages was

determined, identifying the person or persons most knowledgeable regarding said

damages.

## ANSWER NO. 10

Microfibres has not completed its damages analysis. To a large measure,
Microfibres damages will involve analysis of information within the control of Intermark.
Discovery is ongoing. Microfibres will supplement this response as appropriate
following discovery and the Court's ruling on Intermark's Motion to Bifurcate.


## INTERROGATORY NO. 11

Describe the facts and circumstances of how and when Microfibres first became

aware of Intermark's alleged infringement of the '021 patent.

## ANSWER NO. 11

Microfibres learned of Intermark's infringement of the '021 Patent in the Spring
of 2002 when it acquired samples of flocked fabric which were manufactured by
Intermark's European affiliate, Spandauer Velours. The samples are transfer printed
flocked fabric with a dark-pigmented adhesive. Some of the samples evidence air-
embossing, which is also covered by the '021 Patent. The flocked fabric appears to have
been imported from the United States.


## INTERROGATORY NO. 12

Has any investigation, test, review, report and/or study relating to infringement of

the '021 patent been conducted by or on behalf of Microfibres with respect to any

method, product or devise? If the answer is other than the unqualified "no", describe

each study or investigation, setting forth: the results; the date it was requested and

9

received; the identity of each person who requested it, authorized it, furnished any

information upon which it was based in whole or in part, participated in it, prepared or

reported its results, received or had access to such results, and/or participated in making

any decision or recommendation based in whole or in part on such results; and, for each

such person, state the date(s), place(s) and nature of such person's activities with respect

to such study or investigation, and identify all documents that relate or pertain to such

investigation, test, review, report, and/or study.

## ANSWER NO. 12

Objection. This interrogatory is vague, ambiguous, and overbroad. It is not clear
what is meant by an "investigation, test, review, report and/or study relating to
infringement of the '021 patent." Microfibres also objects to the extent this interrogatory
seeks attorney-client communications, attorney work-product, or trial preparation
materials.

Without waiving these objections, Microfibres investigated Intermark's
infringement of the '021 Patent. The investigation was performed when Microfibres
learned that Intermark's European affiliate, Spandauer Velours, was selling transfer
printed flocked fabric with a dark-pigmented adhesive. A review of the samples
confirmed that they infringed the '021 Patent as well as Microfibres European patent.
James Fulks, James McCulloch, and Pierre Hanet participated in this investigation. non-
privileged responsive documents will be made available for inspection and copying in
response to Intermark's First Request for Production.

## INTERROGATORY NO. 13

Identify any patent or patent application, domestic or foreign, now owned or ever

owned by Microfibres or an affiliate, parent or subsidiary of Microfibres that is a division

of, continuation of, or corresponds to or relates to the '021 patent, or which is a foreign

counterpart of the '021 patent, and identify all documents referring to relating to any such

patent or patent application filed in the United States or in a foreign country, including,

but not limited to, all documents within the prosecution history file of any such United

10