UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERMARK FABRIC CORPORATION | : | |
| | : | |
| v. | : | Case Number: 3:02 CV 1267 (AVC) |
| | : | |
| MICROFIBRES, INC. | : | |

**<u>MOTION IN LIMINE TO
SEVER INEQUITABLE CONDUCT CLAIM
FOR A BENCH TRIAL</u>**

**ORAL ARGUMENT REQUESTED**

## BRIEF STATEMENT OF THE CASE AND ISSUE

This is a patent dispute. In 2002 Microfibres, Inc. wrote to Intermark Fabric Corporation and demanded that it stop infringing Microfibres' '021 Patent, which claims a unique type of flocked fabric. Intermark refused and filed this lawsuit, claiming Microfibres' patent was invalid and unenforceable. Microfibres answered and filed counterclaims for infringement.

The evidence of infringement is overwhelming. Intermark's president and vice president both admitted to making a fabric that meets each of the elements of claim 1 of the '021 Patent. They also admitted to selling components of the patented invention to encourage others to infringe the '021 Patent.

Intermark claims that the '021 Patent is unenforceable because of the inventor's alleged misconduct before the USPTO during the prosecution of the patent. It argues, for instance, that James McCulloch did not inform the patent examiner that there it was known to use colored adhesives when making flocked fabric -- even though that disclosure is included in the '021 Patent itself:

> It is known to add pigment to an adhesive used in some flocked fabric manufacturing. . . . Tinted adhesives are also known for use with pre-dyed flock, to obtain an overall intensity of shade.

(Exh. A, Column 1, line 38-39 and 43-45). The patent examiner even acknowledged that it was known to add colored adhesives.

Intermark also argues that McCulloch's claim to the PTO that the invention allows reduced transfer printing pressures was false. No one but Intermark's lawyers buy that argument. Even Dr. Perry, Intermark's textile expert, admitted that the invention claimed by the '021 allows transfer printing at reduced pressures:

2

> Q: Well, if you were desirous of producing this optical effect in the fabric, would the addition of pigment to the adhesive enable you to transfer print at reduced pressures because you didn't need to get the dye as deep as before?
>
> A: Yes.

(Exh. B at 145.)

Finally, Intermark claims that McCulloch did not disclose the "best mode" of his invention because he did not explain how to "heat set" the fabric. Again, only Intermark's lawyers agree with this argument. Claim 1 of the '021 Patent is the only claim being asserted against Intermark and it does not claim a "heat setting" element. Therefore there was no obligation to disclose any particular method of heating setting. Intermark's patent expert, Mr. Goffney, admitted that Intermark's heat-setting argument would only affect Claim 17 -- which is not being asserted in this litigation. Moreover, the evidence clearly establishes that heat setting was well known in the industry as of July 31 1992 and that Microfibres merely used off-the-shelf heat setting equipment to achieve manufacturing efficiencies that are unnecessary to the invention.

## ARGUMENT

The Court should sever Intermark's claim of inequitable conduct and resolve it during a short bench trial following the jury trial. It is well settled that equitable conduct claims are mattes for the Court, not the jury. See Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1584 (Fed. Cir. 1995) ("Since inequitable conduct is a matter for the trial judge, and not the jury, these factual issues [regarding inequitable conduct] are not jury questions."); Burlington Indus. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague."); In re Dippin dots Patent Litigation, 249 F.Supp.2d

3

1346, 1364 (N.D. Ga. 2003) ("Both the factual determinations [of materiality and intent] and weighing of the factors are issues for the court; there is no jury issue as inequitable conduct is entirely equitable in nature.").

The reasons for severing an inequitable conduct claim are straightforward. First, given that the *Court* must resolve Intermark's allegations of inequitable conduct any arguments or evidence relating to that defense are irrelevant to the jury. Intermark's inequitable conduct evidence simply has no bearing on the jury questions of validity or infringement and therefore there is no reason for the jury to hear such evidence. Paragon Podiatry Lab, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993) ("The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide.").

Moreover, presentation of this evidence to the jury poses a substantial risk of confusion and prejudice. See THK Am., Inc. v. NSK Corp., 1996 U.S. Dist. LEXIS 226, *5 (N.D. Ill. 1996). As explained by the Northern District of Illinois, "*A patent case is complex and confusing enough for a jury without evidence which has no relevance to the issues to be decided by the jury. The patent itself should be tried, not the patentee.*" Id. (emphasis added).

The potential for jury confusion and prejudice is very real in this case. If the claim is not severed Intermark intends to present its inequitable conduct evidence to the jury through its expert witness, Lawrence Goffney, Jr. Though he should not be permitted to do so, Mr. Goffney intends to testify that Microfibres' employees acted in "wanton disregard" of their duties and that they "withheld material information." None of those opinions are relevant to the validity questions the jury must answer.

4

Nevertheless, if the jury is permitted to hear that evidence and those opinions (which should not be permitted at all because they usurp the role of the Court and jury) the jury very likely will consider it while deciding the issues of validity. The Court should not permit Intermark to taint the jury with irrelevant evidence.

A one-day bench trial on the issue of inequitable conduct following the infringement and validity claims is the most sensible way to proceed. It is a strategy that has been approved by the United States Court of Appeals for the Federal Circuit. See Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366 (Fed. Cir. 2006) (affirming trial court's decision to hold a bench trial on inequitable conduct claim). The same approach was followed in Applera Corp. v. Micromass UK Ltd., 204 F.Supp.2d 724 (D. Del. 2002) (severing inequitable conduct claim for one-day bench trial).

Intermark's obligation is to prove invalidity by clear and convincing evidence. The Court should not permit Intermark to overcome this heavy burden with dubious allegations of malfeasance (which Intermark's textile expert doesn't accept) that may sway the jury's analysis of the validity issues. THK Am., Inc., 1996 U.S. Dist. LEXIS 226, at *5.

          MICROFIBRES, INC.
          By its Attorneys,

          /s/
          Brent R. Canning, Esq. (ct23991)
          William R. Grimm, Esq.
          HINCKLEY, ALLEN & SNYDER LLP
          1500 Fleet Center
          Providence, RI  02903
          (401) 274-2000
          (401) 277-9600 (Fax)

|  |  |
|---|---|
|  | RESIDENT COUNSEL: |
|  | Jeffrey W. Kennedy, Esq. (ct16419) |
|  | Milano & Wanat |
|  | 471 East Main Street |
|  | Branford, Connecticut 06405 |
|  | 203.315.7000 (TEL) |
| September 13, 2006 | 203.315.7007 (FAX) |

## CERTIFICATION

William Cass, Esq.
Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

    I certify that sent a copy of the foregoing Memorandum of Law in Support of Microfibres' Motion in Limine to Sever Inequitable Conduct Claim to Intermark's counsel of record, as above, on September 13, 2006 by electronic filing and regular mail.

                                                            /s/Brent R. Canning