**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| INTERMARK FABRIC CORPORATION | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. No. 302 CV 1267 AVC |
| | : | |
| MICROFIBRES, INC. | : | |
| Defendant | : | |

**MICROFIBRES INC.'S MOTIONS IN LIMINE
TO EXCLUDE EXPERT TESTIMONY OF LAWRENCE J. GOFFNEY, JR.**

**ORAL ARGUMENT REQUESTED**

**BRIEF STATEMENT OF THE CASE AND ISSUE**

This is a patent dispute. In 2002 Microfibres, Inc. wrote to Intermark Fabric Corporation and demanded that it stop infringing Microfibres' '021 Patent, which claims a unique type of flocked fabric. Intermark refused and filed this lawsuit, claiming Microfibres' patent was invalid and unenforceable. Microfibres answered and filed counterclaims for infringement.

The evidence of infringement is overwhelming. Intermark's president and vice president both admitted to making a fabric that meets each of the elements of claim 1 of the '021 Patent. They also admitted to selling components of the patented invention to encourage others to infringe the '021 Patent.

Intermark claims that the '021 Patent is unenforceable because of the inventor's alleged misconduct before the USPTO during the prosecution of the patent. It argues, for instance, that James McCulloch did not inform the patent examiner that it was known to use colored adhesives when making flocked fabric -- even though that disclosure is included in the '021 Patent itself and even though the patent examiner pointed out that it was known to use colored adhesives. Intermark also argues that McCulloch falsely asserted that the invention permitted transfer printing at reduced pressures even though every expert in the case, including Intermark's expert, Dr. Perry, agrees that the invention does just that. Finally, Intermark claims that McCulloch did not disclose the "best mode" of his invention relating to heat setting even though heat setting is not part of Claim 1 and even though Microfibres' heat setting process simply employed off-the-shelf equipment that was available to all in the industry to achieve manufacturing efficiencies unnecessary to the invention.

To bolster its inequitable conduct claim Intermark has proffered Lawrence J. Goffney, Jr., a former Assistant Commissioner at the Patent and Trademark Office. Mr. Goffney's claimed area of expertise is patent practice and procedure. Mr. Goffney admits he has *no* textile experience.

Mr. Goffney's expert report and deposition testimony, however, confirm that he will not assist the jury in making its decision. Rather, he intends to act as the judge and jury -- telling the jury what the facts are, what the law is, and how they should decide this case. He wants to opine, for instance, that Microfibres' employees acted with "wanton disregard" of their duties and that the invention claimed by the '021 Patent is "unpatentable." These are precisely the types of "opinions" that are prohibited by the United States Court of Appeals and this Court should exclude Mr. Goffney from testifying.

## MOTIONS IN LIMINE GENERALLY

The purpose of in limine motions is to aid the trial process by enabling the Court to rule in advance of trial on the relevance and admissibility of certain forecasted evidence so that it can avoid lengthy argument and interruption during the trial. See Palmieri v. Defaria, 88 F.3d 136, 141 (2nd Cir. 1996).

## ARGUMENT

The Second Circuit is home to a significant amount of sophisticated and technical litigation that often requires expert testimony. The Court of Appeals has cautioned, however, that trial courts must be vigilant to prevent expert witnesses from usurping the role of the judge or the jury. See United States v. Scop, 846 F.2d 135, 140 (2nd Cir. 1988) ("In essence, his opinions were legal conclusions that were highly prejudicial and

went well beyond his province as an expert in securities trading"); <u>Marx & Co. v. Diners' Club, Inc.</u>, 550 F.2d 505, 512 (2nd Cir.) <u>cert. denied</u>, 434 U.S. 861 (1977) ("The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge -- surely an inadmissible inference in our system of law."); <u>Rieger v. Orlor, Inc.</u>, 427 F. Supp.2d 99 (D. Conn. 2006).

Intermark should be prohibited under Fed.R.Evid. 702 and 403 from introducing any expert testimony of Lawrence J. Goffney, Jr. because (1) he has admitted he has no understanding of flocked fabric or the textile industry, (2) he will usurp the role of the *Court* by instructing the jury on the law, (3) he will usurp the role of the *jury* by testifying as to the ultimate legal conclusions the jury should reach, and (4) he intends to offer testimony on the state of mind of various witnesses.

Mr. Goffney's report exceeds the permissible bounds of expert testimony and is highly prejudicial. <u>See</u>, e.g., <u>Rieger</u>, 427 F. Supp.2d 99. It includes a lengthy factual narrative based upon Mr. Goffney's review of the depositions and correspondence and patent files, a discussion of the applicable legal principles, including the "duty of disclosure" and the definition of "materiality," and a section that applies those principles to the "facts" to reach certain "conclusions."

