IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERMARK FABRIC CORPORATION | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | C.A. No. 302 CV 1267 AVC |
| | : | |
| MICROFIBRES, INC. | : | |
|     Defendant | : | |

# MICROFIBRES' MOTION IN LIMINE
# TO EXCLUDE UNCORROBORATED ORAL TESTIMONY
# OF PRIOR ART

**ORAL ARGUMENT REQUESTED**

**BRIEF STATEMENT OF THE CASE AND ISSUE**

This is a patent case. In 2002 Microfibres, Inc. wrote to Intermark Fabric Corporation and demanded that it stop infringing Microfibres' '021 Patent, which claims a unique type of flocked fabric. Intermark refused and filed this lawsuit, claiming Microfibres' patent was invalid and unenforceable. Microfibres answered and filed counterclaims for infringement.

The evidence of infringement is overwhelming. Intermark's president and vice president both admitted to making a fabric that meets each of the elements of claim 1 of the '021 Patent. They also admitted to selling components of the patented invention to encourage others to infringe the '021 Patent.

Intermark claims the '021 Patent is invalid under 35 U.S.C. § 102 because of various items of prior art. It claims, in particular, that the invention was publicly known and used years before Microfibres conceived the idea by March 21, 1991 or that it was sold in the United States more than one year prior to the date Microfibres filed its patent application (on or before July 31, 1992).

Intermark's "evidence" that the invention was not novel consists almost entirely of oral testimony from Microfibres' competitors (who have teamed-up with Intermark) and Intermark's own employees. These witnesses have only their testimony and no contemporaneous corroborating evidence (samples, sales records, or other documents) to support the claim that Microfibres' patent is invalid.

**ARGUMENT**

The Court should exclude any uncorroborated oral testimony offered by Intermark which claims the invention described in the '021 Patent was known or used prior to

Microfibres' conception or more than one year before Microfibres' patent application. Such uncorroborated testimony (individually and together) is legally insufficient to prove invalidity and therefore its probative value is substantially outweighed by the risk it will confuse and mislead. See Fed.R.Evid. 403.

We start with the rule that patents are presumed valid and therefore only clear and convincing evidence will invalidate a patent. See Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999). Because of this strict evidentiary burden, oral testimony that an invention was previously seen, used, or known (in other words, the invention is anticipated) cannot invalidate a patent and is legally insufficient to support a jury finding of invalidity. Barbed Wire Patent Case, 143 U.S. 275 (1892); Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368 (Fed. Cir. 1998); Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002).

In the Barbed Wire Patent Case, for instance, the Supreme Court struck down a finding of invalidity that was based on oral testimony from 24 witnesses who claimed to have previously seen the patented invention. The Court explained that oral testimony was not sufficiently trustworthy to meet the strict evidentiary burden. Similarly, in Juicy Whip, the United States Court of Appeals for the Federal Circuit struck down an invalidity finding that was based upon oral testimony from several witnesses.

The rule is straightforward: oral testimony *must* be corroborated with documents, samples, sales invoices, or photographs or other tangible evidence if it is to be properly considered by the jury. See Finnigan, 180 F.3d at 1369 ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or

3

her level of interest."); Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1217 ("Thus, the district court correctly required corroboration for Brown's testimony.")

Here, consistent with Federal Circuit precedent, any testimony that is not corroborated must be excluded, as it was in the Texas Digital case: "The court found Brown's testimony unreliable and potentially confusing to the jury, and rightfully excluded it pursuant to FRE 403." Id. at 1218. The Court should extend this ruling to at least the following witnesses:

**1.    Charles Bunch**

Mr. Bunch is the president of Avidtech, a textile company that has entered into a joint-defense agreement with Intermark. Ninety percent of Avidtech's current business involves the manufacture of transfer printed flocked fabric with a dark adhesive. It is believed that Mr. Bunch will testify that he knew about, saw, or made the patented invention before Microfibres did. However, he has no corroborating evidence to support his claim:

> Q:   Do you have any documents to demonstrate that Bunch Fabric was transfer printing on flocked fabric made with colored adhesive during the 1980s?
>
> A:   No. All of our records were -- pertaining to this were destroyed in '85.

(Exhibit A at 69-70).

**2.    Mustafa Nour**

Mr. Nour is a former employee of Malden Mills. His testimony should be excluded also. First, like Mr. Bunch, Mr. Nour has no samples, sales invoices, or other evidence to corroborate Intermark's invalidity claim:

4

> Q: Do you have any documents or fabric samples that would demonstrate your belief?
>
> A: No, sir, because when I left Malden, I didn't take anything with me.

(Exhibit B at 42).

