# TAB 8

# Plaintiff's Proposed Jury Instructions

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| |
| --- |

INTERMARK FABRIC CORPORATION, |
      Plaintiff, |

    v. |

MICROFIBRES, INC. |
      Defendant. |

Civil Action No. 3:02 CV 1267 (AVC)

**PLAINTIFF INTERMARK FABRIC'S PROPOSED JURY INSTRUCTIONS**

Plaintiff Intermark Fabric's Proposed Jury Instructions ........................................................ 1
1.  Duty Of Jury ...................................................................................................... 4
2.  The Nature Of The Action And The Parties .................................................... 5
3.  Burden Of Proof................................................................................................ 12
4.  Glossary Of Patent Terms ............................................................................... 13
5.  Glossary Of Technical Terms .......................................................................... 14
6.  What Is Evidence .............................................................................................. 15
7.  What Is Not Evidence ....................................................................................... 16
8.  Evidence For Limited Purpose......................................................................... 17
9.  Direct And Circumstantial Evidence ............................................................... 18
10.  Ruling On Objections ....................................................................................... 19
11.  Credibility Of Witnesses .................................................................................. 20
12.  Conduct Of The Jury........................................................................................ 21
13.  No Transcript Available To Jury ...................................................................... 22
14.  Taking Notes..................................................................................................... 23
15.  Questions To Witnesses By Jurors .................................................................. 24
16.  Outline Of Trial................................................................................................ 25
17.  Duties Of Jury To Find Facts And Follow Law ............................................. 26
18.  Opinion Evidence, Expert Witnesses............................................................... 27
19.  Charts And Summaries Not Received In Evidence ......................................... 28
20.  Charts And Summaries In Evidence ................................................................ 29
21.  Claim Construction For The Case.................................................................... 30
22.  The Prior Art ..................................................................................................... 31
23.  Prior Art – Date Of Invention ......................................................................... 33
24.  Prior Art – Prior Knowledge Or Use By Another In The United States.................. 35
25.  Prior Art – Public Use More Than One Year Before The Application Was Filed ... 36
26.  Prior Art – Prior Public Use Or Knowledge .................................................. 38
27.  Prior Art – On-Sale Or Offered For Sale More Than One Year Before The
Application Was Filed ............................................................................................... 40
28.  Prior Art – Prior Printed Publication .............................................................. 42
29.  Prior Art – Prior Invention............................................................................... 44
30.  Prior Art – Prior Art Patents And Patent Applications.................................. 46
31.  Derivation ......................................................................................................... 47
32.  Inventorship ...................................................................................................... 48
33.  Anticipation/Lack Of Novelty ......................................................................... 49
34.  The Scope And Content Of The Prior Art ...................................................... 51
35.  Differences Between The Invention Of The Claims And The Prior Art ................. 52
36.  Best Mode ......................................................................................................... 53
37.  Level Of Ordinary Skill ................................................................................... 55
38.  Objective Indications Concerning Obviousness ............................................. 56
39.  Inequitable Conduct ......................................................................................... 58
40.  Materiality......................................................................................................... 60
41.  Intent ................................................................................................................. 62
42.  Balancing Of Materiality And Intent .............................................................. 63
43.  Obviousness In General .................................................................................... 64

44.   Scope And Content Of The Prior Art ........................................................ 66
45.   Analogous Art ........................................................................................... 67
46.   Differences Over The Prior Art ................................................................. 68
47.   Level Of Ordinary Skill ............................................................................ 69
48.   Obviousness Decision ............................................................................... 71
49.   Obvious To Try ......................................................................................... 72
50.   Literal Infringement .................................................................................. 73
51.   Infringement Of Dependent Claims .......................................................... 74
52.   Inducing Patent Infringement ................................................................... 76
53.   Contributory Infringement ........................................................................ 77
54.   CUTPA - Introductory Instruction ........................................................... 78
55.   CUTPA - Conduct Of Trade Or Commerce ............................................. 79
56.   CUTPA - Unfair Trade Practice ............................................................... 80
57.   CUTPA - Substantial Injury ...................................................................... 81
58.   CUTPA - Ascertainable Loss .................................................................... 82
59.   Tortious Interference - Introductory Instruction ...................................... 83
60.   Tortious Interference - Existing Contract ................................................. 84
61.   Tortious Interference - Knowledge ........................................................... 85
62.   Tortious Interference - Interference Must Be Tortious ............................. 86
63.   Tortious Interference - Actual Loss .......................................................... 87
64.   Tortious Interference - Punitive Damages ................................................ 88
65.   Fraud Or Intentional Misrepresentation .................................................... 89
66.   Bad Faith Assertion Of Infringement ....................................................... 90
67.   Return Of Verdict ..................................................................................... 91

