**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**26.    PRIOR ART – PRIOR PUBLIC USE OR KNOWLEDGE**

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances. The first is where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent. The second is where the invention was publicly used by the inventor, the patent owner, or anyone else more than one year before the application for the patent was filed.

In both circumstances, the public use must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant. A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

A prior use more than one year before the application filing date by the inventor or the patent owner will be prior art it it was for commercial purposes, even if it was done in secret.

In this case, Intermark relies on certain sales and related activities of not only Intermark itself but also Microfibres; Vertiple, Inc.; Bunch Fabrics; Spectro Coating Corporation; Culp; Inc.; Leathertex and Malden Mills as well as prior publications including the Squires Patent (US

Patent 4,894,748), the publications from the American Flock Association entitled "Design with Flock in Mind" and "Flocking", and the publication entitled "The Flocking Process" authored by Van Heel.

## AUTHORITIES

*Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997).

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**27.    PRIOR ART – ON-SALE OR OFFERED FOR SALE MORE THAN ONE YEAR BEFORE THE APPLICATION WAS FILED**

The sale or offer for sale in the United States of a product may be prior art to a patent claim covering the product or a method of making the product if the product was sold or offered for sale more than one year before the application for the patent was filed.  In this case, that date is July 31, 1991.  The date of invention for the patent claims is irrelevant to this category of prior art.  If the sale or offer for sale of a product is more than one year before the patent application was filed, then the product or method of making it may be prior art, regardless of the date of invention

If the sale or offer for sale was of a patented product, then it may be prior art regardless of who made the offer.

If the sale or offer for sale was of a product made by a patented process, and if the sale or offer for sale is by the inventor, the patent owner, or a representative of the inventor or patent owner, then the process may be prior art to the patent claims, even if it was done in secret.  This is because the law considers it unfair for a patent owner to get a commercial benefit from the invention while waiting more than one year before filing a patent application.

If the sale or offer for sale of a product made by a patented process was by someone other than the inventor, the patent owner, or a representative of the inventor or patent owner, then the sale or offer for sale of the product may make the process prior art only if the process was public. Secret use of a process by another person is not prior art, even if the product made by the process is sold.

In order for there to be an offer for sale, two requirements must be met. First, the product must have been the subject of a commercial offer for sale. Second, the product must be "ready for patenting".

Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.

An invention is ready for patenting if the product offered for sale has been developed to the point where there was reason to expect that it would work for its intended purpose. The product may be ready for patenting even if it is not ready for commercial production, or has not been technically perfected.

In this case, Intermark relies on certain sales and related activities of not only Intermark itself but also Microfibres; Vertiple, Inc.; Bunch Fabrics; Spectro Coating Corporation; Culp; Inc.; Leathertex and Malden Mills as well as prior publications including the Squires Patent (US Patent 4,894,748), the publications from the American Flock Association entitled "Design with Flock in Mind" and "Flocking", and the publication entitled "The Flocking Process" authored by Van Heel.

**AUTHORITIES**:

*Pfaff v. Wells Elecs. Inc.,* 525 U.S. 55 (1998*); Space Systems/Loral, Inc. v. Lockheed Martin Corp.,* 271 F.3d 1076, 1080 (Fed. Cir. 2001); *Scaltech, Inc. v. Retech/Tetra, LLC,* 269 F.3d 1321 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041, 1046-47 (Fed. Cir. 2001); *Robotic Vision Sys., Inc. v. View Eng'g, Inc.* 249 F.3d 1307 (Fed. Cir. 2001); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257-61 (Fed. Cir. 2001); *Vammoor v. Wal-Mart Stores, Inc.,* 201 F.3d 1363, 1366 (Fed. Cir. 2000); *STX, LLC v. Brine, Inc.,* 211 F.3d 588, 590 (Fed. Cir. 2000); *Zacharin v. United States,* 213 F.3d 1366, 1370 (Fed. Cir. 2000); *Brasseler, U.S.A.I., L.P. v. Stryker Sales Corp.,* 182 F.3d 888, 889 (Fed. Cir. 1999); *Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.* 141 F.3d 1073, 1077 (Fed. Cir. 1998); *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1147 (Fed. Cir. 1983); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1548-50 (Fed. Cir. 1983).

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**
**28.     PRIOR ART – PRIOR PRINTED PUBLICATION**

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public.  Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims.  The date of invention is irrelevant to this category of prior art.

