**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 22**

## 10.4 STATUTORY BARS

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid here, all of its requirements must have been present in one prior art reference more than a year before the patent application was filed. Here is a list of ways Intermark could show that the patent application was not timely filed:

1.  If the claimed invention was already patented or described in a printed publication anywhere in the world before July 31, 1991. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.

2.  If the claimed invention was already being openly used in the United States before July 31, 1991 and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose.

3.  If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before July 31, 1991. The claimed invention is not being sold or offered for sale if Microfibres shows that the sale or offer for sale was primarily experimental.

For a claim to be not new because of a prior art reference dated at least one year earlier than the effective filing date of the patent application, all of the claimed requirements must have been specifically disclosed in the reference, or would have to have been known to a person of ordinary skill in the field to have been necessarily present in the reference. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of flocked fabric looking at the reference to make and use the claimed invention. Intermark has the burden of proving a statutory bar by clear and convincing evidence.

**AUTHORITIES:** Model Patent Jury Instructions for the Northern District of California, Instruction 4.3a2; 35 U.S.C. § 102(b) and (d); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Pfaff v. Wells Elec. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 23**

### 10.5 CORROBORATION

I have just explained to you what Intermark must prove in order to invalidate the '021 Patent on the ground that it was not new and on the ground that one of the statutory bars applies. Intermark must prove invalidity on either ground by clear and convincing evidence. When you consider whether Intermark's evidence meets that burden or proof you should consider that oral testimony from witnesses who claim that the '021 Patent is not new is regarded with skepticism by law. Oral testimony is regarded with skepticism because an accused infringer, like Intermark, and Microfibres' business competitors may be tempted to falsely remember events. Even honest witnesses may falsely convince themselves over the course of many years that a patented invention was not new. Therefore, the law requires that claims of invalidity must be sufficiently corroborated. Here is a list of factors you must consider when you evaluate the oral testimony offered by Intermark's witnesses:

(1)  the relationship between the corroborating witness and the alleged prior user,
(2)  the time period between the event and trial,
(3)  the interest of the corroborating witness in the subject matter in suit,
(4)  contradiction or impeachment of the witness' testimony,
(5)  the extent and details of the corroborating testimony,
(6)  the witness' familiarity with the subject matter of the patented invention and the prior use,
(7)  probability that a prior use could occur considering the state of the art at the time,
(8)  impact of the invention on the industry, and the commercial value of its practice;
(9)  the existence or absence of tangible materials (documents, photographse, product samples, etc) to support the oral testimony.

**AUTHORITIES:** *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed.Cir.1998); *Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 743 (Fed. Cir. 2002); *Price v. Symsek,* 988 F.2d 1187, 1194, (Fed.Cir.1993); *Barbed Wire Patent Case,* 143 U.S. 275, 284 (1892).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 24**

### 10.6  OBVIOUSNESS

A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of July 31, 1992. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of flocked fabric who knew about all this prior art would have come up with the claimed invention. The claimed invention is not obvious unless there was something in the prior art or within the understanding of a person of ordinary skill in the field that would suggest the claimed invention. You must be careful not to determine obviousness using the benefit of hindsight. You should put yourself in the position of a person of ordinary skill in the field at the time the invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

Your conclusion about the question whether a claim is obvious must be based on several factual decisions that you must make. First, you must decide the scope and content of the prior art. Second, you must decide what difference, if any, exists between the claim and the prior art. Third, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Finally, you must consider any evidence that has been presented with respect to the following:

(1)    commercial success due to the merits of the claimed invention;

(2)    a long felt need for the solution provided by the claimed invention;

(3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)    copying of the claimed invention by others;

(5)    unexpected superior results from the claimed invention;

(6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

(7)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

The presence of any of the first six considerations may be an indication that a claimed invention would not have been obvious at the time this invention was made, and the presence of the seventh consideration may be an indication that the claimed invention would have been obvious at such time. Although you must consider any evidence of these considerations, the importance of any of them to your decision on whether the claimed invention would have been obvious is up to you. Intermark has the burden of proving obviousness by clear and convincing evidence.

