IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ) | |
| INTERMARK FABRIC CORPORATION, ) | |
| Plaintiff, ) | Civil Action No. 3:02-CV-1267 (AVC) |
| ) | |
| v. ) | |
| ) | |
| MICROFIBRES, INC., ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO MICROFIBRES' MOTION *IN LIMINE*
TO SEVER INEQUITABLE CONDUCT CLAIM FOR A BENCH TRIAL**

I.      **INTRODUCTION**

Intermark Fabric Corporation ("Intermark") commenced this declaratory judgment

action seeking a declaration of non-infringement and invalidity (with additional claims for patent

misuse, tortious interference, and CUTPA) concerning its *Frosty* product.  Intermark conceived

and sold the *Frosty* product before the Defendant Microfibres, Inc. ("Microfibres") applied for its

patent.

In 1989, the Plaintiff, Intermark Fabric Corporation ("Intermark") created a flocked fabric

with a <u>dark</u> pigmented adhesive called "Frosty."  A flocked fabric is created by taking a substrate,

such as a woven textile, coating an adhesive onto the textile substrate, and placing the coated

substrate in a flocking chamber.  In the flocking chamber, small pieces of flock, typically short

pieces of nylon strands, are electrostatically charged, causing them to adhere into the adhesive in

an upward orientation.  The result is a material which has the appearance of velvet.  Flocked

fabrics have a wide range of applications such as clothing and upholstery.  Flocked fabrics may

**ORAL ARGUMENT REQUESTED**

be printed by a variety of printing methods – such as transfer printing and wet printing. Flocked fabrics are frequently referred to as Greige goods prior to finishing operations such as transfer printing. Frosty was designed to be used for transfer printing.

Microfibres and its President, James R. McCulloch ("McCulloch"), certainly knew of Intermark's Frosty product prior to filing his application for a patent on July 31, 1992. Prior to applying for a patent, Microfibres supplied the nylon flock used to make the Frosty product, and was informed by Intermark of a quality issue with its flock. The type of nylon used in the flock supplied by Microfibres, Type 66 nylon, is used for transfer printing because of its high melting point. Moreover, Intermark informed Microfibres of the need for consistent flock for various printing applications, including transfer printing.

In July of 1992, McCulloch applied for a patent for transfer printing on a textile substrate in which the flock was adhered to the substrate with a dark pigmented adhesive. Microfibres never informed the Patent Office of Intermark's Frosty product. For approximately seven years, the Patent Office rejected McCulloch's application. Microfibre's distinguished the prior art cited by the Patent Office by representing that the use of dark pigments was unknown. Indeed, in distinguishing a patent to Smith, Microfibres represented that even though the use of a pigment in Smith was disclosed, the pigment used would not impart significant color to the adhesive. The examiner relied on this statement as indicated in the Reasons for Allowance.

Thus, on November 9, 1999, United States Patent No. 5,981,021 entitled Transfer Printing Flocked Fabric (the "'021 patent") issued to McCulloch and was later assigned to Microfibres. Incredibly, Microfibres has now accused Intermark, and its customers, of infringing the '021 patent, by selling Frosty.

2

Included in this case is the assertion by Intermark that McCulloch and representatives of Microfibres committed inequitable conduct in the proceedings at the patent office. During prosecution, the patent examiner studies the available prior art patents to determine whether the patent is novel and/or obvious. The patent office does not have industry publications and/or knowledge of industry activities as a resource to examine patents. Therefore, the patent rules require inventors and anyone acting on their behalf to inform the patent office of prior art which they are aware. (see 37 C.F.R. § 1.56(a)). McCulloch represented that pigments for flocked fabrics were conventionally clear in color. The patent examiner repeatedly rejected the claims on the basis that the use of dark pigmented adhesives was obvious.

In each of the seven office actions that were issued during the prosecution of the '021 patent over the course of several years, the Examiner repeatedly rejected all of the claims in the application as obvious under 35 U.S.C. § 103. In doing so the Examiner cited to the following three patents: (1) United States Patent No. 4, 314,813 to Masaki (hereinafter "Masaki Patent"); (2) United States Patent No. 4,049,374 to Rejito (hereinafter "Rejito Patent"); and United States Patent No. 2,308,429 to Smith, et. al. (hereinafter "Smith Patent").

