IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTERMARK FABRIC CORPORATION, <br> Plaintiff, <br><br> v. <br><br> MICROFIBRES, INC., <br> Defendant. | Civil Action No. 3:02-CV-1267 (AVC) |

**PLAINTIFF, INTERMARK FABRIC CORPORATION'S OPPOSITION TO DEFENDANT, MICROFIBRES, INC.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO "BEST MODE" DEFENSE**

I.  **INTRODUCTION**

Plaintiff respectfully submits that Defendant has mischaracterized several aspects of the best mode requirement. First, the best mode requirement applies to the claimed invention as a whole and not solely to the asserted claim. Second, the best mode requirement affects all claims that cover the undisclosed subject matter. There is no requirement that the claims expressly claim the undisclosed best mode. Third, inequitable conduct provides a separate, independent basis for the admissibility of the best mode evidence. Finally, an accused infringer cannot be held liable for infringement of an invalid or an unenforceable patent. Because the evidence regarding the lack of disclosure of the best mode in the '021 patent is highly relevant to Plaintiff's claims of invalidity, unenforceability, and non-infringement, Plaintiff respectfully requests that this Court deny Microfibres' motion *in limine* to exclude evidence regarding the best mode.

## II.   STATEMENT OF FACTS

The '021 patent relates to a purported improvement in transfer printing flocked fabric, the improvement consisting of the addition of a dark pigmented adhesive in the flocked fabric. Exhibit 1, col. 1 ln 66 - col. 2 ln 5[1]. Flocked fabrics are made by adhering short fibers, usually nylon or polyester, to a substrate using an adhesive. *Id.* at col. 1 ln 19 - 24. Transfer printing consists of combining a paper having dyestuffs arrayed onto it in a print pattern, placing the paper into intimate contact with the flocked fabric and exposing the paper and fabric to pressure and heat. *Id.* at col. 1 lns 25 - 28. As a result, the dyestuff sublimates into the fibers of the flocked fabric thereby creating a print on the fabric. *Id.* at col. 1, lns 28 - 30. The invention purports to fill a need in the art for a transfer printed flocked fabric with a deep, dark colored print. *Id.* at col. 1 ln 59 - col. 2 ln 5. The '021 patent is assigned to Microfibres and James R. McCulloch, president and CEO of Microfibres, is listed as the sole inventor. *Id.*, cover page.

In accordance with his duty of candor and under 35 U.S.C. §112, ¶1, McCulloch was required to disclose in the specification of the '021 patent the best mode contemplated by him of carrying out the invention. As admitted by McCulloch himself, the best mode of achieving transfer printed flocked fabric under the claimed invention is by employing a specialized heat setting process developed at Microfibres. Exhibit 2, p. 104 lns 14 - 18. Heat setting is a process that exposes the flocked fabric with fibers in a raised state to high temperatures for a sustained period of time which allows the fibers to

---

[1]   All of the exhibits referred to in this Opposition to Microfibres' Motion in Limine to Exclude Evidence Relating to "Best Mode" Defense are attached to the Declaration of Charles F. O'Brien filed contemporaneously herewith.

"remember" the state in which they were in during that exposure. Exhibit 3, p. 52 lns 7 - 13. The pile of a transfer printed flocked fabric that is not heat set "comes out flat." *Id.* at p. 52 lns 14 - 24.

McCulloch described the specialized heat setting process as comprising the use of infrared lights in the heat setting equipment and the ability to control the temperature exposure thereby allowing one to obtain a more uniform heat dispersion of the flocked fabric. Exhibit 2, p. 110 ln 15 - p. 113 ln 15. McCulloch admitted not only that Microfibres developed this heat setting process before the filing of the initial patent application but also that, before filing the application, he contemplated that this heat setting process was the this best mode of carrying out the invention. More specifically, McCulloch testified as follows:

> Q. In order to achieve these deep dark colors, you developed a heat setting process?
>
> A. Yes, that was part of the work that had preceded the invention, yes.
>
> Q. And that process involved certain pressures and treatment of the heat setting, correct? I'm not asking for the specifics of what they are, but it involved certain parameters with the heat-setting machine?
>
> A. Yes, different types of equipment, yes.
>
> Q. And different treatments?
>
> A. Well, there are normally different ways to heat set fabrics, yes.
>
> Q. But you developed a special way to heat set the fabric, correct?

