# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

INTERMARK FABRIC CORPORATION         :
:
:
      v.                                 :      C.A. No. 3:02-CV-1267 (AVC)
:
MICROFIBRES, INC.                    :
:

## ANSWERS OF DEFENDANT, MICROFIBRES, INC. TO PLAINTIFF INTERMARK FABRIC CORPORATION'S FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1

Identify each and every fact upon which Microfibres bases its allegations in Count

I of its Counterclaim.

### ANSWER NO. 1

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres further objects because all of the facts relating to Intermark's infringing activities are uniquely within the possession of Intermark, its transfer printers, and its customers. Without waiving these objections, Microfibres bases its infringement claims on several facts, including the July 9, 2002 affidavit of William Lucchesi, which admits that Intermark manufactures and sells flocked fabric with a dark-pigmented adhesive. That product is an integral component of the '021 Patent. Microfibres also bases its claims on the July 24, 2002 correspondence from counsel for Intermark, Michael Cantor, Esq., which admits that Intermark delivers the flocked fabrics it manufactures to transfer printers for transfer printing. Microfibres also relies on the transfer-printed flocked fabric samples it acquired from Intermark's European affiliate, Spandauer Velours GmbH & Co., which contain a dark-pigmented adhesive. The flocked fabric for these samples appears to be imported from the United States. Microfibres believes that Intermark is the source of such fabric. Some of the samples show evidence of air-embossing, which is also claimed by the '021 Patent. Microfibres expects that discovery directed to Intermark, its transfer printers, and its customers will produce additional facts relating to Microfibres' infringement claims. Given the nature of the industry, Microfibres believes that Intermark delivers flocked fabric with a dark-pigmented adhesive suitable for transfer printing to one or more transfer printers for transfer printing and ultimate delivery to Intermark's customers. This response will be supplemented as appropriate.

**INTERROGATORY NO. 2**

Identify each and every fact upon which Microfibres bases its allegations in Count

II of its Counterclaim.

**ANSWER NO. 2**

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres further objects because all of the facts relating to Intermark's infringing activities are uniquely within the possession of Intermark, its transfer printers, and its customers. Without waiving these objections, see Answer No. 1. In addition, Microfibres believes that Intermark sells the dark-pigmented flocked fabric to transfer printers and others and actively encourages or aids these third-parties to transfer print the fabric in violation of the '021 Patent.

**INTERROGATORY NO. 3**

Identify each and every fact upon which Microfibres bases its allegations in Count

III of its Counterclaim.

**ANSWER NO. 3**

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres further objects because all of the facts relating to Intermark's infringing activities are uniquely within the possession of Intermark, its transfer printers, and its customers. Without waiving these objections, see Answer No. 1 and Answer No. 2. In addition, Microfibres believes that Intermark sells flocked fabric with a dark-pigmented adhesive to transfer printers and others for transfer printing. Microfibres believes the flocked fabric sold to these third-parties may be specially modified by Intermark, such as by heat setting, for transfer-printing in violation of the '021 Patent.

**INTERROGATORY NO. 4**

For each product and/or method that Microfibres alleges infringes the '021 patent:

a.      Identify the product manufactured, used, imported, offered for sale or sold

by Intermark and/or any method employed by Intermark:

b.      State whether such infringement is:

(1)      literal infringement

2

(2)     infringement under the doctrine of equivalents; and

c.     For each such product and/or method, please provide a claim chart identifying the methods or components, structures, materials and/or features that Microfibes contends corresponds to and infringes each element of each respective claim in the '021 patent, or if the doctrine of equivalents is asserted, the methods or components, structures, materials and/or features which is equivalent to each element of each claim, and state how Microfibres contends that the product or method performs substantially the same function in substantially the same way to obtain the same result as the element claimed.

