# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTERMARK FABRIC CORPORATION,  ) | |
| ) | |
| *Plaintiff*,  ) | |
| ) | Civil Action No. 3:02 CV 1267 (AVC) |
| v.  ) | |
| ) | |
| MICROFIBRES, INC.  ) | |
| ) | |
| *Defendant*.  ) | |
| ) | |
| ) | |

## AFFIDAVIT OF RONALD S. PERRY, PH.D

I, Ronald S. Perry, Ph.D, upon personal knowledge and under oath hereby state as follows:

1.      Intermark Fabric Corporation ("Intermark") has retained me as an expert in the above-captioned case involving Microfibres, Inc.

2.      I have been asked by Intermark to opine on the affect that the uniform application of heat over a flocked fabric during the heat setting process and reducing the yellowing of the fabric will have on a transfer printed flocked fabric with a dark pigmented adhesive that is manufactured under the '021 patent.

3.      I am presently Professor of Textile Chemistry, *Emeritus*, at the University of Massachusetts, Dartmouth. I received a Bachelor of Science degree form the New Bedford Institute of Technology (now known as University of Massachusetts at Dartmouth) in 1958 in Textile Chemistry. I received a Master of Science degree in Textile Chemistry form the Lowell Technological Institute in 1960 (now known as University of Massachusetts at Lowell), a Master

of Science Degree in Chemistry in 1962, and a Ph.D in Chemistry from Lowell Technological

Institute in 1965 where I majored in Organic Chemistry and minored in Polymer Chemistry.

From 1973 through 1999, I was a Professor of Textile Chemistry at the University of

Massachusetts, Dartmouth, where I taught a variety of courses including: Textile Chemistry,

Physical Chemistry of Dyeing, Physical Chemistry of Surface Active Agents, Color Science,

Chemical Technology of Finishing and Polymer Chemistry.   From 1973 through 1989, I was the

Chairperson of the Textile Sciences Department at the University of Massachusetts.   From 1965

through 1968, I worked initially as a Chemist in the Research Department and then as a Chemist

in the Technical Service Department (both positions were within the Textile Chemical Division)

of I.C.I. Organics, Inc. and from 1968 through 1973 I worked initially as a Lab Manager and

then as a regional Technical Service Manager in the Textile Chemical Division of Sun Chemical

Corporation. I have worked extensively in the field of the textile sciences since the 1960's.   Over

these past thirty five years, in addition to teaching courses covering the Textile Sciences, I have

published numerous technical papers, lectured, provided consulting services to various chemical

companies and textile companies, participated in many investigative research projects, and

participated in various professional societies and organizations.

      4.    I have reviewed the transcript of Mr. Laird's deposition on March 26, 2003 and I

have reviewed Microfibres' Memorandum of Law in Support of its Opposition to Intermark's

Motion for Summary Judgment, including the Affidavit of James R. McCulloch and the

Affidavit of William F. Laird attached thereto as Exhibits A and C, respectively.   I have also

reviewed the transcript of Mr. McCulloch's deposition on April 17, 2003, including the

testimony that Mr. McCulloch has now changed concerning the material affects that Mr. Laird's

1992 heat setting system had on transfer printed flocked fabrics with dark pigmented adhesives made under the '021 patent.

5.      I understand that Microfibres continues to admit that Mr. Laird's 1992 heat setting system provided Microfibres with "side-center-side" control which ensured more of a uniform application of heat over the flocked fabric and reduced the yellowing of the fabric.

6.      The uneven application of heat over flocked fabric during the heat setting process, wherein the middle of the fabric is exposed to higher temperatures than the edges of the fabric, will result in the fibers on the edges of the fabric to be less heat set than the fibers in the middle of the fabric. As a result of this uneven heat setting, after transfer printing, the flocked fabric at the edges of the overall fabric will have less of an erect nap than the flocked fabric in the middle, which will have fibers that are more erect. This uneven application of heat over the flocked fabric during the heat setting process affects the resulting transfer printed flocked fabric under the '021 patent in that the light reflective properties of the colored transfer print on the surface of the transfer printed flocked fabric will appear uneven and very blotchy. The uneven application of heat over the flocked fabric during the heat setting process will also result in a transfer printed flocked fabric with uneven dye diffusion over the overall fabric wherein the color of the transfer print on the overall transfer printed flocked fabric will appear uneven and blotchy. Also, the nap of the overall transfer printed flocked fabric will be uneven thus causing an uneven hand in that the feel of the flocked fabric will vary over the surface of the product. Also, the uneven application of heat over the flocked fabric during the heat setting process will result in uneven yellowing of the flocked fabric which, in turn, will result in an uneven coloration across the fabric after transfer printing. Reducing the yellowing of the flocked fabric during heat setting will provide a brighter and more evenly shaded transfer printed flocked fabric.

3

7.    It is my opinion based upon a reasonable degree of scientific certainty and based upon my training and experience in the textile sciences as well as my review of the documents set forth above, including Mr. McCulloch's deposition testimony, that the "side-center-side" control that Microfibres attained in the manufacture of flocked fabric as a result of Mr. Laird's 1992 heat setting system, which provided for a more uniform application of heat over flocked fabric during the heat setting process and reduced the yellowing of the flocked fabric, materially affects the claimed invention under the '021 patent because it solved or at least minimized the problems set forth above.

Signed under the pains and penalties of perjury on this ⅔5 day of August, 2003.

Ronald S. Perry, Ph.D