This type of expert testimony is improper, as the case of <u>Highland Capital Mgmt. v. Schneider</u>, 379 F. Supp.2d 461 (S.D.N.Y. 2005) illustrates. There, in a sophisticated commercial transaction, the plaintiffs alleged the defendants had committed violations of various contractual rights and had engaged in improper tortious conduct that violated the securities laws. To support these claims the plaintiffs offered the testimony of Sean F. O'Shea, a former Assistant United States Attorney, who analyzed the evidence in the

4

case and opined that it probably violated the securities laws and constituted criminal conduct. Highland, 379 F. Supp.2d 461.

The Court excluded Mr. O'Shea's testimony. First, the Court noted that Mr. O'Shea's report indicated that he intended to testify to a factual narrative that the jury was perfectly capable of constructing itself. "While an expert must of course rely on facts or data in formulating an expert opinion, see Fed.R.Evid. 703, an expert cannot be presented solely for the purpose of constructing a factual narrative based upon record evidence." The Court also noted that Mr. O'Shea's factual narrative speculated about the motivations of the parties and their state of mind. Id. at 469.

Second, the Court held that Mr. O'Shea's opinion was improper because it intruded into the province of the judge by opining on securities law. "To the extent O'Shea discusses governing law, the discussions is inadmissible because '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Id. (quoting Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2nd Cir.) cert. denied, 434 U.S. 861 (1977)).

Finally, the Court excluded Mr. O'Shea's testimony because he intended to apply his understanding of the facts to his understanding of the securities regulations to reach certain legal conclusions. The trial court relied on the appellate decisions of Marx, 550 F.2d at 510 and Scop, 846 F.2d at 138. "This type of expert testimony is not permitted. It is inadmissible because it usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court." Highland, 379 F.Supp.2d at 471.

Although Rule 704 allows experts to testify as to ultimate issues of fact, it does not "allow experts to offer opinions embodying legal conclusions." United States v. Scop,

846 F.2d 135, 139 (2nd Cir.) modified on other grounds, 856 F.2d 5 (2nd Cir. 1988); AUSA Life Ins. Co. v. Dwyer, 899 F. Supp. 1200 (S.D.N.Y. 1995).  That is precisely what Mr. Goffney intends to do.

### Goffney's Factual Narrative

Mr. Goffney's report follows the same format that has repeatedly been rejected. First, it includes a ten-page factual narrative about how the '021 Patent was obtained, what papers were submitted, how the patent examiner responded, etc.  (Exh. A at 22-33). It also includes a lengthy factual narrative about certain business dealings between Intermark and Microfibres based upon Mr. Goffney's review of correspondence and deposition transcripts shown to him by Intermark's lawyers. (Exh. A at 33-35).

Mr. Goffney has no first-hand knowledge of any of this information and he may not be placed on the stand to tell a factual story.  As the Court in Highland explained, "To the extent that O'Shea is simply rehashing otherwise admissible evidence about which he has no personal knowledge, such evidence -- taken on its own -- is inadmissible." Id. at 468-69.

The individuals who participated in prosecuting the application (Mr. McCulloch, Mr. Laird, and Attorney MacCord) will likely be present at the trial.  Therefore there is no need for Mr. Goffney's second-hand account.  See In re Rezulin Prods. Liab. Litig., 309 F. Supp.2d 531, 551 (S.D.N.Y. 2004) (rejecting parts of plaintiff's expert testimony that was "a narrative reciting selected regulatory events" because "to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence."); Media Sport & Arts v. Kinney Shoe Corp., 1999 WL 946354 at *3 (S.D.N.Y. Oct. 19, 1999) (where expert's testimony "is not based on personal knowledge,

but instead on his review of documents and depositions produced by the parties," the expert's testimony "may not take the place of that of the individuals who actually negotiated the deal.")

The narrative is particularly troubling given Mr. Goffney's former position at the PTO. The jury will likely assume that Mr. Goffney's narrative must be accepted as true or that it should be given greater weight than testimony from other witnesses. The facts should be introduced through witnesses who have first-hand knowledge, not through Intermark's expert.

### Goffney's Legal Instructions

Mr. Goffney's report contains a legal section that, among other things, defines the "Duty of Disclosure" and what constitutes "Material" information. (Exh. A at 17-22). Both terms are included in the parties' respective proposed jury instructions. There is no reason for Mr. Goffney to define these terms beyond what the Court will instruct and it is improper for Mr. Goffney to do so. Marx, 550 F.2d at 509-10.

### Goffney's Legal Conclusions

Finally, Mr. Goffney's report combines the facts to the law in order to reach the following legal conclusion:

- In my opinion, Mr. McCulloch, his patent attorney Mr. MacCord, and Microfibres employees, in particular Mr. Fulks, **did not disclose material information** to the PTO about the Frosty product manufactured by Intermark. (emphasis added). (Exh. A at 33).

- Thus, there is a prima facie case that the invention of the '918 Application was **unpatentable** because it was derived from the information about the Frosty product. (emphasis added) (Exh. A at 36).