In addition, Mr. Nour admitted during his deposition that his former employer, Malden Mills, never used *dark* adhesives for transfer printing on flocked fabric.  In other words, Mr. Nour never actually saw anyone practice the invention as described by the '021 Patent.  Any contrary testimony at trial would amount to perjury:

> Q: Was Malden Mills using only light colored adhesive, light colored?
>
> A. Most of it.  Actually, with the heat transfer, you have to be like light to medium. . . .
>
> Q: So in the late '80s, you were using light to medium colored adhesives, is that right?
>
> A: For heat transfer.

(Exhibit B at 54-55).

### 3. David Rahimi

Mr. Rahimi is the president of Novita Textiles.  Novita purchased flock fabric since 1993 and 75 percent of his business involves flocked fabric.  He has no tangible evidence to support Intermark's claim that the invention set forth in the '021 Patent was practiced before Microfibres' conceived it or sold it more than one year prior to the date of the patent application:

> Q: Do you have any documents in the possession of Novita that would demonstrate that anyone had transfer printed on a flocked fabric with dark pigmented adhesive prior to July 31, 1991?
>
> A: If I have any documents?  No, I don't.

(Exh. C at 35).

### 4. Kerry Forsdahl

Ms. Forsdahl is the vice-president for Jest Textiles. Jest Textiles purchased fabric from Intermark since 1997. Jest has no samples, sales invoices, or other tangible evidence to prove that the invention set forth in the '021 Patent was known or used before Microfibres conceived it or more than one year before Microfibres filed its patent application.

### 5. Luther Boyd Madren

Luther Boyd Madren has been employed by Culp for 20 years and is involved in transfer printing flocked fabric. Again, neither Culp nor Mr. Madren have any relevant corroborating evidence. At his deposition he referred to an October 1991 letter and a December 1991 memo. Neither document qualifies as "prior art" that would invalidate Microfibres' patent. First, both documents were created *after* Microfibres' conceived the invention by March 21, 1991. See 35 U.S.C. § 102(a). Second, both documents were created *after* July 31, 1991 -- which is the one year mark prior to the filing of the patent application. See 35 U.S.C. § 102(b). Accordingly, Mr. Madren has no relevant corroborating art.

### 6. Steven Rosenthal

Mr. Rosenthal works for Noveon, a chemical company that sells adhesives. Mr. Rosenthal performed a search, as requested by Intermark, to attempt to locate evidence that the invention set forth in the '021 Patent had been practiced before Microfibres conceived it or one year prior to the patent application date. He found no evidence:

> Q: In your search of the American Finish and Noveon records, did you find any evidence of the use of dark pigmented adhesive on clear flock fabric which had been transfer printed prior to July 31 of 1992?

6

        Mr. Cass: Object to the form of the question.

- A.   As I previously stated it, when we did our search we found nothing that specifically described in our work notes that project, in those words.

- Q:   After your search did you turn over any documents to Intermark or its attorneys?

- A:   Back at that time?

- Q:   Yes.

- A:   I think we may have showed them some notes or discussed some notes in our lab books, and they didn't feel that that specifically showed anything, so I don't think we actually photocopies or sent anything at that time. I don't remember exactly what we did.

(Exh. D. at 73-74).

### 7. Peter Hadley

Peter Hadley works for Claremont Flock Corporation (another competitor of Microfibres) and has admitted he has an interest in invalidating the '021 Patent. Mr. Hadley has no corroborating evidence of any fabric samples or any sales invoices or product records that include all of the elements of the invention. Intermark's president, William Lucchesi told Mr. Hadley that because his samples did not have transfer printing (a necessary element of the invention) and were undated the fabric in his possession had no value:

- Q:   Did Mr. Lucchesi tell you that, because the samples were not transfer printed, they were of no value to him?
. . . .
- A:   Yes, he did, at that time.

- Q:   Did Mr. Luccesi also tell you, because the samples were not dated, they were of no value to him?
. . . .
- A:   Yes.

(Exhibit E at 17).

### 8. Laura Ouimet

Laura Ouimet is employed by Spectro Coating and sits on the board of the American Flock Assocition. She has admitted that she is biased and has an interest in seeing the '021 Patent invalidated.

> Q: Mr. Grimm asked you earlier as to whether you would like to see the '021 Patent invalidated; do you remember that?
>
> A: Yes.
>
> Q: Is there some interest on behalf of Spectro to see the '021 Patent invalidated?
>
> A: I would like to see it invalidated. We don't want to lose business.

(Exhibit F at 116).

Ms. Ouimet has admitted that she has no corroborating records because they were allegedly destroyed in a fire:

> Q: Do you recall anything else about your conversation with Mr. Shah about the Microfibres/Intermark dispute?
>
> A: We just discussed together about how long we had been doing it. We discussed, you know, how this could pop out of the woodwork after ten years. We spent time trying to find records, but we had a fire and many records were destroyed in that fire. . . .

(Exhibit F at 20).

### 5. Hemendra Shah.

Hemendrah Shah is employed by Spectro Coating and has an interest in the outcome of this litigation as well. He too has no corroborating evidence that the patented invention was publicly known and practiced in the United States before Microfibres conceived it.