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:

### 1.     DUTY OF JURY

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

2.     **THE NATURE OF THE ACTION AND THE PARTIES**

This is a patent case.  The patent involved in this case relates to a flocked fabric.

A flocked fabric is created by taking a substrate, such as a woven textile, coating an adhesive

onto the textile substrate, and placing the coated substrate in a flocking chamber.  In the flocking

chamber, small pieces of flock, typically short pieces of nylon strands, are electrostatically

charged, causing them to adhere into the adhesive in an upward orientation.  The result is a

material which has the appearance of velvet.  Flocked fabrics have a wide range of applications

such as clothing and upholstery.

During the trial, the parties will offer testimony to familiarize you with this technology.

The Plaintiff, Intermark Fabrics Corporation ("Intermark"), commenced this action

seeking a declaration of non-infringement and patent invalidity based on its own sale of a

product known as *Frosty* that predates the a patent assigned to the Defendant Microfibres, Inc.,

United States Patent No. 5,981,021, entitled *Transfer Printing Flocked Fabric* (the "'021

Patent").  The '021 Patent generally discloses a flocked fabric having a dark pigmented adhesive

for transfer printing.

Intermark claims that prior to the time its competitor, Microfibers applied for its patent, it

had already invented a flocked fabric with a dark pigmented adhesive capable of being used for

transfer printing.  The product was known as Frosty.  Intermark further claims that Microfibers

supplied the flock for the *Frosty* product and was familiar with the production process and yet

applied for a patent without disclosing the *Frosty* product to the Patent Office.  Intermark claims

the '021 Patent is also invalid based on other publications disclosing the use of dark pigmented

adhesives and sales activities of third parties.  Intermark further claims that James B. McCulloch,

the inventor of the '021 Patent, and others associated with the prosecution of the '021 Patent, were involved in the business relationship concerning the production and supply of the flock for the *Frosty* product and committed inequitable conduct before the patent office, by failing to disclose the *Frosty* product to the patent examiner.  Intermark has ceased operations.  Intermark further claims that during the rejections of the patent that occurred during the seven years of patent prosecution, the patent examiner was specifically focused on the darkness of pigments used in the prior art and that Microfibres should have disclosed its own use of dark pigments that predated the patent as well as certain pressure settings it claimed were novel.

Intermark claims that Microfibers committed violated the Connecticut Unfair Trade Practices Act by interfering with Intermark's business relationships, knowingly asserting a fraudulent patent, and stealing its technology.

Mircofibers claims that the '021 Patent is valid and that Intermark infringed the '021 Patent by inducing others to transfer print on certain *Frosty* products having a dark pigmented adhesive.

A valid United States patent gives its owner the right to exclude others from making, using, offering to sell or selling the patented invention within the United States.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the United States Patent and Trademark Office (sometimes referred to as "the PTO").

I will briefly describe some of the terms for you so that you have some background in patent terminology. The Patent and Trademark Office, the PTO, is in the Washington, D.C. area and is an agency of the Federal Government.  It has more than three-thousand technically educated examiners who examine applications for patents.