In this case, Intermark relies on certain sales and related activities of not only Intermark itself but also Microfibres; Vertiple, Inc.; Bunch Fabrics; Spectro Coating Corporation; Culp; Inc.; Leathertex and Malden Mills as well as prior publications including the Squires Patent (US Patent 4,894,748), the publications from the American Flock Association entitled "Design with Flock in Mind" and "Flocking", and the publication entitled "The Flocking Process" authored by Van Heel.

**AUTHORITIES**:

*Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1576 (Fed. Cir. 1996); *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *In re Cronyn,* 890 F.2d 1158, 1159-61 (Fed. Cir.

1989); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *Mass. Inst. Of Tech. V. AB Fortia*, 774 F.2d 1104, 1108-09 (Fed. Cir. 1985); *In re Wyer*, 655 F.2d 221, 225 (C.C.P.A. 1981).

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 29.    PRIOR ART – PRIOR INVENTION

An invention made by another person before the inventor on the patent made the invention is prior art to the patent claim, unless that other person abandoned, suppressed or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduces to practices an invention before the inventor on the patent, then the reduction to practice by the other person will be prior to the patent claims.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

In this case, Intermark contends that Intermark's Frosty product was a prior invention to the '021 patent claims. Intermark also contends that the prior products sold by Vertiple, Inc.; Bunch Fabrics; Spectro Coating Corporation; Culp; Inc.; Leathertex and Malden Mills also a constitute the prior invention to the '021 patent claims.

### AUTHORITIES

*Down Chem. Co. v. Astro-Valcour, Inc.,* 267 F.3d 1334, 1341-43 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.,* 254 F.3d 1031 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh v. Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Bruning v. Hirose,* 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Cooper v. Goldfarb,* 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt v. Boone,* 146F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc. v. L'Oreal,* S.A., 129 F.3d 588, 593 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Checkpoint Sys. v. United States Int'l Trade Comm'n,* 54 F.3d

756, 761-63 (Fed. Cir. 1995); *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115-16 (Fed. Cir. 1994); *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey v. Kollonitsch*, 806 F.2d 1024, 1026 (Fed. Cir. 1986); *Dunlop Holdings Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 34 (7th Cir. 1975); *Palmer v. Dudzik*, 481 F.2d 1377, 1385-87 (C.C.P.A. 1973); *Gould v. Schawlow*, 363 F.2d 908 (C.C.P.A. 1966).

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

**30.    PRIOR ART – PRIOR ART PATENTS AND PATENT APPLICATIONS**

As issued patent may be prior art to a patent claim under a number of different circumstances.  First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued either before the inventor made the claimed invention, or more than one year before the application for the patent was filed.

If a patent issued anywhere in the world more than one year before the application for the patent was filed, then that publication may be prior art, regardless of the date of invention of the claimed invention.  The date of invention is irrelevant to this category of prior art.

A U.S. patent or published U.S. patent application may be prior art to a patent claim, even if the patent issued or the patent application was published after the date of invention of a claimed invention.  This occurs when another person before the inventor made the claimed invention filed the patent application for the U.S. patent.

**AUTHORITIES**
35 U.S.C. § 102(a), (b), and (e) (1984 & Supp. 2001); *Lamb-Weston, Inc. v. McCain Foods*, *Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu*, 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991).

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 31.     DERIVATION

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else. An invention is said to be "derived" from another person if that other person conceived of the patented invention and communicated that conception to the inventor named on the patent. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort. Derivation may be of the invention itself or of an obvious variation of the invention.

If an inventor derived the patented invention from someone else, then the patent claims covering the invention are invalid.

In this case, Intermark contends that the '021 patent is invalid because the inventor on the '021 patent derived the invention from the Frosty product manufactured and sold by Intermark. If you find that Intermark has proved that it is highly probable that the inventor on the '021 Patent derived the invention from Intermark, then you must find that the claims are invalid.

## AUTHORITIES

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 544 (Fed. Cir. 1996); *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 32.    INVENTORSHIP

Intermark can meet its burden of proving that a patent is invalid by showing that it fails to meet the requirement to name all actual inventors and only the actual inventors. This is known as the "inventorship" requirement. To be an inventor, one must make a significant contribution to the conception of one or more claims of the patent. Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent. However, merely helping with experimentation by carrying out the inventor's instructions or explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.

## AUTHORITIES

35 U.S.C. § 102(f) and 35 U.S.C. § 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed.Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in Section 256, a district court must order correction of the patent, thus saving it from beingrendered invalid." Id. at 1350.); *Hess v. Advanced Cardiovascular Sys.*, 106 F.3d 976, 980 (Fed.Cir. 1997); *Burroughs Wellcome Co. v. Barr Lab.,* 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**
**33.    ANTICIPATION/LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If an invention is not new, we say that it was "anticipated" by the prior art.  An invention that is "anticipated" by the prior art is not entitled to patent protection.  A party challenging the validity of a patent must prove anticipation by the highly probable standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realized or she had done so.