**AUTHORITIES:** Model Patent Jury Instructions for the Northern District of California, Instruction 4.3b; 35 U.S.C. § 103; *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002); *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.3d 931, 934 (Fed. Cir. 1990); *Heidelberger Druckmaschinen v. Hantscho Commercial*, 21 F.3d 1068, 1072 (Fed. Cir. 1994); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Ruiz v. A.B. Chance Co.*, 234vF.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed.Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988).

MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 25

### 10.6.1 DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be directed to follow the path taken by the inventor or would the prior art teach a different path or product?

**AUTHORITIES:** *Graham* v. *John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d *654, 664-65* (Fed. Cir. 2000); *Yamanouchi Pharm. Co.* v. *Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc.* v. *S. Cal. Edison Co.,* 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab,* 217 F.3d *1365,* 1369 (Fed. Cir. 2000); *Winner Int'l Royalty Corp.* v. *Wang,* 202 F.3d 1340, 1349 (Fed. Cir. 2000); *In re Dembiczak, 175* F.3d 994, 998-1000 (Fed. Cir. 1999); *Monarch Knitting Mach. Corp.* v. *Sulzer Morat GmbH,* 139 F.3d 877, 88 1-83 (Fed. Cir. 1998); *Nyko Mfg. Co.* v. *Nu-Star, Inc., 950* F.2d 714, 717 (Fed. Cir. 1991).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 26**

### 10.6.2 LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**AUTHORITIES:** *Graham* v. *John Deere Co.,* 383 U.S. 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d *654, 666-67* (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.,* 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.,* 225 F.3d 1349, *1356-57* (Fed. Cir. 2000); *In re Dembiczak, 175* F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp.* v. *VSI Int'l, Inc.,* 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance,* 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co.* v. *Nu-Star, Inc., 950* F.2d 714, 718-19 (Fed. Cir. 1991).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 27**

### 10.6.3 TEACHING AWAY OF PRIOR ART

If the patentee proceeds contrary to accepted wisdom of the prior art, this is strong

evidence of non-obviousness.

**AUTHORITIES:** ABA's Section of Patent, Trademark and Copyright Law (1987);
*W.L. Gore & Associates, Inc. v. Garlock, Inc.* 721 F.2d 1540 (Fed. Cir. 1983) *cert. denied*
469 U.S. 851 (1984).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 28**

### 10.6.4 OBVIOUS TO TRY

In deciding whether the prior art suggests the combination recited in the claims of the '021 Patent, you are instructed that if the prior art merely discloses numerous possible combinations but gives no direction as to which of those of many choices is likely to be successful, this does not constitute a suggestion of the claimed combination. Similarly, if the prior art merely discloses that it would be obvious to explore a new technology or general approach that seemed to be a promising field of experimentation, this would not constitute a suggestion of the claimed combination.

On the other hand, for the prior art to "suggest" the claimed invention, it is not necessary that one of ordinary skill in the flocked fabric art, looking at the prior art, could predict with certainty that the claimed invention would be successful. Rather, it is sufficient that a person of ordinary skill in the flocked fabric art, looking at the prior art, would have a reasonable expectation that the claimed invention would achieve the desired result.

**AUTHORITIES:** *Mandel Bros., Inc. v. Wallace,* 335 U.S. 291, 295, 79 USPQ 220, 221 (1948); *In re Kulling,* 897 F.2d 1147, 1149, 14 USPQ2d 1056, 1057-58 (Fed. Cir. 1990); *Merck & Co. v. Biocraft Lab., Inc.,* 874 F.2d 804, 807, 809, 10 USPQ2d 1843, 1846, 1847-48 (Fed. Cir.), *cert. denied,* 493 U.S. 975 (1989); *In re O'Farrell,* 853 F.2d 894, 903-04, 7 USPQ2d 1673, 1681 (Fed. Cir. 1988); *Novo Industri A/S v. Travenol Lab., Inc.,* 677 F.2d 1202, 215 USPQ 412 (7th Cir. 1982); *In re Yates,* 663 F.2d 1054, 211 USPQ 1149 (C.C.P.A. 1981); *In re Clinton,* 527 F.2d 1226, 1228, 188 USPQ 365, 366-67 (C.C.P.A. 1976); and *Carter-Wallace, Inc. v. Otte,* 474 F.2d 529, 543, 176 USPQ 2, 11-12 (2d Cir. 1972), *cert. denied,* 412 U.S. 929 (1973)

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 29**

### 10.7 BEST MODE

The patent laws require that if the inventor knew of a best way, or "mode," of making and using the claimed invention at the time the application for the patent was filed, then the patent specification must contain a description of that mode. This is called the "best mode" requirement. The purpose of the best mode requirement is to ensure that the public obtains a full disclosure of how to carry out the invention claimed in the patent.