In each such office action, the examiner opined that it would have been obvious to one skilled in the art to combine the Masaki Patent and the Rejito Patent, which teach transfer printing flocked fabric, with the Smith Patent, which "teaches flocking a textile substrate by adhering the flock to the substrate with a blue pigmented 'cement' which is the adhesive used to adhere the flock to the substrate", to create the flocked fabric claimed by Microfibres.

On January 24, 1994, following an interview with the Examiner in which the indefiniteness of the term "dark" was discussed, Microfibres submitted a response to the

3

November 3, 1993 Office Action. Microfibres amended claim 13 of the initial '021 patent application (which is claim 13 of the '021 patent) which claimed only a "pigmented adhesive", by adding the limitation that the pigmented adhesive be a "<u>dark</u>" pigmented adhesive. In that same response, Microfibres represented that while it is known to use "color adhesives" in the manufacture of flocked fabrics but did not disclose that it was known in the prior art to use dark pigmented adhesives in the manufacture of flocked fabrics. Microfibres then distinguished the Smith Patent by - inconsistent with what McCulloch, Laird, Fulks and Microfibres knew - arguing that it did not teach dark pigmented adhesives as the blue pigment in the cement disclosed in Smith is only one part in 80,000, and therefore the blue pigment "<u>would clearly be insufficient to impart any significant color to the cement</u>."

On May 27, 1999, a Notice of Allowability was issued by the PTO and attached thereto was the Examiner's "Reasons for Allowance." Under the Reasons of Allowance, the examiner opined that the Smith Patent suggests only "<u>the addition of a small amount of pigment to the adhesive</u>" The examiner then opined that Microfibres solved the problem of grin-through:

> Thus there are two statements of the prior art reinforcing applicant's position that a <u>dark</u> adhesive is necessary to reduce grin through. Applicant has solved the same problem in a manner not taught in the prior art; <u>that is by adding a pigment to the adhesive</u>. (emphasis added)

During discovery it was also revealed that Microfibres began using dark pigmented adhesives for flocked fabrics in the early 1980's, and again never disclosed this information to the Patent Office. Microfibres was clearly on notice of the materiality of dark pigmented adhesives because the Patent Office repeatedly rejected the '021 patent application on the grounds that dark pigmented adhesives were known to those of ordinary skill in the art. Despite

its knowledge that the Patent Office considered the claimed novelty of dark pigmented adhesives to be material to the patentability of the '021 application, Microfibres never disclosed *Frosty* and/or its own activities with dark pigmented adhesives to the Patent Office.

Plaintiff opposes the instant motion on the grounds that (1) the same factual issues underlie the inequitable conduct and invalidity claims; (2) retrying these same factual issues is unnecessarily duplicative; and (3) a just final disposition is best achieved by trying all the relevant factual issues in a single trial.

## II.    THE COURT SHOULD EXERCISE ITS DISCRETION AND TRY THE INEQUITABLE CONDUCT AND INVALIDITY CLAIMS IN A SINGLE TRIAL

Rule 21, Fed. R. Civ. P., provides for severance of any claim against a party, while Rule 42(b), Fed. R. Civ. P., provides for separate trials of any claim or issue.  The Federal Circuit has pointed out that an order separating issues for trial pursuant to Rule 42(b) only separates those issues temporarily and does not "sever" claims.  *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1430 (Fed. Cir. 1984) (overruled on other grounds by, *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067 (Fed. Cir. 1998)) (the effect of Rule 42(b) is to temporarily separate a claim for trial).  While Microfibres' motion *in limine* purports to move this Court to "sever" the inequitable conduct claim for a bench trial, it is Plaintiff's belief that the Defendant is actually requesting that this Court separate, rather than sever, the claims.

Rule 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by

the Seventh Amendment to the Constitution or as given by a statute
of the United States.