> A. An improved way, yes.
>
> Q. And you considered that improved way to be a trade secret, correct?
>
> A. Yes.
>
> Q. It was before you filed your patent application?
>
> A. Yes.
>
> Q. I'd like to go -- and it would be accurate to state you don't disclose that trade secret in your patent application, correct.?
>
> A. No. It was also not limited to the patent as well, the specific way we did it. It could be done in a variety of ways.
>
> Q. But the best way was this way that you don't want to disclose because it's a trade secret?
>
> A. We thought the best way was, yes, it was certainly a major improvement of over how we had done it in the past.
>
> Q. And do you continue to do it with respect to this trade secret manner, this proprietary manner?
>
> A. Yes, with modifications. We've made numerous modifications to the equipment.

*Id.* at p. 103 ln. 10 - p. 104 ln. 23.

In addition to the heat setting process producing a better quality product under the invention by allowing one to make deep, dark colored prints, the specialized heat setting process also produces a better quality product by minimized the risk of fires in the ovens and reducing the amount of dwell time of the flock fabric in the ovens thereby both

minimizing any yellowing of the fabric and allowing the line to run at higher speeds thus producing a more cost effective product. *Id.* at p. 107 ln 24 - 109 ln 15 and p. 108 lns 23 - p. 109 ln 3.

The specialized heat setting process is not disclosed in the specification of the '021 patent. Instead, prior to filing the initial patent application and even to this day, McCulloch and Microfibres consider the specialized heat setting process to be a trade secret. *Id.* at p. 104 lns 1 - 3 and lns 19 - 23.

Documentary evidence of the contemplated best mode also exists. In an internal document entitled Project Trial Request dated April 29, 1992 (three months before the filing of the initial '021 patent application) Microfibres began to run tests of the transfer printed flocked fabrics with dark pigmented adhesives covered under the '021 patent. See Exhibit 4. In that document, McCulloch requested that samples consisting of <u>heat set</u> transfer printed flocked fabrics with dark pigmented adhesives be prepared for purposes of research and development. *Id.* Additionally, a memorandum dated December 2, 1992 prepared by Michael Czarnecki, current Vice President of Sales and Marketing at Microfibres, shows that the new transfer printed flocked fabrics with dark pigmented adhesives that Microfibres was interested in selling in 1992 were heat set. Exhibit 5.[2]

### III. THE BEST MODE REQUIREMENT APPLIES TO THE CLAIMED INVENTION NOT SOLELY TO THE ASSERTED CLAIM

A patent specification must set forth the "best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶ 1. "The best mode requirement creates

---

[2] Upon information and belief, the term "HS" refers to heat set.

a statutory bargained-for-exchange by which a patentee obtains the right to exclude others from practicing the claimed invention for a certain time period, and the public receives knowledge of the preferred embodiments for practicing the claimed invention." *Eli Lilly & Co. v. Barr Laboratories Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001). "The best mode requirement thus is intended to ensure that a patent applicant plays 'fair and square' with the patent system. It is a requirement that the *quid pro quo* of the patent grant be satisfied." *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1209-10 (Fed. Cir. 1991).

> Determining whether a patent fails to comply with the best mode requirement and is thus invalid involves two factual inquiries. First, the fact-finder must determine whether at the time an applicant filed an application for patent, he or she had a best mode of practicing the invention, which is a subjective determination. Second, if the inventor had a best mode of practicing the invention, the fact-finder must determine whether the best mode was disclosed in sufficient detail to allow a skilled artisan to practice it without undue experimentation, which is an objective determination.

*Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1321 (Fed. Cir. 2006) (*quoting Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1064 (Fed. Cir. 1998).

The Manual Of Patent Examination Procedure ("MPEP") directs Patent Examiners to assume that the best mode requirement has been satisfied unless there is evidence to the contrary.