## ANSWER NO. 4

Objection.  This interrogatory is overbroad and unduly burdensome.  Microfibres cannot identify at this time every product that Intermark manufactures, sells, or offers to sell that directly infringes the '021 Patent.  Nor can Microfibres identify at this time all of the products manufactured or sold by Intermark that induce infringement or contribute to infringement of the '021 Patent.  All of this information is uniquely within the possession of Intermark, its transfer printers and its customers.  Without waiving these objections, Microfibres knows from the affidavit of William Lucchesi that Intermark manufactures and sells flocked fabric with a dark-pigmented adhesive and knows that Intermark sells its flocked fabric products to transfer printers.  Microfibres also knows that Intermark's affiliate, Spandauer Velours, is selling transfer printed flocked fabric with a dark adhesive and air-embossing.  The flocked fabric appears to be imported from the United States.  Some of the samples are air-embossed, which also infringes the '021 Patent.  The infringement is literal. Microfibres provides a preliminary claim chart below:

| CLAIM | ACCUSED INSTRUMENTALITY |
|---|---|
| 1.  A transfer printed, flocked fabric comprising: | The accused fabrics comprise a transfer printed, flocked fabric or non-staple flocked fabric specially adapted for transfer printing. |
| a. a textile substrate; | The accused fabrics include a textile substrate. |
| b. raised thermoplastic fibers on the substrate; | The accused fabrics include thermoplastic fibers on the substrate. |
| c. a dark pigmented adhesive adhering said fibers to said substrate; and | The accused fabrics include a dark  pigmented adhesive adhering the fibers to the substrate. |

3

| | |
|---|---|
| d. disperse dye distributed in a pattern in upper portions of said thermoplastic fibers. | The accused fabric includes a disperse dye distributed in a patter in the upper portions of the thermoplastic fibers or is specially adapted for such dying. |
| 2.- 9. Are dependent claims to Claim 1. | The accused fabrics directly infringe the dependent claims. |
| 10.  A fabric as claimed in Claim 1 where said fibers are arrayed on said substrate in a textured array, so that some fibers diverge from neighboring fibers more than other fibers and said pigmented adhesive is visible between said diverging fibers. | Some of the accused fabrics contain fibers that are arrayed on the substrate in a textured array so that some fibers diverge from neighboring fibers more than others and pigmented adhesive is visible between the diverging fibers. |
| 11. A transfer printed, flocked fabric comprising a textile substrate, raised thermoplastic fibers on the substrate, an overall dark pigmented adhesive adhering lower parts of the fibers to the substrate and disperse dye distributed as a result of the transfer printing to form a pattern in the upper portions only of the nap-forming part of said thermoplastic fiber, without said pattern-forming disperse dye penetrating to the depth of the nap. | The accused fabrics include a transfer printed, flocked fabric with a textile substrate, raised thermoplastic fibers on the substrate, a dark pigmented adhesive that adheres the lower parts of the fibers to the substrate and a disperse dye distributed in a patter that penetrates only the upper portions of the nap-forming part of the fiber. |
| 12. A transfer printed, flocked fabric comprising a textile substrate, raised nylon fibers on the substrate, a dark-pigmented adhesive adhering the nylon fibers to the substrate and a disperse dye distributed in a pattern in the upper portions of the nylon fibers and said fabric forming a deep, dark, crock-fast colored print. | The accused fabrics include a transfer printed, flocked fabric with a textile substrate, raised nylon fibers on the substrate, a black-pigmented adhesive adhering the nylon fibers to the substrate and a disperse dye distributed in a pattern in the upper portions of the nylon fibers so that it forms a deep, dark, crock-fast colored print. |
| 13. A method of producing a transfer printed, flocked fabric comprising the steps of adhering undyed thermoplastic fibers to a substrate with a dark pigmented adhesive so that the fibers have a lower portion adhered to the substrate and an upper portion forming a nap and thereby forming a flocked fabric, and transfer printing the flocked fabric. | The accused fabrics include transfer printed flocked fabrics that have been manufactured by adhering undyed thermoplastic fibers to a substrate with a dark pigmented adhesive so that the lower portion of the fibers adhere and the upper portion forms a nap. |
| 14.  A method as claimed in claim 13 wherein said adhering step includes air texturizing the fibers on the substrate to cause some fibers to diverge from neighboring fibers more than other fibers and the pigmented adhesive is visible between the diverging fibers. | Some of the accused fabrics include fibers that are air texturized. |
| 15.-20 Are dependent claims | The accused fabrics directly infringe the dependent claims. |

4

**INTERROGATORY NO. 5**

With respect to the conception, reduction to practice, first public use or disclosure

and first sale or offer for sale of the invention of the '021 patent:

a.    identify the date and location of each such event;

b.    describe, in detail, each such event;

c.    identify all persons most knowledgeable about each such event; and

d.    identify of all documents relating to each such event.