7

- In my opinion, Mr. McCulloch, his patent his patent attorney Mr. MacCord, and Microfibres employees, in particular Mr. Laird, **did not disclose material information** to the PTO about the best mode of practicing the heat setting claim -- claim 17 of the '021 Patent -- contemplated by Mr. McCulloch. (emphasis added) (Exh. A at 36).

- In my opinion **Mr. McCulloch admitted that he had contemplated a better mode** of practicing his invention of claim 17 of the '021 patent before filing the '918 application. (emphasis added) (Exh. A at 37)

- Rather, Mr. McCulloch's not disclosing information to the examiner about Microfibres' improved process of manufacturing flock fabric provides a prima facie case of **unpatentability** of claim 17 for lacking a disclosure of the best mode. (Report at 38) (emphasis added) (Exh. A at 38).

The report is replete with these "opinions." They are improper because they usurp the role of the jury and tell the jury what conclusion to reach (i.e. that McCulloch "withheld material information" or that the invention is "unpatentable.").

In fact, Mr. Goffney admitted during his deposition that these conclusions are based on the evidence that he expects to hear at trial, rather than on some specialized knowledge he possesses:

Q: So would it be fair to say that your ultimate opinion on this issue of the Frosty disclosure will be dependent on whatever trial testimony is given and then inferences from which you then draw from that testimony?

A: Inferences that I and other testifiers give. . . .

(Exh B. at 161). In that case, there is no need for Mr. Goffney at all.  The jury is equally capable of listening to the evidence and drawing its own inferences and own conclusions.

This Court has shown itself particularly sensitive when an expert either offers opinions that track the language of particular statutes or legal standards or when the expert lacks specialized knowledge about the topics he intends to discuss.  See Reiger,

427 F. Supp.2d at 104 ("[B]ecause Kleizner's opinion does not proffer any specialized knowledge and invokes legal standards (i.e., that defendants could have accommodated plaintiff's disability without significant impact . . .) his opinion would 'not aid the jury in making a decision, but rather attempts to substitute [his] judgment for the jury's.'").

Mr. Goffney's report and deposition testimony confirm that he intends to offer opinions that track the language of the relevant statutes and that he has no specialized knowledge about the textile industry or flocked fabric. Since Mr. Goffney does not have the expertise to declare what information is material or known in the textile industry he should not be instructing the jury on these issues.

### Mr. Goffney's Factual Inferences

Mr. Goffney also hopes to offer "opinions" that McCulloch acted in "wanton disregard" of his duties (Exh. A at 40) and wants to offer his opinion about what he thinks the parties knew -- as though he were a mind-reader: "It is apparent that Mr. Fulks and Mr. McCulloch knew about the relationship with Intermark, and *there is a very strong inference that they knew of the Frosty product* and Intermark's concern about the quality of the flock supplied to Intermark and that the flock material was being sold to its customers for use with both wet printing and transfer printing process." (Exh. A at 35). (emphasis added).

It is the jury's job, not Mr. Goffney's job, to decide the state of mind of the parties and to decide who knew what information. See Highland 379 F. Supp.2d at 469 ("Whatever expertise O'Shea may possess, no expert may 'supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence.'").

9

Moreover, Mr. Goffney has no basis for reaching these inferences. He admitted during his deposition he has no personal knowledge of what the parties did or did not know:

> Q: Do you have any personal knowledge of what Mr. McCulloch knew or didn't know on or about July 31, 1992, when the patent application was first filed?
>
> A: I'm not a fact witness. I don't have any personal knowledge. I only know what he says and what reasonable inferences I may take from what he says.

(Exhibit B at 46-47). Mr. Goffney should not be permitted to draw factual inferences from facts that he knows nothing about. That is the job of the jury.

## CONCLUSION

It is clear that Mr. Goffney intends to invade the province of the Court by offering legal definitions and instructions, and to invade the province of the jury by telling them what the facts are and what their conclusions should be. The Court should not permit Mr. Goffney to testify.

MICROFIBRES, INC.
By its Attorneys,

/s/
Brent R. Canning, Esq. (ct23991)
William R. Grimm, Esq.
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Fax)

RESIDENT COUNSEL:<br>
Jeffrey W. Kennedy, Esq. (ct16419)<br>
Milano & Wanat<br>
471 East Main Street<br>
Branford, Connecticut 06405<br>
203.315.7000 (TEL)<br>
203.315.7007 (FAX)

September 13, 2006

## **CERTIFICATION**

William Cass, Esq.
Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

    I certify that sent a copy of the foregoing Memorandum of Law in Support of Microfibres' Motion in Limine to Exclude Testimony of Lawrence Goffney to Intermark's counsel of record, as above, on September 13, 2006 by electronic filing and regular mail.

/s/Brent R. Canning