Mr. Shah has no credible corroborating evidence. He did produce a document labeled "Experimental Production Run" from Shah's former employer, Vertipile. (Exhibit G). It is unclear what product the document is describing and there is no evidence that this "experimental run" was publicly known, as required under 35 U.S.C. § 102.

> Q: Now, Exhibit 57 was an experimental production run, correct?
>
> Mr. O'Brien: Objection.
>
> A: Mm-hmm.
>
> Q: Was that experimental production run part of a research and development effort?
>
> Mr. O'Brien: Objection.
>
> A. To start with, yes.

(Exhibit H at 130).

Mr. Shah also has a memo dated July 11, 1991 to an Italian company called Leathertex. A fabric sample has been attached to the memo. (Exhibit I). The memo does not anticipate either. Although a fabric sample is now attached to an August 11, 1991 letter it is entirely unclear when the sample was actually made. The accompanying letter is nearly indecipherable and hardly constitutes clear and convincing proof of the manufacture of a transfer printed flocked fabric on a textile substrate with dark pigmented adhesive. In addition, the letter suggests that whatever product was made, it was made in Italy, not the United States, and thus would not anticipate under § 102.

### 6. Intermark's Employees

Microfibres also expects that Intermark employees will try to offer oral testimony that they saw, knew about, and practiced the patented invention prior to Microfibres. Again, this oral testimony is uncorroborated and should be excluded.

Bill Lucchesi has already admitted that the necessary corroborating evidence to prove Intermark's invalidity claim is "scanty." (Exhibit J). That was the basis for his desperate letter to the members of the American Flock Association. (Id.). He explained that the evidence he needed to invalidate the '021 Patent was "scanty" (i.e. limited or less than sufficient in degree).

Despite Intermark's bold claims that they have "proof" that the invention claimed by the '021 Patent was being made in the late 1980s, Intermark has been unable to produce a single swatch of it. Like many of Intermark's compatriots in this lawsuit, the "proof" was destroyed by an act of God:

> Q: Does Intermark have any records of sales of Frosty product to Spandauer in 1989 in which Spandauer transfer printed?
>
> A: Again, I believe that most of the records were destroyed due to our -- during the flood and fire that we had.
>
> Q: Sir, isn't it true that Intermark doesn't have any records of sales of Frosty product to Spandauer in 1989?
> . . . .
> A: Again, most of our records were destroyed due to the fire and flood that we had.

(Exhibit K at 23-24). Just as miraculous is the fact that Intermark's sales records in the late 1980s and early 1990s to wet printers (which do not constitute "prior art") still exist but the alleged sales to transfer printers (which might constitute prior art) were destroyed.

It is unclear why the heavens spared the sales records that are of no use to Intermark but destroyed the evidence that would:

> Q: Can you explain why it was that -- why it is that Intermark might have records of sales of Frosty in 1989 to Dicey Mills [a wet printer] but not records of these alleged sales to Culp and Spandauer for transfer printing?
> . . . .
> A: Some records were destroyed and others weren't. That's the best answer I can give.

(Exh. K at 24-25). The most obvious explanation is that there never were any such sales to transfer printers in the late 1980s or early 1990s. That evidence is a figment of Intermark's imagination.

In addition, although Intermark continues to point to its Frosty product as some sort of "prior art" the undisputed fact is that Intermark has no evidence that Frosty was ever transfer printed before July 31, 1991. Because the '021 Patent claims a *transfer printed* flocked fabric made with a dark adhesive and textile substrate. Frosty cannot invalidate the '021 Patent as a matter of law. Frosty is simply a red herring.

## CONCLUSION

The law requires *clear and convincing evidence* to invalidate a patent. That evidentiary burden is not met with uncorroborated oral testimony by competitors and third parties who claim they saw, used, or knew about the invention prior to its conception. Consistent with Federal Circuit precedent the Court should exclude any uncorroborated oral testimony regarding invalidity.

11

        MICROFIBRES, INC.
        By its Attorneys,

        /s/ _____
        Brent R. Canning, Esq. (ct23991)
        William R. Grimm, Esq.
        HINCKLEY, ALLEN & SNYDER LLP
        1500 Fleet Center
        Providence, RI  02903
        (401) 274-2000
        (401) 277-9600 (Fax)


        RESIDENT COUNSEL:
        Jeffrey W. Kennedy, Esq. (ct16419)
        Milano & Wanat
        471 East Main Street
        Branford, Connecticut 06405
        203.315.7000 (TEL)
        203.315.7007 (FAX)

September 14, 2006

## CERTIFICATION

William Cass, Esq.
Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

    I certify that sent a copy of the foregoing Memorandum of Law in Support of Microfibres' Motion in Limine to Exclude Uncorroborated Oral Testimony of Invalidity to Intermark's counsel of record, as above, on September 14, 2006 by electronic filing and regular mail.

                /s/Brent R. Canning