6

The application is the initial set of papers filed with the PTO by the applicant. In addition to some other papers such as the inventor's oath, the application includes a specification, which must have a written description of the invention telling what the invention is, how it works and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention. The specification concludes with one or more numbered sentences. These are the claims. The purpose of the claims is to particularly point out what the applicant regards as the invention. When the PTO eventually issues the patent, the claims define the scope of the patent owner's exclusive rights during the life of the patent. It is my job to decide the meaning of the patent claims. Before you decide any questions concerning patent infringement or validity, I will tell you the meaning of the claims of the '021 Patent. After the applicant files the application, a PTO examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner makes a search of the PTO records for prior art to the patent application claims. The patent examiner considers, among other things, whether each claim defines an invention that is new, useful and not obvious in view of this prior art. The prior art is defined by statute and, when the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case. But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.

Following the prior art search and examination of the application, the patent examiner then advises the applicant in writing what the patent examiner has found and whether he has "allowed" any claim. This writing from the patent examiner is called an office action. More

often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to this and sometimes changes the claims or submits new claims. This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the prosecution history. This history of written correspondence is contained in a file in the PTO, and consequently some people call this the prosecution history, the file history or the file wrapper.

The patent system depends on the candor of the inventors and individuals who apply for patents. Under the rules of the patent office, Traditionally, fraud on the Patent Office has involved a misrepresentation, either by an act of commission or omission, made with knowledge of its falsity (or the state of mind tantamount to such knowledge), upon which the Patent Office justifiably relies, and which induces the Office to add to its injury by wrongfully issuing a patent. *See e.g. Norton v. Curtis*, 433 F.2d 779, 167 USPQ 532 (CCPA 1970); *see also Chisum on Patents*, 19.03 (1999).

The duty of candor rests on "the inventor . . . and on every other individual who is substantively involved in the preparation or prosecution of the application . . .. 37 C.F.R. §1.56(a), *see also Facts Industries Inc. v. Structural Preservation Systems Inc.,* 922 F.2d 801, 804, 17 U.S.P.Q.2d 1579 (Fed. Cir. 1990). The duty of candor requires that the applicant disclose information which is material in the examination of the patent.

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, make, use, offer to sell or sell the patented invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who

believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages. The patent owner has the burden to prove infringement of the claims of the patent.

A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid. The accused infringer has the burden to prove invalidity by clear and convincing evidence. In evaluating infringement or invalidity, each claim is to be evaluated independently.

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the '021 Patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the '021 Patent are valid. Intermark bears the burden of proving invalidity by clear and convincing evidence. This is a higher burden than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

**Trial Procedure**

We are about to commence the opening statements in the case. Before we do that, I want to explain to you a little bit about the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We already have been through the first phase, which is to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence in the case.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will actually be offered and admitted into evidence. In the third phase, Intermark goes first in calling witnesses to the witness stand. These witnesses will be questioned

9

by the Intermark counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After Intermark has presented its witnesses, Microfibres will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness' prior deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an open mind as the evidence comes in. Wait until all the evidence comes in before you make any decision. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, then the lawyers again have an opportunity to talk with you in what's called closing argument, which is the fourth phase. Again, what the lawyers say is not evidence. The lawyers' closing arguments to you are for the purpose of helping you in making your decisions.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained a little bit about the law to you. But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts. I will explain to you the rules of law that apply to this case, and I will also explain to you the meaning of the patent claims. You must follow that law and claim meaning whether you agree with it or not. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

Source: American Intellectual Property Law association (AIPLA), Model Jury Instructions,

Preliminary Instructions I-III.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:

### 3.    BURDEN OF PROOF

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. Intermark bears the burden of proving invalidity by clear and convincing evidence. This is a higher burden of proof than a preponderance of evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that convinces you it is highly probable that the claims are invalid. It will be your job, at the end of the trial, to determine whether Intermark has met its burden of proving the invalidity of the '021 claims. Intermark's must prove its claim for violations of the Connecticut Unfair Trade Practices Act by a preponderance of the evidence.

Microfibres has the burden of proving infringement by a preponderance of the evidence. It will be your job, at the end of the trial, to determine whether Microfibres has met its burden of proving infringement of the asserted claims of the '021 Patent.

You should base your decision on all of the evidence, regardless of which party presented it.

*See e.g., Buildex, Inc. v. Kason Idus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (supporting paragraph 2).