**AUTHORITIES**

*Ecolochem, Inc. v. S. Cal. Edison Co.,* 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms., Inc.* 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1548 (Fed. Cir. 1983).

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**34.    THE SCOPE AND CONTENT OF THE PRIOR ART**


Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Intermark. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.


**AUTHORITIES**

*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991).

<u>**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**</u>

**35.    DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

**AUTHORITIES**

*Graham v. John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.,* 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab,* 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1349 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,* 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Nyko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 717 (Fed. Cir. 1991).

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 36. BEST MODE

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure on how to practice the invention claimed in the patent. The inventor must disclose the best mode he or she knew at the time for carrying out the invention as described in the claims. If an inventor knows of a best way or mode of making and using the claimed invention at the time the patent application was filed, then the written description must contain a description of that mode.

Intermark has asserted that Microfibers' patent is invalid for failure to satisfy the best mode requirement. Intermark bears the burden of establishing failure to satisfy the best mode requirement by clear and convincing evidence. .

To determine whether the inventor complied with the best mode requirements, two questions must be answered:

1. At the time the patent application was filed, did Microfibers have a best mode for practicing his or her invention?

2. If so, did Microfibers adequately disclose the best mode in the '021 patent?

The first prong of the best mode inquiry focuses on the state of mind of the particular inventor and the knowledge he possessed at the time the application was filed. The first question is subjective.

For instance, a selection made for commercial expediency (such as the availability of certain materials, prior relationships with certain suppliers, and other routine manufacturing choices) may be the "best" decision in a manufacturing circumstance but may have been chosen by someone other than the inventor or may not be considered by the inventor to be the best mode

53

of carrying out the invention.  If the inventor contemplated a best mode before he filed the patent application and left it out of the application, an amendment after the filing will not cure an original omission of the best mode disclosure.

If the answer to the first question is "yes," the second question of the anaylsis should be addressed.  The second question, an objective inquiry, focuses on the scope of the patented invention and the level of skill in the field of the invention.  The disclosure in the specification must be adequate to allow one of ordinary skill in the art to make and use the best mode of the invention.  Those skilled in the field of the invention should not have to look to the commercial embodiment in order to practice the best mode.

35 U.S.C. § 112, ¶1; *Mentor H/S Inc., v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001);  *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306 (Fed. Cir. 2002); *Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1535 (Fed. Cir. 1987); Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1209-10 (Fed. Cir. 1991); In re Gay,* 309 F.2d 769, 772 (CCPA 1962); *Applied Materials, Inc. v. Advanced Semiconductor Am. Materials, Inc.,* 98 F.3d 1563, 1581 (Fed. Cir. 1996); *Eli Lilly and Co. v. Barr Labs., Inc.,* 251 F.3d 955, 963 (Fed. Cir. 2001); *U.S. Gypsum Co. v. National Gypsum Co.,* 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Chemcast Corp. v. Arco Indus. Corp.,* 913 F.2d 923, 928 (Fed. Cir. 1990); *N. Telecom Ltd. v. Samsung Elec. Co.,* 215 F.3d 1281,1286 (Fed. Cir. 2000); *DeGeorge v. Bernier,* 768 F.2d 1318, 1324 (Fed.Cir. 1985); *Shearing v. Iolab Corp.,* 975 F.2d 1541 (Fed. Cir. 1992); *Wahl Instruments, Inc. v. Acvious, Inc.,* 950 F.2d 1575, 1581 (Fed. Cir. 1991); *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 558 (Fed. Cir. 1994).

Source: AIPLA Model Jury Instructions

**INTERMARK'S PROPOSED JURY INSTRUCTION NO.:**

**37.    LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers int eh art and the solutions found to those problems, and the sophistication of the technology in the field.

**AUTHORITIES**

*Graham v. John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak,* 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance,* 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 718-19 (Fed. Cir. 1991).

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
## 38. OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS

You also must consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1. Commercial success of products covered by the patent claims or made by a process covered by the patent claims.
2. A long-felt need for the invention.
3. Failed attempts by others to make the invention.
4. Copying of the invention by others in the field.
5. Unexpected results achieved by the invention.
6. Praise of the invention by the infringer or others in the field.
7. The taking of licenses under the patent by others.
8. Expressions of surprise by experts and those skilled in the art at the making of the invention.
9. The patentee proceeded contrary to the accepted wisdom of the prior art.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

**AUTHORITIES**

*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance,* 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 39. INEQUITABLE CONDUCT

After a patent application is filed, it is assigned to an Examiner, who examines the application and attempts to determine whether or not the application and the claims meet all of the requirements of the patent laws.