The extent of information that an inventor must disclose depends on the scope of the claimed invention. Accordingly, an inventor need not disclose a mode for obtaining unclaimed subject matter unless that subject matter is novel and essential to carrying out the invention. The best mode requirement also does not extend to production details that relate to commercial and manufacturing considerations such as equipment on hand, volume, and costs.

To determine whether an inventor disclosed of making the claimed invention involves answering two questions. The first question is: At the time the application was filed, did the inventor know of a better way, or mode, of making the claimed invention and intentionally conceal it? This is a subjective question. To answer this question you must consider what the inventor thought or believed.

If you find that the answer to the first question is no -- that is, the inventor did not intentionally conceal a better way of making or using his or her invention than he disclosed in his patent application -- you should stop there.

The second question is: Does the patent contain a description of the inventor's best mode that is sufficient to enable a person skilled in the art to carry out the best mode? This question is objective. It depends, not on what the inventor thought or understood, but rather on what a person skilled in the field of the invention reading the patent would understand. If a person skilled in the art would understand how to carry out the invention without substantial and undue experimentation, there is no best mode violation. Let me give you an example, if you invented an internal combustion engine, the best mode requirement would require you to divulge the fuel on which it would run best, but it would not require you to disclose the formula for the fuel. The best mode requirement would be met if you disclosed in your patent that the invention ran smoothly on Exxon gas or equal.

Intermark has the burden of proving a violation of the best mode requirement by clear and convincing evidence.

**AUTHORITIES:** *Bayer AG v. Schein Pharmaceuticals, Inc.*, 301 F.3d 1306, 1316 (Fed. Cir. 2002); *High Concrete Structures v. New Enterprise Stone*, 71 USPQ2d 1948 (Fed. Cir. 2004); *MentorH/S, Inc.* v. *Med. DeviceAlliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Eli Lilly & Co.* v. *BarrLabs., Inc.*, 222 F.3d 973, 980-84 (Fed. Cir. 2000); *N. Telecom Ltd.* v. *Samsung Elecs. Co.*, 215 F.3d 1281, 1285-89 (Fed. Cir. 2000); *United States Gypsum Co.* v. *Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Glaxo Inc.* v. *Novopharm Ltd.*, 52 F.3d 1043, *1049-52* (Fed. Cir. 1995); *Amgen, Inc. v. Chugai Pharmaceuticals, Co. Ltd.*, *927 F.2d 1200, 1209 n.5* (Fed. Cir. 1991).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 30**

### 11. INEQUITABLE CONDUCT

After a patent application is filed, it is assigned to an Examiner, who examines the application and attempts to determine whether or not the application and the claims meet all of the requirements of the patent laws.

In conducting this examination, the Examiner must consider the description of the invention in the application, which may involve highly technical subject matter, and search for and consider the prior art. The Examiner has only a limited amount of time and resources available and, therefore, must rely on information provided by the applicant with respect to the technical field of the invention and the prior art.

Because the Patent and Trademark Office must rely on the patent applicant for information, applicants for patents have a duty of honesty and good faith in their dealings with the Patent and Trademark Office. Persons who have this duty include the inventor named on the patent application, persons who represent the inventor before the Patent and Trademark Office, and other persons involved in a substantial way with the application. This duty of honesty and good faith exists from the time the application is filed and continues for the entire time that an application is pending before the Patent and Trademark Office. It requires that the applicant, the applicant's representatives, and others involved in a substantial way with the application fully disclose to the Patent and Trademark Office all information of which they are aware that is material to examination of the application, including all material prior art. I will explain to you in a moment how you may determine whether or not information is material.

Intentional failure to fulfill this duty of honesty and good faith is called inequitable conduct. When inequitable conduct occurs during the course of obtaining a

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 31**

patent, the patent is unenforceable. This means that the patent owner may not prevent

others from using the invention covered by the claims of the patent and may not collect

damages for patent infringement.