"[T]he purpose of ordering separate trials under Rule 42(b) is to promote convenience,
expedition, and economy, and to avoid delay and prejudice." *Atari*, 747 F.2d at 1430.  The
decision to separate claims is within the sound discretion of the trial court. *Agfa Corp. v. Creo
Products, Inc.*, 451 F.3d 1366 (Fed. Cir. 2006); *Gardco Manufacturing, Inc. v. Herst Lighting
Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987) ("Under Rule 42(b), a district court has broad
discretion in separating issues and claims for trial as part of its wide discretion in trial
management."). In *Agfa*, the Federal Circuit held that although the issues of invalidity and
materiality "overlap to some degree," there was no Seventh Amendment right to a jury trial for
an inequitable conduct claim. *Agfa*, 451 F.3d at 1372-73  ("Even though the definition of
materiality, i.e., 'a *prima facie* case of unpatentability,' may implicate some aspects of a validity
analysis, the issues of invalidity and materiality are still not common within the legal construct of
[*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959)]."). The dissent, however, listed some
of the "[m]any Federal Circuit decisions [that] illustrate the jury role in finding disputed facts
concerning questions of material withholding and deceptive intent, as well as the ultimate fact of
whether these infractions warrant permanent unenforceability of the patent." *Id.* at 1382-83
(Newman, J., dissenting).[1] Clearly, the separation of inequitable conduct and invalidity claims is

---

[1] *See e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1374 (Fed. Cir. 2004) ("The jury
found both patents valid, and rejected St. Jude's charge that the '288 patent is unenforceable for inequitable conduct
during patent prosecution."); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1325 (Fed. Cir.
2003) ("Finally, the jury found that neither Gretz nor Arlington's patent attorney had committed inequitable conduct
in prosecuting the '674 patent."); *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1348 (Fed. Cir. 2003)
("the jury returned verdicts that Syntron failed to prove by clear and convincing evidence that the claims were
anticipated, obvious, invalid due to inventorship error, lacked enablement or written description support, or were
unenforceable due to inequitable conduct"); *Catalina Lighting v. Lamps Plus, Inc.*, 295 F.3d 1277, 1283 (Fed. Cir.
2002) ("the jury returned a special verdict form stating that: ... neither patent was unenforceable due to inequitable
conduct."); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 735 (Fed. Cir. 2002) ("The district court submitted

within the discretion of the trial judge, to be decided on a case-by-case basis.

**III.  ALL THE FACTORS WEIGH IN FAVOR OF HOLDING A SINGLE TRIAL FOR THE INVALIDITY AND INEQUITABLE CONDUCT CLAIMS IN THIS CASE**

The Federal Circuit has held that

> In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation.

*In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (*citing* 9 C. Wright, Miller &

Cooper, Federal Practice and Procedure, § 2388).

Convenience of the parties and the court

This factor clearly weighs in favor of a single trial. Much of the same evidence will be

---

the issue of inequitable conduct to the jury ...."); *Upjohn Co. v. Mova Pharma. Corp.*, 225 F.3d 1306, 1313 (Fed. Cir. 2000) ("We review these grounds for their support of the jury's verdicts of inequitable conduct and unenforceability."); *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1459 (Fed. Cir. 1997) ("The jury answered special interrogatories on all disputed issues, and in accordance with these findings the court entered judgment that the D'528 patent is invalid and not infringed, that the patent is unenforceable due to inequitable conduct in the Patent and Trademark Office"); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1112 (Fed. Cir. 1996) ("the United States District Court for the Western District of Louisiana, pursuant to jury verdict, entered judgment that the '940 patent was valid but that it was unenforceable due to inequitable conduct"); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 540 (Fed. Cir. 1990) ("In the spring of 1989 the case was tried to a jury, which returned special verdicts finding that Allen had failed to prove by clear and convincing evidence that the patent was invalid, or that it was unenforceable for inequitable conduct."); *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 273 (Fed. Cir. 1988) ("In this case the jury, in answer to specific interrogatories, found that a nondisclosed prior art reference, considered upon reexamination of the '120 patent, was a 'moderately material' reference, and that the inventor and his attorneys had been 'grossly negligent' in failing to call it to the attention of the Patent Office during original examination. Accepting those findings, the trial court concluded that there was no inequitable conduct."); *Mainland Indus., Inc. v. Standal's Patents Ltd.*, 799 F.2d 746, 747 (Fed. Cir. 1986) (The jury returned the verdict in the form of answers to twenty-three interrogatories, and found that the patents in suit were not invalid, were enforceable and infringed) (overruled on other grounds by *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1038 (Fed. Cir. 1992)); *Shiley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1564 (Fed. Cir. 1986). ("The special verdict included jury findings that ... plaintiff did not commit inequitable conduct before the United States Patent and Trademark Office (PTO)"); *Shatterproof Glass v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985) ("The jury was correctly charged as to the law on enforceability, fraud, and misrepresentation, and that clear and convincing evidence was needed for a finding of intentional misrepresentation or withholding of a material fact from the PTO."); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1557 (Fed. Cir. 1984) ("the jury returned answers to special interrogatories in which it found ... that Trans-World intended to deceive the Patent and Trademark Office").