> The examiner should assume that the best mode is disclosed in the application, unless evidence is presented that is inconsistent with that

> assumption. It is extremely rare that a best mode rejection properly would be made in *ex parte* prosecution. The information that is necessary to form the basis for a rejection based on the failure to set forth the best mode is rarely accessible to the examiner, but is generally uncovered during discovery procedures in interference, litigation, or other *inter partes* proceedings.

MPEP § 2165.03.

Defendant has attempted to create its own self-serving statement of the best mode requirement by inserting the word "asserted" into the statute. Section 112, paragraph 1 requires the disclosure of the "best mode contemplated by the inventor of carrying out his invention," not the best mode of carrying out his selectively asserted claims in an infringement suit. The best mode requirement must be satisfied during the prosecution of a patent application before the Patent Office in exchange for a patent grant. During prosecution there is, of course, no "asserted claims" and no way of knowing which claims, if any, will be asserted in a subsequent lawsuit. Therefore, it is legally and logically irrelevant to limit the best mode inquiry to the asserted claims in a subsequent lawsuit.

A rule to the contrary provides the opportunity for a patent owner to "hide the ball" and direct the best mode inquiry away from the claims claiming a best mode element. As noted by the MPEP, "[i]t is extremely rare that a best mode rejection properly would be made in *ex parte* prosecution," but the failure to set forth the best mode is "generally uncovered during discovery procedures in interference, litigation, or other *inter partes* proceedings." MPEP § 2165.03. Therefore, best mode violations will

typically be uncovered during litigation rather than during prosecution. If a patentee can unilaterally limit the best mode inquiry to only the asserted claim(s), a patentee can effectively avoid any real scrutiny regarding the sufficiency of its best mode disclosure. For example, the patentee can "hide" the best mode element in a narrow dependent claim and assert only a broad independent claim. This practice provides the patentee with the broadest claim scope for infringement but would avoid any inquiry into whether the best mode of carrying out the invention was disclosed. Similarly, the patentee could simply drop the assertion of one claim in the face of a strong best mode challenge and assert a different claim. A rule allowing the patentee to dictate a limited best mode inquiry in this fashion would completely eliminate the best mode requirement of § 112.

In this case, Microfibres has claimed its best mode element, the heat setting limitation that provides for even heat distribution across the length of the flocked fabric, in dependent Claim 17 rather than in independent Claim 1. In Microfibres Answers to Plaintiff's First Set of Interrogatories, Answer No. 4, Microfibres had originally asserted Claim 17 but now, after Intermark challenged the adequacy of its disclosure of the best mode, Microfibres dropped Claim 17 and asserted only Claim 1. *See* Exhibit 6 Microfibres Answers to Plaintiff's First Set of Interrogatories, Answer to Interrogatory No. 4. Plaintiff believes that Microfibres' tactics and arguments amount to an attempt to avoid any scrutiny of its failure to disclose the best mode heat setting process that Microfibres, to this day, continues to treat as a proprietary trade secret.

Section 112, ¶ 1 requires the disclosure of the best mode of carrying out the claimed invention, not carrying out the asserted claim. A rule to the contrary would vitiate the best mode requirement. Plaintiff respectfully submits that this Court deny Defendant's motion *in limine*.

### IV. THE BEST MODE REQUIREMENT AFFECTS ALL CLAIMS THAT COVER THE CHALLENGED SUBJECT MATTER

Defendant's argument that "the best mode violation claim only relates to those claims that actually <u>claim the subject matter that is in dispute</u>" is a misstatement of law. The Federal Circuit has consistently held that the best mode defense affects those claims that <u>cover</u>, not just claim, subject matter for which the best mode has not been disclosed. Defendant misrepresents the statement of the *Amgen* court, which held that:

> Absent inequitable conduct, a best mode defense only affects those claims <u>covering subject matter</u> the practice of which has not been disclosed in compliance with the best mode requirement.