**ANSWER NO. 5**

a.-b.    The invention was first conceived early 1992 and a patent application was
filed on July 31, 1992.  It was first shown in Europe on August 1, 1992.
The first sales occurred in August of 1992 in Canada.

c.    **James R. McCulloch**
Microfibres, Inc.
One Moshassuck Street
Pawtucket, RI 02862

**William F. Laird**
Microfibres, Inc.
One Moshassuck Street
Pawtucket, RI 02862

d.    Please see the patent application and invention documents which
Microfibres will make available in response to Intermark's First Request for Production.

**INTERROGATORY NO. 6**

Identify by name or other appropriate designation, all methods and/or products

employed or manufactured and sold by Microfibres, respectively, which embody the

invention of the '021 patent and identify the persons most knowledgeable about, as

applicable, the design, development, testing, manufacturing, marketing and sale of each

such method and/or product.

**ANSWER NO. 6**

Objection. This request is overbroad and unduly burdensome. Further, it is not limited in time. Subject to these objections, Microfibres currently sells the following products that embody the invention of the '021 Patent:

> Rawhide, Gianni, Kid Glove, Billy Glove, Safari, Mallory/Chenille, Talisman, Mediterranean, Webster, Anaconda/Cobra, Bali, Python, Mercer, Wild Kingdom/Panther, B-52, Atlantis, Alligator, Wrangler, Westport, Callaway, Durham, Boomerang, Dublin, Antwerp, Hamburg Chaps, Jamie, Jasmine, Avery, Atwood, Avenue, Mani, Tradewinds Ashley, Posen, Cheyenne, Inspiration, Lobo, Phoenix, Chapparel Neuhaus, Cyclone, Manhattan, Calloway, Bambora, Ubati, Canyon

The following individuals are knowledgeable about the specified topics, as described below:

> **James R. McCulloch**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

> **William F. Laird**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

Mr. McCulloch and Mr. Laird are knowledgeable about the design, development and testing of the products that embody the '021 Patent.

> **James R. Fulks**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862

Mr. Fulks is knowledgeable about the products that embody the '021 Patent and the marketing and sale of those products.

> **Michael Czarnecki**
> 836 Wellington Road
> Winston-Salem, NC  27106

Mr. Czarnecki is knowledgeable about the marketing and sale of the products that embody the '021 Patent.

**INTERROGATORY NO. 7**

Identify all extrinsic evidence (by "extrinsic evidence" it is meant all evidence

other than the '021 patent and its prosecution history) which Microfibres plans to use or

rely upon to construe the meaning of any term contained in the claims of the '021 patent.

**ANSWER NO. 7**

Objection. This interrogatory calls for attorney work product and trial preparation
materials in that it asks Microfibres and its counsel to divulge their litigation strategies.
Microfibres reserves the right to rely on all admissible evidence that it and its counsel
deem advantageous.

**INTERROGATORY NO. 8**

Identify all companies related to Microfibres, including all parent companies,

subsidiaries, divisions, or others, stating the nature of the relationship from 1980 to date.

**ANSWER NO. 8**

> **Upholstery Fabrics, Inc.**
> 254 Chambers Street
> Jasper, Georgia 30143
>
> Upholstery Fabrics, Inc. is a wholly owned subsidiary of Mirofibres, Inc.
>
> **Microfibres Europe**
> Lange Meire 56
> B-9270 Laarne, Belgium
>
> Microfibres Europe is a majority-owned subsidiary of Microfibres, Inc.
>
> **Hartford Fibres Limited**
> 574 Vraeside Crescent
> Kingston, Ontario     K7P1G8
>
> Hartford Fibres is a wholly owned subsidiary of Microfibres, Inc.

## INTERROGATORY NO. 9

Identify all individuals involved in any capacity whatsoever in the decision to send the Cease and Desist Letter. Such persons include, but are not limited to, all individuals involved in any investigation of the validity of infringement of the '021 patent. For all persons identified, describe with specificity the exact nature of the persons involvement in the decision to send the Cease and Desist Letter.

## ANSWER NO. 9

Objection. This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks individuals involved in any capacity whatsoever. Microfibres also objects to the extent this interrogatory demands the disclosure of attorney-client communications or attorney work-product. Without waiving these objections, in addition to counsel, the following individuals were involved in the decision to send the June 24, 2002 Cease and Desist Letter:

> **James R. McCulloch**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862
>
> **James R. Fulks**
> Microfibres, Inc.
> One Moshassuck Street
> Pawtucket, RI 02862
>
> **Pierre Hanet**
> Microfibres Europe
> Lange Meire 56
> B-9270 Laarne, Belgium

Mr. Hanet forwarded to Mr. Fulks and Mr. McCulloch samples of flocked fabric from Spandauer that infringed the '021. Messrs. Hanet, Fulks and McCulloch discussed the infringing fabric and Mr. McCulloch directed Mr. Fulks to take steps to prevent the infringement.