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

### 4.    GLOSSARY OF PATENT TERMS

**Application -** The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims -** Claims are the numbered sentences appearing at the end of the patent and define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper -** See prosecution history below.

**Office action -** Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

**Patent Examiners -** Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention.

**Prior art -** Knowledge that is available to the public either prior to the invention by applicant or more than a year prior to the filing date of the application.

**Prosecution history -** The written record of proceedings between the applicant and the PTO. It includes the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file wrapper" of the patent during the course of this trial.

**References -** Any item of prior art used to determine patentability.

**Specification -** The specification is the information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention.

**Ordinary Skill In Art -** The level of experience, education, and/or training that those individuals who work in the area of the invention possess.


Source:  AIPLA Preliminary Instruction Glossary of Patent Terms.

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

## 5.    GLOSSARY OF TECHNICAL TERMS

**Dark -** A color of low or very low lightness having a value of 1 or very close to 1 in the Munsell system.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:

### 6.     WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence; and

(3) any facts to which the lawyers stipulate.

**<u>INTERMARK'S PROPOSED JURY INSTRUCTION NO.:</u>**

**7.   WHAT IS NOT EVIDENCE**

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

(1) statements and arguments of the attorneys;

(2) questions and objections of the attorneys;

(3) testimony that I instruct you to disregard; and

(4) anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 8.    EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 9.      DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 10.    RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 11.    CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness' memory;

(3) the witness' manner while testifying;

(4) the witness' interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness' testimony;

(6) the reasonableness of the witness' testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:

### 12.    CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [bailiff] [clerk] [law clerk] [matron] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide that case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**13.    NO TRANSCRIPT AVAILABLE TO JURY**

At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**14.     TAKING NOTES**

If you wish, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you so that you do not hear other answers by witnesses. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].

Whether or not you take notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

## <u>INTERMARK'S PROPOSED JURY INSTRUCTION NO.:</u>

### 15.     QUESTIONS TO WITNESSES BY JURORS

While it is not customary for a juror to ask a question of a witness, if you wish to do so, put the question in writing and hand it to the [marshal] [bailiff] [clerk] [law clerk].

The court and counsel will review your question. Do not be concerned if the question is not asked.

Do not discuss your question with anyone, including the [marshal] [bailiff] [clerk] [law clerk]. Remember that you are not to discuss the case with other jurors until it is submitted for your decision.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:

### 16.     OUTLINE OF TRIAL

The next phase of the trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**17.    DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW**

Members of the jury, now that you have heard all the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:

### 18.     OPINION EVIDENCE, EXPERT WITNESSES

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

**19.     CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 20.     CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

**21.     CLAIM CONSTRUCTION FOR THE CASE**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.

**Flock/Flocked** - Short pieces of nylon strands that are electrostatically charged, causing them to adhere into an adhesive in an upward orientation.

**Thermoplastic fibers -**  See **flock** above.

**A textile substrate -** A base layer on which the adhesive is applied such as a fabric material.

**Disperse dye -** A  coloring applied to the upper portion of the flock which may be a solid color, a pattern and/or a combination.

**Dark pigmented adhesive -** An adhesive having a color of low or very low lightness having a value of 1 or very close to 1 in the Munsell system.

Source: AIPLA Model Jury Instructions

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

### 22.    THE PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art".

Intermark is relying on various items of prior art. The Parties agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '021 Patent:

1.    Intermark's Cosmos and Frosty Product
2.    Intermark's Flash Product
3.    The Squires Patent - US Patent 4,894,748
4.    "Design with Flock in Mind" and "Flocking" publications
5.    "The Flocking Process" authored by Van Heel
6.    Use of pigmented Adhesives by Microfibres

Intermark is also relying on items that Microfibres does not agree are prior art. Intermark must prove by the highly probable standard that these items are prior art. In order to do so, Intermark must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

1.    Sales and activities of Vertiple, Inc.
2.    Sales and activities of Bunch Fabrics
3.    Sales and activities of Spectro Coating Corporation
4.    Sales and activities of Culp, Inc.
5.    Sales and activities of Leathertex and the Leathertex Sample
6.    Sales and activities of Malden Mills

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed.