In conducting this examination, the Examiner must consider the description of the invention in the application, which may involve highly technical subject matter, and search for and consider the prior art. The Examiner has only a limited amount of time and resources available and, therefore, must rely on information provided by the applicant with respect to the technical field of the invention and the prior art.

Because the Patent and Trademark Office must rely on the patent applicant for information, applicants for patents have a duty of honesty and good faith in their dealings with the Patent and Trademark Office. Persons who have this duty include the inventor named on the patent application, person who represent the inventor before the Patent and Trademark Office, and other persons involved in a substantial way with the application.

This duty of honesty and good faith exists from the time the application is filed and continues for the entire time that an application is pending before the Patent and Trademark Office. It requires that the applicant, the applicant's representatives, and others involved in a substantial way with the application fully disclose to the Patent and Trademark Office all information of which they are aware that is material to examination of the application, including all material prior art. I will explain to you in a moment how you may determine whether or not information is material.

Intentional failure to fulfill this duty of honesty and good faith is called inequitable conduct. When inequitable conduct occurs during the course of obtaining a patent, the patent is unenforceable. This means that the patent owner may not prevent others from using the

invention covered by the claims of the patent and may not collect damages for patent infringement.

Intermark has the burden of proving inequitable conduct by the highly probable standard. Intermark must prove that the inventor, the inventor's representative, or someone involved in a substantial way with the application withheld or misrepresented information that was material to the examination of the '021 Patent Application, and that this person or persons acted with an intent to deceive or mislead the Patent Examiner.

I will now explain to you the requirements of materiality and intent. I will then explain how you should balance any materiality and intent that you find in order for you to determine whether or not there was inequitable conduct.

**AUTHORITIES**

37 C.F.R. § 1.56(2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed..Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-57 (Fed. Cir. 1997); *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 938-39 (Fed. Cir. 1990); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc); *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576-77 (Fed. Cir. 1985).

Source: Federal Circuit Bar Association Model Jury Instructions.

## INTERMARK'S PROPOSED JURY INSTRUCTION NO.:
### 40. MATERIALITY

In considering the issue of materiality, you must first determine whether or not information was withheld from or misrepresented to the Patent and Trademark Office. If you find that the inventor, the inventor's representative, or others involved in a substantial way with the application withheld or misrepresented information when apply for the '021 Patent, you must then determine whether or not that information was material.

Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application more likely than not does not meet one of the requirements for a patent, such as the requirements that a patented invention be new, useful and non-obvious. Information is also material if it refutes or is consistent with information provided or arguments made to persuade the Examiner that the invention is entitled to patent protection. Information that is cumulative of, that is, that adds little to, other information the Examiner already had, is not material.[1]

You must next consider whether or not there was an intent to mislead or deceive the Patent and Trademark Office.

**AUTHORITIES**

37 C.F.R. § 1.56 (2000); *Li Second Family Ltd. P'ship v. Toshiba Corp.,* 231 F.3d 1373, 1379-80 (Fed. Cir. 2000); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321-22 (Fed. Cir. 2000); *Life Tech. Inc. v. Clontech Labs., Inc.,* 224 F.3d 1320, 1324-26 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.,* 208 F.3d 989 (Fed. Cir. 2000); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.,* 204 F.3d 1368, 1374 (Fed. Cir. 2000); *Elk Corp. of*

---

[1] **NOTE:** The standard articulated in the Patent Office rules for determining materiality (37 C.F.R. § 1.56) changed in January 1992. The new standard is set forth in the above paragraph. The Federal Circuit has applied the pre-1992 standard to cases in which the application for the patent-in-suit was prosecuted before the rule change. *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. Baxter Healthcare Corp.,* 149 F.3d 1321 (Fed. Cir. 1998). Although the Court has applied the new standard in cases involving patents prosecuted after the rule change, *Union Oil Co. of Cal. v. Atl. Richfield Co.,* 208 F.3d 989 (Fed. Cir. 2000), we are aware of no case in which a litigant has contested application of the new standard in those circumstances.

*Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 31 (Fed. Cir. 1999); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257-59 (Fed. Cir. 1997); *Litton Sys., Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1570-71 (Fed. Cir. 1996); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178-79 (Fed. Cir. 1995).

Source: Federal Circuit Bar Association Model Jury Instructions.