Intermark has the burden of proving inequitable conduct by clear and convincing

evidence. Intermark must prove that the inventor, the inventor's representative, or

someone involved in a substantial way with the application withheld or misrepresented

information that was material to the examination of the patent application, and that this

person or persons acted with an intent to deceive or mislead the Patent Examiner.

I will now explain to you the requirements of materiality and intent. I will then explain

how you should balance any materiality and intent that you find in order for you to

determine whether or not there was inequitable conduct.


**AUTHORITIES:** 37 C.F.R. § 1.56; *PerSeptive Biosystems, Inc.* v. *Pharmacia Biotech, Inc.*, 225 F.3d *1315,* 1318 (Fed. Cir. 2000); *Critikon, Inc.* v. *Becton Dickinson VascularAccess, Inc.*, 120 F.3d *1253, 1256-57* (Fed. Cir. 1997); *N. Telecom, Inc.* v. *Datapoint Corp.,* 908 F.2d 931, 938-39 (Fed. Cir. 1990); *Kingsdown Med. Consultants, Ltd.* v. *Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) *(en banc); KangaROOS U.S.A., Inc.* v. *Caldor, Inc.,* 778 F.2d *1571, 1576-77* (Fed. Cir. 1985).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 32**

## 11.1 MATERIALITY

In considering the issue of materiality, you must first determine whether or not information was withheld from or misrepresented to the Patent and Trademark Office. If you find that the inventor, the inventor's representative, or others involved in a substantial way with the application withheld or misrepresented information when applying for the patent, you must then determine whether or not that information was material.

Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application more likely than not does not meet one of the requirements for a patent, such as the requirements that a patented invention be new, useful and non-obvious. Information is also material if it refutes or is inconsistent with information provided or arguments made to persuade the Examiner that the invention is entitled to patent protection. Information that is cumulative of, that is, that adds little to, other information the Examiner already had, is not material.

Information is material if there is a substantial likelihood that a reasonable Patent Examiner would consider it important in deciding whether or not to allow the application to issue as a patent.

You must next consider whether or not there was an intent to mislead or deceive the Patent and Trademark Office.

**AUTHORITIES:** 37 C.F.R. § 1.56; *Li Second Family Ltd. P'ship* v. *Toshiba Corp.*, 231 F.3d 1373, 1379-80 (Fed. Cir. 2000); *PerSeptiveBiosystems, Inc.* v. *Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321-22 (Fed. Cir. 2000); *Life Tech., Inc.* v. *Clontech Labs., Inc.*, 224 F.3d 1320, 1324-26 (Fed. Cir. 2000); *Union Oil Co. of Cal.* v. *Atl. Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000); *Semiconductor Energy Lab. Co.* v. *Samsung Elecs. Co.*, 204 F.3d 1368, 1374 (Fed. Cir. 2000).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 33**

## 11.2  INTENT

Evidence relevant to the question of intent to deceive or mislead the Patent and

Trademark Office includes any direct evidence of intent, as well as evidence from which

intent may be inferred. The patent law recognizes that direct evidence of an actual intent

to deceive or mislead is rarely available. You may, however, infer intent from conduct.

That means you may conclude that a person intended the foreseeable results of his or her

actions. You should decide whether or not to infer an intent to deceive or mislead based

on the totality of the circumstances, including the nature of the conduct and evidence of

the absence or presence of good faith.

**AUTHORITIES:** *LiSecond Family Ltd. P'ship v. Toshiba Corp.,* 231 F.3d 1373, 1379-80 (Fed. Cir. 2000); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321-22 (Fed. Cir. 2000); *Semiconductor Energy Lab. Co. v. SamsungElecs. Co.,* 204 F.3d 1368, 1374 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d *1253, 1257-59* (Fed. Cir. 1997); *Refac Int'l Ltd. v. Lotus Dev. Corp.,* 81 F.3d *1576* (Fed. Cir. 1996).

MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 34

### 11.3 BALANCING OF MATERIALITY AND INTENT

If you find that Intermark has proved by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the Patent Examiner, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct. The higher the materiality of the withheld or misrepresented information is, the lower the intent needed to establish inequitable conduct.