offered to demonstrate invalidity and inequitable conduct. It would needlessly duplicate the time and effort of the parties and the Court to hear the same evidence on overlapping issues on two separate occasions.

Avoid prejudice

This factor clearly weighs in favor of a single trial. Any remote possibility of prejudice is avoided by correctly charging the jury on the appropriate separate legal standards for invalidity and materiality. As noted by Judge Newman in her dissent in *Agfa*, juries have traditionally rendered separate verdicts on invalidity and materiality (inequitable conduct) in patent cases. *See Agfa*, 451 F.3d at 1382-83 (Newman, J., dissenting). Plaintiff submits that there is a greater danger of prejudice in presenting the jury with an unnecessarily incomplete narrative of the relevant facts. In the instant case, there is a complex seven year prosecution history replete with rejections, abandonments, continuations, and representations made by the inventor and his representatives concerning the prior art and pigmentation. The jury should be educated on these complex issues in order to fairly understand their role in deciding the issues of invalidity, infringement, and inequitable conduct.

Minimize expense and delay

This factor clearly weighs in favor of a single trial. By claiming that Intermark infringes its patent, Microfibres has already successfully put Intermark out of business. A longer trial is, of course, more expensive. Plaintiff believes that Microfibres' motion *in limine* for a separate bench trial stems more from Microfibres' belief that it can outspend Intermark rather than a concern about a just final disposition.

<u>Just final disposition</u>

This factor clearly weighs in favor of a single trial. Plaintiff is confident that both this Court and a jury will arrive at a fair and just verdict in this case. However, Plaintiff respectfully submits that a single trial is most likely to result in a just disposition because the same trier of fact will have evaluated all the evidence in the context of a complete narrative. Specifically the trier of fact will hear evidence regarding the prior use of adhesives comprising dark pigments in nylon flock within the industry as a whole, by Intermark in the manufacture of its Frosty product, as well as by Microfibres itself. The trier of fact will also hear evidence regarding Microfibres' knowledge of this prior use, for example, by Microfibres' direct observation of Intermark's production runs. During the course of its unusually long prosecution of the '021 patent application, not only did Microfibres deliberately withhold this material information from the Patent Office, but Microfibres repeatedly and affirmatively represented to the Patent Office that their claims were patentable because the prior art failed to disclose dark pigmented adhesives. After hearing the complete narrative, a trier of fact is most likely to arrive at a just disposition by evaluating whether the '021 patent is invalid because the prior art anticipates or renders obvious the '021 patent and whether Microfibres engaged in inequitable conduct by failing to disclose the prior art and fraudulently misrepresenting the patentability of its claimed invention.

## IV.    **CONCLUSION**

The decision to separate claims is within the sound discretion of this Court. Because the factors for separate trials under Rule 42(b) weigh heavily in favor of single jury trial, Plaintiff respectfully requests that this Court deny Defendant's motion *in limine* to separate the inequitable conduct claim.

Respectfully submitted,
For the Plaintiff


By:___/s/Charles F. O'Brien_____
　　　Charles F. O'Brien (ct 22074)
　　　William J. Cass (ct 12806)
　　　CANTOR COLBURN LLP
　　　55 Griffin Road South
　　　Bloomfield, Connecticut 06002
　　　Telephone: (860) 286-2929
　　　Facsimile: (860) 286-0115


Dated: 9/25/2006

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 25, 2006, a true and accurate copy of the foregoing document was filed electronically via the Court's ECF system. Notice of this filing will be sent by e-mail to the following parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley. Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405


By:    /s/Charles F. O'Brien
          Charles F. O'Brien, Esq.