*Amgen*, 927 F.2d at 1209, n.5 (emphasis added).[3] The *Amgen* court did not hold, as Defendant states, that the best mode defense only affects those claims that actually <u>claim</u> the subject matter, instead the court held that the best mode defense only affects those claims that <u>cover</u> subject matter the practice of which has not been disclosed. The recited

---

[3] In *Amgen*, the claims were directed to (1) DNA sequences and (2) specially-modified host cells that contained those DNA sequences. In biotechnology patents, the best mode and enablement requirements may be satisfied by a physical deposit of a biological sample in a public depository. *See* 37 CFR § 1.801; MPEP § 2403. The inventors had described the host cells in the specification but had not deposited the cells. The issue was whether a physical deposit was required to satisfy the best mode requirement. The *Amgen* court implicitly, and appropriately, treated the DNA claims and the host cells claims as covering separate inventions. *Amgen*, 927 F.2d at 1209, n.5. Accordingly, the disputed requirement to deposit host cells was not relevant to claims that covered only the DNA sequences.

"cover" language is deliberately broader than the "claim" language. As noted by Professor Chisum, "[m]any decisions do not state a precise test for the relationship between the preferred mode and the claimed subject matter." 3 Chisum § 7.05[1][e] at 7-366 (2002); *see also Wahl Instruments, Inc. v. Acvious Inc.*, 950 F.2d 1575, 1579 (Fed. Cir. 1991) ("[t]he words in the statute are not without ambiguity…the term 'mode' and the phrase 'carrying out' are not definable with precision.").

Although "[t]he best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims," this inquiry is broader than the literal claim language. *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532 (Fed. Cir. 1991). "Notwithstanding that the best mode requirement keys only on carrying out the claimed invention, we have found violations of the best mode requirement for failure to disclose subject matter not strictly within the bounds of the claims." *Bayer AG v. Schein Pharmaceuticals, Inc.*, 301 F.3d 1306, 1316 (Fed. Cir. 2002) (internal quotation marks omitted). Accordingly, there is no requirement that the non-disclosed matter be expressly claimed.

> Indeed, most of the cases in which we have said that the best mode requirement was violated addressed situations <u>where an inventor failed to disclose non-claimed elements that were nevertheless necessary to practice the best mode of carrying out the claimed invention</u>.

*Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 928 (Fed. Cir. 1990) (emphasis added) ("That the claim is broad is no reason to excuse noncompliance with the best mode requirement."). In *Chemcast*, the only asserted claim was Claim 6, which

depended from Claim 1. The district court invalidated <u>all the claims of the patent</u>, not just the asserted claim, for failure to satisfy the best mode requirement. The Federal Circuit affirmed:

> Here, the information the applicant is accused of concealing is not merely necessary to practice the claimed invention...it also describes the preferred embodiment of a claimed element.

*Id.* More recently, the Federal Circuit has held that

> [W]e have held a patent invalid for failure to satisfy the best mode requirement in two situations. First, we have invalidated patents when <u>they do not adequately disclose a preferred embodiment of the invention</u>....
> Second, we have invalidated patents when the patentee failed to disclose aspects of <u>making or using the claimed invention and the undisclosed matter materially affected the properties of the claimed invention</u>.

*Bayer AG*, 301 F.3d at 1319.

Defendant admits that "heat setting" is expressly claimed, albeit in Claim 17 rather than in Claim 1. By failing to disclose "heat setting," Microfibres has failed to disclose the best mode for carrying out what Microfibres admits it regards as its claimed invention. This failure to disclose the preferred embodiment of the invention would satisfy one of the tests for a best mode violation.

In addition, the undisclosed heat setting process materially affects the claimed invention. Microfibres had originally admitted that Laird's 1992 heat setting system provided Microfibres with "side-center-side" control that ensured a more uniform heat