**INTERROGATORY NO. 10**

Please set forth any and all damages Microfibres alleges it is entitled to with specificity, setting forth the basis of how each and every component of damages was determined, identifying the person or persons most knowledgeable regarding said damages.

**ANSWER NO. 10**

Microfibres has not completed its damages analysis. To a large measure, Microfibres damages will involve analysis of information within the control of Intermark. Discovery is ongoing. Microfibres will supplement this response as appropriate following discovery and the Court's ruling on Intermark's Motion to Bifurcate.

**INTERROGATORY NO. 11**

Describe the facts and circumstances of how and when Microfibres first became aware of Intermark's alleged infringement of the '021 patent.

**ANSWER NO. 11**

Microfibres learned of Intermark's infringement of the '021 Patent in the Spring of 2002 when it acquired samples of flocked fabric which were manufactured by Intermark's European affiliate, Spandauer Velours. The samples are transfer printed flocked fabric with a dark-pigmented adhesive. Some of the samples evidence air-embossing, which is also covered by the '021 Patent. The flocked fabric appears to have been imported from the United States.

**INTERROGATORY NO. 12**

Has any investigation, test, review, report and/or study relating to infringement of the '021 patent been conducted by or on behalf of Microfibres with respect to any method, product or devise? If the answer is other than the unqualified "no", describe each study or investigation, setting forth: the results; the date it was requested and

received; the identity of each person who requested it, authorized it, furnished any

information upon which it was based in whole or in part, participated in it, prepared or

reported its results, received or had access to such results, and/or participated in making

any decision or recommendation based in whole or in part on such results; and, for each

such person, state the date(s), place(s) and nature of such person's activities with respect

to such study or investigation, and identify all documents that relate or pertain to such

investigation, test, review, report, and/or study.


## ANSWER NO. 12

Objection. This interrogatory is vague, ambiguous, and overbroad. It is not clear
what is meant by an "investigation, test, review, report and/or study relating to
infringement of the '021 patent." Microfibres also objects to the extent this interrogatory
seeks attorney-client communications, attorney work-product, or trial preparation
materials.

Without waiving these objections, Microfibres investigated Intermark's
infringement of the '021 Patent. The investigation was performed when Microfibres
learned that Intermark's European affiliate, Spandauer Velours, was selling transfer
printed flocked fabric with a dark-pigmented adhesive. A review of the samples
confirmed that they infringed the '021 Patent as well as Microfibres European patent.
James Fulks, James McCulloch, and Pierre Hanet participated in this investigation. non-
privileged responsive documents will be made available for inspection and copying in
response to Intermark's First Request for Production.


## INTERROGATORY NO. 13

Identify any patent or patent application, domestic or foreign, now owned or ever

owned by Microfibres or an affiliate, parent or subsidiary of Microfibres that is a division

of, continuation of, or corresponds to or relates to the '021 patent, or which is a foreign

counterpart of the '021 patent, and identify all documents referring to relating to any such

patent or patent application filed in the United States or in a foreign country, including,

but not limited to, all documents within the prosecution history file of any such United

States or foreign patent or patent application and the prior art materials cited by the

respective patent office or uncovered as a result of search made by Microfibres or its

agents in connection with the preparation or prosecution of such United States or foreign

patent or patent application.

## ANSWER NO. 13

Objection. This interrogatory is overbroad and unduly burdensome. Subject to
these objections, please see the patent application and history documents made available
in response to Intermark's First Request for Production for U.S. Patent No. 5,981,021
issued on November 9, 1999, and European Patent 0.581.614, issued on December 8,
1999.

## INTERROGATORY NO. 14

Has Microfibres advised, notified, charged any third party (other than Intermark)

with infringement of the '021 patent or sued any third party based on an allegation of

infringement of the '021 patent? If so, state as to each such advisement, notification,

charge or suit:

     a.     the identity of each such party or suite by court and number;

     b.     the date of such advisement, notification, charge and/or suit;

     c.     whether the advisement, notification or charge was effectuated by written

            or oral communication, and the identity in each case of the person or

            persons who communicated the advisement, notification or charge;

     d.     the identity of each and every document which constitutes, or refers or

            relates to such advisement, notification, charge and/or suite, or any

            defenses or responses to such advisement, notification, charge and/or suit;

            and

     e.      the status of each such advisement, notification, charge or suit, and if settled identify each settlement agreement.