Third, anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

Fourth, anything that was made by anyone before the named inventor created the patented product where the product was not abandon, suppress or conceal his or her prior invention.

Fifth, anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
## 23.   PRIOR ART – DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention".

In this case the date of invention is in dispute.

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is July 31, 1992. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by Intermark in this case.

**AUTHORITIES**

*Mycogen Plant Sci., Inc. v. Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh v. Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Genetech Inc. v. Chiron Corp.,* 220 F.3d 1345, 1351 (Fed. Cir. 2000); *Bruning v. Hirose,* 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Cooper v. Goldfarb,* 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt v. Boone,* 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc. v. L'Oreal, S.A.,* 129 F.3d 588, 592-93 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Burroughs Wellcome Co. v. Barr Labs.,* 40 F.3d 1223, 1228 (Fed. Cir. 1994); *Griffith v. Kanamaru,* 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey v. Kollonitsch,* 806 F.2d 1024, 1026 (Fed. Cir. 1986); *Morgan v. Hirsch,* 728 F.2d 1449, 1452 (Fed. Cir. 1984).

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

**24.    PRIOR ART – PRIOR KNOWLEDGE OR USE BY ANOTHER IN THE UNITED STATES**

Knowledge or use in the United States of a patented invention can be prior art to the patent claims.  The knowledge or use will be prior art if it meets the following requirements:

First, the knowledge or use must be by someone other than the inventor.

Second, the knowledge or use must be before the inventor's date of invention.

Third, the knowledge or use must be in the United States.  Prior knowledge or use outside the United States cannot be relied upon to invalidate a patent claim.

Fourth, the knowledge or use must have been public.  Private or secret knowledge or use by someone other than the inventor is not prior art.

In this case, Intermark relies on certain sales and related activities of not only Intermark itself but also Microfibres; Vertiple, Inc.; Bunch Fabrics; Spectro Coating Corporation; Culp; Inc.; Leathertex and Malden Mills as well as prior publications including the Squires Patent (US Patent 4,894,748), the publications from the American Flock Association entitled "Design with Flock in Mind" and "Flocking", and the publication entitled "The Flocking Process" authored by Van Heel.

**AUTHORITIES**

*Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 544 (Fed. Cir. 1996).

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

**25.     PRIOR ART – PUBLIC USE MORE THAN ONE YEAR BEFORE THE
APPLICATION WAS FILED**

The use of a product or process of a patent claim more than one year before the filing

date of the application for the patent may be prior art to the patent claim.

First, the use must occur more than one year before the patent application was filed.  In

this case, that date is July 31, 1991.  The date of invention for the patent claims is irrelevant to

this category of prior art.  If the public use is more than one year before the patent application

was filed, then that public use may be prior art, regardless of the date of invention.

Second, the use may be by anyone, including the inventor or patent owner.

Third, if the use was by someone other than the inventor, the use must have been public

in order to be prior art.

Fourth, a use more than one year before the application filing date by the inventor or the

patent owner will be prior art if it was for commercial purposes, even if done in secret.

In this case, Intermark relies on certain sales and related activities of not only Intermark

itself but also Microfibres; Vertiple, Inc.; Bunch Fabrics; Spectro Coating Corporation; Culp;

Inc.; Leathertex and Malden Mills as well as prior publications including the Squires Patent (US

Patent 4,894,748), the publications from the American Flock Association entitled "Design with

Flock in Mind" and "Flocking", and the publication entitled "The Flocking Process" authored by

Van Heel.


**AUTHORITIES**:

*Mitsubishi Elec. Corp. v. Ampex Corp.* 190 F.3d 1300, 1303-05 (Fed. Cir. 1999); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Evans Cooling Sys. Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1452-54 (Fed. Cir. 1997); *Lough v. Brunswick Corp.*, 86

F.3d 1113, 1119 (Fed. Cir. 1996), *reh'g en banc denied*, 103 F.3d 1517 (Fed. Cir. 1997); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1058-60 (Fed. Cir. 1996).