**AUTHORITIES:** *Li Second Family Ltd. P'ship* v. *Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000); *Baxter Int'l, Inc.* v. *McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997); *Molins PLC* v. *Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *FMC Corp.* v. *Manitowoc Co.*, 835 F.2d 1411, 1416 (Fed. Cir. 1987); *Am. Hoist & Derrick Co* v. *Sowa & Sons, Inc.*, 725 F.2d 1350, 1363-64 (Fed. Cir. 1984).

MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 35

## 12. INFRINGEMENT GENERALLY

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  Microfibres alleges that Intermark has infringed claim 1 of the '021 Patent by direct infringement and by inducing infringement. I will now explain in more detail each type of infringement.

**AUTHORITIES:** *35* U.S.C. § 271-281 (1984 & Supp. 2001); *Warner-Jenkinson Co.* v. *Hilton Davis Chemical Co.,* 520 U.S. 17, 36 (1997); *Fla. PrepaidPostsecondary Educ. Expense Rd.* v. *College Say. Bank, 527* U.s. 627, 644 (1999); *DeMarini Sports, Inc.* v. *Worth, Inc.,* 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Payless Shoesource, Inc.* v. *Reeboklnt'l Ltd.,* 998 F.2d *985,* 990 (Fed. Cir. 1993); *All. Thermoplastics Co.* v. *Faytex Corp.,* 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp.* v. *United States Int'l Trade Comm 'n,* 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp.* v. *Ultraseal Ltd., 781* F.2d 861, 867 (Fed. Cir. *1985).*

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 36**

### 12.1 DIRECT INFRINGMENT

In this case, Microfibres alleges that Intermark directly infringed the '021 Patent. Intermark would be liable for directly infringing the '021 Patent if you find that Microfibres has proven by a preponderance of the evidence that Intermark has made, used, offered for sale or sold the invention defined in at least one of the claims of Microfibres' patent.

A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent. It may also infringe the patent even though in good faith it believes that what it is doing is not an infringement of any patent.

**AUTHORITIES:** AIPLA Model Patent Jury Instructions, Infringement Instruction 5; 35 U.S.C. § 271(a); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478 (1974).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 37**

## 12.2 INDUCING PATENT INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've just told you, can occur unintentionally. In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of the patent and encouraged or instructed another person to use a product or to perform a process in a manner that would infringe the patent. The patent owner must also prove that it is more probable than not that the other person infringed the patent. A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

Microfibres asserts that Intermark induced patent infringement. Microfibres must prove four things by the preponderance of the evidence standard: First, Intermark encouraged or instructed another person how to use a product or perform a process in a manner that you, the jury, find infringes the patent claims. Second, Intermark knew of the patent. Third, Intermark knew or should have known that his or her encouragement or instructions would likely result in the other person doing that which you find to be an infringement of the patent. Fourth, the other person infringed the patent. If you are persuaded of each of these four things may you find that Intermark induced patent infringement.

**AUTHORITIES:** 35 U.S.C. § 271(b) (1984); *Micro Chem., Inc.* v. *Great Plains Chem. Co.,* 194 F.3d 1250, 1261 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.,* 145 F.3d 1303, 13 11-12 (Fed. Cir. 1998); *Insituform Techs., Inc.* v. *Cat Contracting, Inc.,* 161 F.3d 688, 695 (Fed. Cir. 1998); *Carborundum Co.* v. *Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 876 n.4 (Fed. Cir. 1995).

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 38**

### 12.3  FOREIGN SALE

Microfibres also contends that Intermark induced infringement outside the United States.  To prove foreign inducement, Microfibres must prove by a preponderance of the evidence that Intermark supplied from the United States a substantial portion of the components of the patented invention in a manner to actively induce infringement of the '021 Patent.

**AUTHORITIES:**  35 U.S.C. § 271(f)(1)

MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 39

### 13. DELIBERATION AND VERDICT

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Not let me finish up by explaining some things your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is a juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 5-4, or 6-3, or whatever your vote happens to be. That should stay secret until you are finished.

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 40**

### 14. UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reach an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight of effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 41

### 15. DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**MICROFIBRES' PROPOSED JURY INSTRUCTION NO. 42**

### 5.4 COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.