dispersion over the flocked fabric and reduced the yellowing of the fabric. Although McCulloch now deems these as mere production efficiencies, these admitted benefits alone would materially affect the claimed invention. The uneven application of heat over flocked fabric during the heat setting process will result in the fibers on the edges of the fabric to be less heat set than the fibers in the middle of the fabric. *See* Exhibit 7, ¶6. After transfer printing, the flocked fabric at the edges of the overall fabric will have less of an erect nap than the flocked fabric in the middle. *Id.* This uneven application of heat affects the resulting transfer printed flocked fabric under the '021 patent in that (1) the light reflective properties of the transfer print on the surface of the fabric will appear uneven and very blotchy; (2) there will be uneven dye diffusion across the transfer printed flocked fabric wherein the color of the print across the fabric will appear uneven and blotchy; (3) the overall transfer printed flocked fabric will be uneven thus causing an uneven hand in that the feel of the flocked fabric will vary over the surface of the product; and (4) the flocked fabric will be unevenly yellowed which, in turn, will result in uneven coloration across the transfer printed flocked fabric. Exhibit 7, ¶6. Also, reducing the yellowing of the flocked fabric during heat setting will provide a brighter and more evenly shaded transfer printed flocked fabric. *Id.* These issues would materially affect a product made according to the claimed invention and as Laird's 1992 heat setting system solved or at least minimized these issues, that system material affected the claimed invention. *Id.*, ¶7.

Here, the failure to disclose heat setting would satisfy either test for a best violation as announced in *Chemcast* and *Bayer*. The undisclosed heat setting process not only materially affects the claimed invention, but it also describes the preferred embodiment of a claimed element. Plaintiff respectfully submits that this Court should deny Defendant's motion *in limine*.

### V.   INEQUITABLE CONDUCT PROVIDES A SEPARATE, INDEPENDENT BASIS FOR THE ADMISSIBILITY OF THE BEST MODE EVIDENCE.

Plantiff's claim of inequitable conduct provides a separate, independent basis for the admissibility of the best mode evidence. In *Amgen*, the Federal Circuit held that "Absent inequitable conduct, a best mode defense only affects those claims covering subject matter the practice of which has not been disclosed." *Amgen*, 927 F.2d at 1209, n.5 (emphasis added). A finding of inequitable conduct therefore affects all claims regardless of their individual relationship to the best mode. Further, the failure to disclose the best mode is inherently material.

> Concerning best mode, we have held that, because disclosure of the best mode is statutorily required, see 35 U.S.C. § 112, failure to disclose the best mode is inherently material and, we believe, reaches the minimum level of materiality necessary for a finding of inequitable conduct. The record evidence supporting a failure to disclose best mode may be relevant to a determination of materiality....
>
> [S]ince the failure to disclose the best mode is not excused even if unintentional, but inequitable conduct requires a 'threshold' level of intent, the failure to disclose the best mode will not constitute inequitable conduct in every case.

*Old Town Canoe*, 448 F.3d at 1322 (internal citations and quotation marks omitted) (emphasis added).

In *Old Town Canoe*, the Federal Circuit, however, affirmed the holding of no inequitable conduct because the accused infringer provided no evidence of the intent to deceive the Patent Office. Clearly, evidence regarding the disclosure of the best mode is admissible to prove inequitable conduct because the failure to disclose the best mode is inherently material and reaches the minimum level of materiality necessary for a finding of inequitable conduct.

## VI. **CONCLUSION**

Plaintiff respectfully requests that this Court deny Defendant's motion *in limine* to exclude evidence regarding the best mode.

>
> Respectfully submitted,
> For the Plaintiff
>
> By:  /s/Charles F. O'Brien
>     Charles F. O'Brien (ct 22074)
>     William J. Cass (ct 12806)
>     CANTOR COLBURN LLP
>     55 Griffin Road South
>     Bloomfield, Connecticut 06002
>     Telephone: (860) 286-2929
>     Facsimile: (860) 286-0115

Dated: 9/25/2006

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2006, a true and accurate copy of the foregoing document was filed electronically via the Court's ECF system. Notice of this filing will be sent by e-mail to the following parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Brent R. Canning, Esq.
William R. Grimm, Esq.
Hinckley. Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02906

Jeffrey W. Kennedy, Esq.
Stephen G. Murphy, Jr., Esq.
Milano & Wanat
471 East Main Street
Branford, CT 06405

By: /s/Charles F. O'Brien
Charles F. O'Brien, Esq.