**ANSWER NO. 14**

No.  Microfibres, has, however, written and notified Intermark's affiliate, Spandauer Velours, in writing of its infringement of Microfibres' European Patent.

**INTERROGATORY NO. 15**

Identify each consultant or expert employed by, retained by, or specifically employed by Microfibres in anticipation of litigation or preparation for trial, when such consultant or expert was employed or retained, and the area of expertise of each such person, and with respect to each such consultant or expert expected to be called as an expert witness at trial:

     a.      State the substance of the facts and opinions to which the expert is expected to testify; and

     b.      State a summary of the grounds for each opinion.

**ANSWER NO. 15**

No testifying expert has been retained yet.  Microfibres will make its expert disclosures as appropriate.

**INTERROGATORY NO. 16**

Identify all prior art patents, prior art publications, prior art uses, sales, or offers for sale of which Microfibres is aware which relate to any of the claims of the '021 patent, and with respect to each such prior art patent, publication, use, sale or offer for sale, state:

     a.      when Microfibres first became aware of the prior art patent, publication, use, sale or offer for sale;

     b.     how Microfibres first became aware of the prior art patent, publication, use, sale or offer for sale, and from whom this knowledge was acquired;

     c.     what employee, representative or agent of Microfibres first became aware of the prior art patent, publication, use, sale or offer for sale, and to whom such awareness was communicated;

     d.     whether Microfibres sought and/or received any advice of counsel with respect to the relevance of, applicability of, or duty to disclose the prior art patent, publication, use, sale or offer for sale, and how and when such advice was sought and received; and

     e.     identify each document seeking or communicating such advice.

## ANSWER NO. 16

Microfibres is not aware of any prior art that teaches or suggests the claims embodied in the '021 Patent. The only prior art patents of which Microfibres is aware were those identified by the United States Patent and Trademark Office. The USPTO decided that those prior art patents did not teach or suggest the claims embodied in the '021 Patent.

## INTERROGATORY NO. 17

Identify and describe in detail any objective indicia that Microfibres contends support the validity of the '021 patent under 35 U.S.C. § 103 including, but not limited to, any alleged:

     a.     long-felt need for the alleged invention claimed in the '021 patent;

     b.     satisfaction of such need by the alleged invention;

     c.     problems associated with the prior art, whether of a technical, operational, functional or manufacturing nature;

     d.     solving of such problem(s) by the alleged invention;

e. evidence of copying by anyone of the alleged invention claimed in the '021 patent; and

f. the commercial success of the alleged invention claimed in the '021 patent.

## ANSWER NO. 17

Objection. This interrogatory is overbroad and unduly burdensome. Without waiving these objections, the objective indicia supporting the validity of the '021 Patent are documented in Microfibres' filings with the U.S. Patent and Trademark Office, including the affidavit of William Laird which details the commercial success. The indicia are also documented by the findings of the USPTO and patent that issued. As those papers explain, the industry desired a method of creating a crock-fast, flocked fabric with deep, dark color. Prior attempts to achieve such a fabric were unsatisfactory. The industry also desired a method of texturing flocked fabric. The claims in the '021 Patent solved these problems. This response will be updated as appropriate.

## INTERROGATORY NO. 18

Identify each novelty, validity, infringement or other search made by or on behalf of Microfibres with respect to the subject matter of the '021 patent, including:

a. the date of each search;

b. the results of each search;

c. the person who made the decision to request or conduct the search;

d. the person or party who conducted the search;

e. each patent, printed publication or other prior art reference or device located as a result of each such search; and

f. identifying each and every document referring or relating to each such search.

## ANSWER NO. 18

Objection.  This request is overbroad and unduly burdensome.  Subject to these objections, please see the patent application and history documents made available in response to Intermark's First Request for Production.

## INTERROGATORY NO. 19

With respect to the '021 patent:

a.     identify all persons who are current or former employees,

representatives, or agents of Microfibres that have knowledge of

the alleged infringement of the '021 patent by Intermark and/or by

any third party;

b.     identify all documents in Microfibres' possession or control relating to,

pertaining to, discussing or explaining the alleged infringement of the '021

patent in suit by Intermark and/or any third party;

c.     identify all documents in Microfibres' possession or control that relate to

or discuss any knowledge or awareness by Microfibres, or any employees

or agents of Microfibres of any infringing products manufactured or sold

by Intermark and/or any third party.

## ANSWER NO. 19

**James R. McCulloch**
**James R. Fulks**
**William F. Laird**
Microfibres, Inc.
One Moshassuck Street
Pawtucket, RI 02862

**Michael Czarnecki**
836 Wellington Road
Winston-Salem, NC  27106

**Christian Otto**
Interior Design Munz & Partner GmbH
P.O. Box 1004
72541 Metzingen, Germany

**Igor Malinsky**
Arben International, LLC
287 Avenue X
Brooklyn, NY 11223

**Robert Zwaak**
Microfibres Europe
Lange Meire 56
B-9270 Laarne, Belgium

**Pierre Hanet**
Microfibres Europe
Lange Meire 56
B-9270 Laarne, Belgium

Please see the documents made available in response to Intermark's First Request for Production.


**INTERROGATORY NO. 20**

Identify all statements made to customers or any other third parties regarding any aspect of Microfibres' allegations that Intermark infringes the '021 patent. For each such statement identify:

    a.     the exact words that comprised the statement;

    b.     the individual who made the statement;

    c.     the date of the statement; and

    d.     to whom the statement was made.

**ANSWER NO. 20**

Objection. This interrogatory is overbroad and unduly burdensome. Microfibres could not possibly identify every conversation over the past several months concerning

Intermark's infringing activities. Without waiving these objections, Microfibres employees James Fulks, William Laird, James McCulloch, Robert Zwaak and Pierre Hanet have discussed Intermark's infringing activities with Igor Malinsky of Arben International and Christian Otto of Interior-Design, and perhaps others. The discussions have been ongoing since Microfibres discovered Intermark's infringement in the Spring of 2002.

## INTERROGATORY NO. 21

Please identify all persons of whom you have made inquiry in answering these interrogatories and, if any such person supplied you with information that you used in answering these interrogatories, specify such information and the interrogatory to which it applies.

## ANSWER NO. 21

James McCulloch and William Laird supplied information relating to the conception, reduction to practice and sale of the invention described in the '021. Patent counsel supplied information relating to the history of the '021 and the application and prosecution.

## INTERROGATORY NO. 22

Identify each and every fact upon which Microfibres bases its allegations in Count IV (Trade Libel) of its Complaint.

## ANSWER NO. 22

Objection. This interrogatory is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Microfibres has withdrawn its Trade Libel count without prejudice.

## INTERROGATORY NO. 23

Identify each and every fact upon which Microfibres bases its allegations in Count V (Violation of Connecticut Unfair Trade Practices Act) of its Counterclaim.

**ANSWER NO. 23**

Objection.  This interrogatory is overbroad and unduly burdensome.  Without waiving these objections, Microfibres' claims that Intermark has violated Connecticut's Unfair Trade Practices Act in part based upon Intermark's acts of infringement, both direct and indirect.  See Answer No. 1.  In addition, Microfibres contends that statements made by Intermark personnel, including William Lucchesi, to the Flocked Fabric Association and its members, as well as press-releases issued by Intermark, which question the validity of Microfibres '021 and which actively request assistance to invalidate Microfibres' '021 Patent constitute unfair trade practices

MICROFIBRES, INC.

By: _____

SUBSCRIBED AND SWORN TO before me this _13 th_ day of _December_ 2002.

```
BARBARA RAMSAY
Notary Public
State of Rhode Island
My Commission Expires Oct 25, 2005
```

_____
Notary Public

AS TO OBJECTIONS:

_____
Brent R. Canning, Esq. (CT 23991)
William R. Grimm, Esq.
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI  02903
(401) 274-2000
(401) 277-9600 (Fax)

RESIDENT COUNSEL:
Jeffrey W. Kennedy, Esq. (CT 16419)
Milano & Wanat
471 East Main Street
Branford, Connecticut 06405
203.315.7000 (TEL)
203.315.7007 (FAX)

19

## CERTIFICATION

Charles F. O'Brien, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

     I certify that I faxed and mailed a copy of the foregoing Responses to Intermark's First Request for Production to counsel of record, as above, on December 13th, 2002.

#513957v4